**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CREDIT DEFAULT SWAPS ANTITRUST LITIGATION | 13 MD 2476 DLC |

**LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION'S APPLICATION FOR APPOINTMENT OF PEARSON, SIMON & WARSHAW, LLP AS <u>INTERIM LEAD COUNSEL</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY ................................................4

        A.      The Alleged Antitrust Conspiracy ..........................................................4

        B.      Procedural History ..................................................................................5

III.    ARGUMENT......................................................................................................5

        A.      Standard for Appointment of Lead Counsel ..........................................5

        B.      LACERA and Its Counsel Have the Resources and Commitment To
                Represent the Plaintiff Class In This Litigation......................................7

        C.      Pearson Simon Has the Substantive Experience and Resources to Act as
                Lead Counsel in this Complex Antitrust Class Action ...........................8

        D.      LACERA's Complaint Reflects Pearson Simon's Over Two Year
                Investigation of the CDS Trading Market ............................................15

        E.      Pearson Simon Is Willing and Able to Commit to Leading This Case ................16

        F.      LACERA Will Fully Protect the Absent Class Members' Interests....................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Donaldson v. Pharmacia Pension Plan*,
    435 F.Supp.2d 853 (S.D. Ill. 2006)........................................................................6

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    240 F.R.D. 56 (E.D.N.Y. 2006)...........................................................................6, 7

*In re Bear Stearns Cos. Sec., Derivative, and ERISA Litig.*,
    2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ..............................................................2

*In re Carrier IQ Consumer Privacy Litigation*,
    MDL No. 2330 (N.D. Cal.)...................................................................................10

*In re Crude Oil Commodity Futures Litig.*,
    2012 WL 569195 (S.D.N.Y. Feb. 14, 2012)..........................................................5

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
    MDL No. 1486 (N.D. Cal.)..............................................................................10, 11

*In re Municipal Dertivaties Antitrust Litig.*,
    252 F.R.D. 184 (S.D.N.Y 2008) ......................................................................10, 11

*Lippitt v. Raymond James et al.*,
    340 F.3d 1033 (9th Cir. 2003).   ..........................................................................13

*Minn-Chem, Inc. v. Agrium, Inc.*,
    683 F.3d 845 (7th Cir. 2012) ...............................................................................10

*Parkinson v. Hyundai Motor America*,
    2006 WL 2298801 (C.D. Cal. Aug. 7, 2006)..........................................................7

OTHER AUTHORITIES

Fed. R. Civ. P. Rule 23 .............................................................................................5, 7

Fed. R. Civ. P. Rule 23(g)(1)(A) ..............................................................................3, 7

Fed. R. Civ. P. Rule 23(g)(2)........................................................................................6

Fed. R. Civ. P. Rule 23(g)(3)........................................................................................5

MANUAL FOR COMPLEX LITIGATION (FOURTH)(2009) 10.22 ...........................................6

MANUAL FOR COMPLEX LITIGATION (FOURTH)(2009) 21.11 .............................................2

MANUAL FOR COMPLEX LITIGATION (FOURTH)(2009) 21.271 ...................................................5, 6

MANUAL FOR COMPLEX LITIGATION (FOURTH)(2009) 21.272 ...................................................3, 6

*Saltzberg et al., Third Circuit Task Fore Report on Selection of Class Counsel,*,
    74 Temp. L. Rev. 689 (2001 ....................................................................................................6

# I. **INTRODUCTION**

Pursuant to this Court's Order of November 6, 2013, calling for "any application for appointment of lead plaintiff and lead counsel" to be filed by November 8, 2013 (ECF No. 57), Plaintiff Los Angeles County Employees Retirement Association ("LACERA"), through its counsel, requests that LACERA's selected counsel, Pearson, Simon & Warshaw, LLP ("Pearson Simon"), be appointed interim lead counsel pursuant to Federal Rule of Civil Procedure 23(g).

Leadership in a case as complex as this requires multiple skills, as well as tireless devotion to protecting the interests of the class. Pearson Simon has shown that it has the ability to apply the resources necessary to a case like this, and to be as efficient and cost effective as possible.

At bottom, the Court needs a person at the lead counsel firm upon whom it can rely to vigorously prosecute the case without burdening judicial resources with unnecessary and wasteful disputes. Bruce Simon is the partner at the firm who is committed to participating in all aspects of the case, assuring that the case will run smoothly, and the person upon whom the Court can rely. Leadership like this is bred from having tried large antitrust class actions, and knowing what it takes to get to the finish line. Mr. Simon has done this, and is a hands-on attorney who will be involved in all aspects of the case.

It is also important that LACERA is a large public pension plan who has already scrutinized Pearson Simon, and their co-counsel, and concluded that they are capable of prosecuting this case in the best interests of the class. LACERA will be actively involved in supervising the litigation, and as an operating public pension plan is particularly motivated to assure that the financial markets in which it has invested billions of dollars on behalf of public employees are competitive and fair. There is strength in a combination of experienced counsel and a sophisticated plaintiff like LACERA.

As recommended by the Manual for Complex Litigation (Fourth) (2004) ("Manual") and

as permitted by Federal Rule of Civil Procedure 23(g)(2)(A)[1], appointment of interim lead counsel prior to class certification is appropriate here. "In such cases [multiple suits and lawyers], designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities . . . ." Manual, § 21.11. In considering appointment of interim lead counsel prior to class certification, the Court should be guided by the same factors it uses in choosing class counsel at the certification stage. *In re Bear Stearns Cos. Sec., Derivative, and ERISA Litig.*, 2009 WL 50132, at *11 (S.D.N.Y. Jan. 5, 2009).

LACERA is a large public pension fund based in Los Angeles, California. LACERA has over 156,000 participating members and manages retirement assets for those members totaling over $38 billion. During the putative class period, LACERA purchased over $2.8 billion (notional value) of Credit Default Swaps ("CDS") as part of its fixed income portfolio. Prior to filing its Complaint, LACERA's professional and legal staff conducted an extensive investigation regarding potential antitrust violations by the Defendant Dealer Banks[2] and Markit Group Ltd., an English company that collects and distributes CDS trading data for the Defendant Dealer Banks ("Markit"). Once it decided to engage in litigation, LACERA conducted a competitive process by which it issued Requests for Proposal ("RFP") to a number of law firms. The RFP process resulted in LACERA selecting Pearson Simon, and their co-counsel, to lead this litigation on its behalf. In considering the responses to its RFP, LACERA put great weight on the fact that Pearson Simon had investigated the CDS market and the alleged violations of the antitrust laws for over two years, including consulting with experts in the CDS market. *See* attached Declaration of Bruce L. Simon in Support of LACERA's Application for Appointment of Pearson, Simon & Warshaw, LLP as Interim Lead Counsel ("Simon Decl."), ¶¶ 9-13.[3]

---

[1] All references to "Rule" unless otherwise noted shall be to the Federal Rules of Civil Procedure.

[2] The "Defendant Dealer Banks" refers to the thirteen banks named in LACERA's Complaint.

[3] LACERA also selected the firms of Goodin, MacBride, Squeri, Day & Lamprey, LLP ("Goodin MacBride") and The Lawrence Law Firm ("Lawrence Firm") as counsel to represent it (footnote continued)

LACERA, in choosing its counsel, considered substantially the same factors stated in Rule 23(g)(1)(A). *Id.* ¶ 12. Besides Pearson Simon's exhaustive investigation into the CDS trading market, LACERA also considered the quality and the results obtained by Pearson Simon in other significant antitrust class actions, its knowledge and experience in antitrust law, and its commitment to bringing the resources necessary to effectively and efficiently litigate this case through trial if necessary. LACERA intends to stay actively involved in the CDS actions.

While LACERA makes this application for appointment of Pearson Simon as interim lead counsel, it also recognizes that this is an extremely complex antitrust case with a large cast of defendants, all with significant resources and with some of the world's largest law firms representing them. Accordingly, LACERA is not opposed to a co-leadership structure that includes at least one or two other firms.

Although the various plaintiffs and their counsel have not yet been able to reach a consensus on proposed leadership, those efforts continue. LACERA and Pearson Simon are aware of this Court's personal preference for a single law firm representing the class, and understand the benefits of that. However, in the right case, and this may be one of them, reaching an agreement amongst all counsel that includes more than one firm also starts the case with a cohesiveness that can be beneficial as well. Although it is not binding and the Court has complete discretion to give it the weight it deems appropriate, private ordering amongst counsel is a recognized way of organizing a case. Manual, § 21.272. There are fine firms who will likely apply for lead counsel, and to get to a private ordering leadership structure would probably require more than one firm being involved. That has not happened yet.

Even though there is no agreement on leadership, LACERA's counsel is also working with other counsel to ensure that the Initial Report to be filed seven days before the Initial Pretrial Conference set for December 5, 2013 addresses all issues identified in the "Initial

---

in this significant antitrust class action. Those firms support the selection of Pearson Simon as interim lead counsel to represent their joint client, LACERA.

Pretrial Conference Checklist" (Exhibit A to the "Pilot Project Regarding Case Management Techniques for Complex Civil Cases").

As described below, partner Bruce Simon will manage the case on behalf of the firm and will be deeply involved in all aspects of the case. He will be assisted by Clifford Pearson, George Trevor, Aaron Sheanin, and Thomas Boardman (who is admitted to practice in the Southern District of New York).

## II. FACTUAL AND PROCEDURAL HISTORY

### A. The Alleged Antitrust Conspiracy

The eight complaints filed to date allege that the Defendant Dealer Banks, consisting of the largest banks in the world, engaged in an antitrust conspiracy for the purpose of maintaining and artificially inflating CDS prices, creating barriers of entry to potential competitors, and preventing buyers and sellers in the CDS market from receiving transaction and pricing data.[4] The complaints all allege that the Defendant Dealer Banks' anticompetitive conduct has resulted in substantial over charges to CDS purchasers and sellers. While damages and Defendant Dealer Banks' liability will be determined by the evidence, including expert testimony, the amount of alleged damages sustained by the putative class is staggering. CDS trading is one of the most lucrative markets for the Defendant Dealer Banks, and LACERA alleges that damages arising from Defendants' alleged antitrust conspiracy are in the tens of billions of dollars.

The Defendant Dealer Banks' stranglehold on the CDS market has also drawn the attention of government regulators charged with enforcing antitrust statutes worldwide. On July 1, 2013, the European Commission ("EC") announced that it was effectively charging many of

---

[4] While there are some differences in the Defendant Dealer Banks named in the other complaints and some variation in the length of the class period alleged, the allegations of conspiracy to artificially inflate transaction prices and maintain dominance over the CDS trading market is common in all complaints. The Defendant Dealer Banks named by LACERA are: JPMorgan Chase & Co., Citigroup, Inc., Goldman Sachs Group, Inc., HSBC Holdings plc, HSBC Bank USA, N.A., Bank of America Corporation, Barclays Bank Plc, Credit Suisse Group AG, Morgan Stanley & Co. LLC, Deutsche Bank AG, BNP Paribas S.A., Societe Generale S.A., The Royal Bank of Scotland Plc, and UBS AG.

the Defendant Dealer Banks with violations of European antitrust law. The EC filed a "Statement of Objection" (effectively an administrative complaint) informing a number of the Defendant Dealer Banks and Markit that the commission had reached the preliminary conclusion that the banks had "[i]nfringe[d] antitrust laws that prohibit anti-competitive agreements by colluding to prevent exchanges from entering the credit derivatives business." The United States Department of Justice also has an ongoing investigation into the Defendant Dealer Banks' activities in connection with the CDS trading market.

B.      **Procedural History**

On May 3, 2013, a class action complaint was filed in the Northern District of Illinois (*Sheet Metal Workers Local No. 33 Cleveland District Pension Plan v. Bank of America Corporation, et al.*). Over the next several months six additional complaints were filed in both the Northern District of Illinois and the Southern District of New York ("SDNY"). On October 29, 2013, LACERA filed its Complaint in the SDNY. On July 17, 2013, plaintiff Sheet Metal Workers filed a motion with the Judicial Panel for Multi-District Litigation ("JPML") requesting that all CDS cases be consolidated in the Northern District of Illinois. Following briefing by certain parties and oral argument before the JPML, on October 16, 2013, the Panel ordered transfer of all actions alleging anticompetitive practices in the CDS trading market to the SDNY and assigned all cases to this Court. Following the JPML transfer order, this Court issued case management orders, including that any application for appointment of lead plaintiff and lead counsel be submitted by November 8, 2013.

## III. ARGUMENT

A.      **Standard for Appointment of Lead Counsel**

Rule 23 provides that a court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Rule 23(g)(3). The goal is to determine who best will represent the interests of the class, and who best will be able to accomplish the goals of efficiency and economy in doing so. *See In re Crude Oil Commodity Futures Litig.,* 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012); Manual, § 21.271. "The

goal of all the procedures surrounding appointment of class counsel . . . is to establish appropriate structures and monitoring mechanisms to substitute for the ordinary attorney-client relationship and to assure performance of the fiduciary responsibilities owed by both the lawyer and the lead plaintiff to the class." Stephen A. Saltzburg et al., *Third Circuit Task Force Report on Selection of Class Counsel*, 74 TEMP. L. REV. 689, 696 (2001). Where, as here, multiple cases are pending, "appointment of class counsel is necessary to protect the interests of class members." *Donaldson v. Pharmacia Pension Plan*, 435 F.Supp.2d 853, 856 (S.D. Ill. 2006); *see also In re Air Cargo Shipping Servs. Antitrust Litig*., 240 F.R.D. 56 (E.D.N.Y. 2006).

In complex antitrust matters such as this, appointing seasoned lead counsel is one of the district court's key organizational tools. Manual, §§ 10.224, 21.272. The "designation of interim [class] counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id.*, § 21.11. Because lead counsel is charged with the ultimate responsibility of acting on behalf of the class throughout the entire litigation, the Court must appoint lead counsel who are fully capable and qualified to fairly and adequately represent the interests of the class. *See id.*, §§ 10.22, 21.271, 21. 272; *see also* Rule 23(g)(2) (noting that "the court must appoint the applicant best able to represent the interests of the class" if more than one qualified applicant seeks to be appointed class counsel). Moreover, the fact that a large institutional plaintiff has stepped forward, conducted an extensive investigation into the merits of the case and a competitive selection process for counsel, and has the resources as well as the commitment to discharge its fiduciary obligations, is a factor this Court should consider in making its selection.

Rule 23(g) identifies several factors that merit consideration in selecting interim class counsel. Those factors include:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

6

Rule 23(g)(1)(A); *see also In re Municipal Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008); *Air Cargo*, 240 F.R.D. at 57 (applying Rule 23(g) criteria in selecting interim class counsel); *Parkinson v. Hyundai Motor America*, 2006 WL 2298801, at *2 (C.D. Cal. Aug. 7, 2006) (same). As demonstrated below, Pearson Simon stands ready to aggressively and efficiently litigate this case and satisfy all relevant criteria under Rule 23.

**B.** **LACERA and Its Counsel Have the Resources and Commitment To Represent the Plaintiff Class In This Litigation**

LACERA is one of the nation's largest public pension funds. With over 156,000 members, approximately 56,000 current beneficiaries, and $38.3 billion of plan assets, LACERA is committed to ensuring that trading markets such as CDS operate efficiently, transparently, and free from manipulation. Simon Decl., ¶¶ 6, 11. Following extensive investigation by LACERA's investment professionals and legal staff into allegations against the Defendants named in its Complaint, LACERA issued an RFP to a number of law firms to represent LACERA in an antitrust class action against the Dealer Bank Defendants and Markit for their alleged manipulation of the CDS trading market. *Id.*, ¶ 12. The RFP process included analysis of the prospective claims, damages, and proposed fee structure. *Id.* Following that process, LACERA's professional and legal staff chose Pearson Simon, and their co-counsel, as their counsel. *Id.*, ¶ 13.

In choosing Pearson Simon for that role, LACERA considered substantially the same factors as identified in Rule 23(g) for selection of lead counsel. LACERA examined Pearson Simon's experience in other large antitrust class actions, particularly its recent experience in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.) ("*TFT-LCD*"), *In re Potash Antitrust Litigation (II)*, MDL No. 1996 (N.D. Ill.) ("*Potash*"), and *In re Lithium Ion Batteries Antitrust Litigation*, MDL No. 2420 (N.D. Cal.) ("*Batteries*"). LACERA also considered Pearson Simon's substantial investigation going back over two years of the alleged CDS antitrust conspiracy.

LACERA has the resources, including a dedicated legal staff under the direction of its

general counsel, and investment professionals with detailed knowledge of CDS, to provide effective oversight and monitoring of this litigation from the drafting of a consolidated amended complaint through settlement or trial. Simon Decl., ¶ 14. LACERA understands its obligations to the class and the Court, and intends to work closely with its lawyers as well as other counsel throughout this litigation. LACERA also recognizes that besides the monetary damages sought on behalf of the class there are important public policy issues raised by the allegations of its Complaint. *See id.* The transparent and competitive functioning of security markets is important to all participants in those markets. As a fiduciary to its over 156,000 members in the management of their retirement assets, LACERA has a strong interest in ensuring that markets such as CDS are free from anticompetitive practices. LACERA provides the oversight and sophistication to be an effective monitor of the ligation.

As part of its counsel selection process, LACERA also solicited from all firms a proposed fee structure, subject to the approval of the Court after settlement or trial. In retaining Pearson Simon and other counsel, LACERA negotiated, in an arms-length manner, a fair and reasonable fee structure that is beneficial to the plaintiff class.[5] *Id.*, ¶ 13.

## C. Pearson Simon Has the Substantive Experience and Resources to Act as Lead Counsel in This Complex Antitrust Class Action

Pearson Simon is a civil litigation firm that specializes in class actions, with offices in San Francisco and Los Angeles. Pearson Simon handles national and multi-national class actions that present cutting-edge issues. The firm's attorneys have expertise in litigating difficult and large cases in an efficient and cost-effective manner. Recognized as national leaders in the field of antitrust litigation, they have obtained hundreds of millions of dollars in settlements and

---

[5] LACERA will submit to the Court the fee structure it negotiated with counsel for *in camera* review if the Court requests that information. Pearson Simon and their co-counsel have a written joint prosecution agreement as well, which has been given to and approved by LACERA. Pearson Simon will provide a copy of that agreement *in camera* if so desired by the Court. Pearson Simon does not have any fee sharing arrangements with any other firms with respect to this litigation.

verdicts on behalf of their clients.  Simon Decl., ¶¶ 15-17.  Attorneys at Pearson Simon have served as co-lead counsel in such prominent antitrust cases as *TFT-LCD* and *Potash*.  *Id*.  Most recently, Pearson Simon was appointed interim co-lead counsel in *Batteries*.  *Id*., ¶ 18.  Attorneys at Pearson Simon also hold, or have held, leadership roles in other notable antitrust and complex class actions, including *In re Static Random Access Memory (SRAM) Antitrust Litigation*, No. M:07-cv-01819 (N.D. Cal. 2007); *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. CV-07-5944 (N.D. Cal. 2007); and *In re Optical Disk Drive Products Antitrust Litigation*, No. 3:10-md-2143 (N.D. Cal. 2010).  *See generally id*., Ex. B.

The attorneys who will be primarily responsible for the adjudication of this case are Bruce Simon, Clifford Pearson, George Trevor, Aaron Sheanin, and Thomas Boardman, as well as other attorneys as required.

**Bruce Simon**

Mr. Simon specializes in complex cases involving antitrust, securities, and consumer protection laws.  Mr. Simon has been recognized for his service as co-lead counsel and trial counsel for the direct purchaser plaintiffs in *TFT-LCD*.  After reaching settlements with several defendants totaling over $443 million, Mr. Simon and his trial team tried the case to an $87 million dollar jury verdict (before trebling) against defendant Toshiba.  Mr. Simon served as co-lead trial counsel, and participated in all aspect of the litigation, including briefing, discovery, taking of depositions both domestically and abroad, and settlement negotiations.  The total recovery, after settling with Toshiba post-trial, was $473 million for the direct purchaser class.  Simon Decl., ¶ 15.  In 2013, *California Lawyer Magazine* awarded Mr. Simon a California Lawyer of the Year Award for his work in the *TFT-LCD* case.  The verdict in that case was cited by the *Daily Journal* as one of the top ten verdicts of the year.  *Id*.

Mr. Simon also served as co-lead counsel for the direct purchaser plaintiffs in *Potash*. There, Mr. Simon successfully argued an appeal of the district court's opinion denying the defendants' motions to dismiss for lack of subject matter jurisdiction under the Foreign Trade Antitrust Improvements Act ("FTAIA") before the United States Court of Appeals for the

Seventh Circuit. In *Minn-Chem, Inc. v. Agrium, Inc.,* 683 F.3d 845 (7th Cir. 2012), the Seventh Circuit, sitting *en banc*, took a broad view of the ability of the federal courts to hear antitrust cases concerning alleged foreign cartel activity that plaintiffs contend has effects in the United States. This is a significant decision pertaining to an issue that arises in most antitrust cases involving international cartels. Subsequently, the direct purchasers reached settlements totaling $90 million. Simon Decl., ¶ 17.

Most recently, Mr. Simon was appointed interim co-lead counsel in *Batteries*, which involves price-fixing of lithium ion batteries. The case alleges collusive activity by a cartel made up of the world's largest manufacturers of lithium ion batteries, which are used in everything from cellular phones to cameras, laptops, and tablet computers. Pearson Simon, along with its co-counsel, organized a leadership structure of three firms, and was appointed by Judge Yvonne Gonzalez Rogers as co-lead counsel for the putative class of direct purchasers on May 17, 2013. *Id.*, ¶ 18.

Mr. Simon has also been appointed interim co-lead counsel in *In re Carrier IQ Consumer Privacy Litigation*, MDL No. 2330 (N.D. Cal.), by Judge Edward Chen, and was appointed chairman of a five-firm committee serving as interim co-lead counsel in *Sledge v. Warner Music Group Corp.*, No. 12-cv-00559-RS (N.D. Cal.), by Judge Richard Seeborg. *Id.* ¶¶ 19, 20. Mr. Simon has served as lead or co-lead counsel in several other successful nationwide antitrust class actions, including *In re Sodium Gluconate Antitrust Litigation*, MDL No. 1226 (N.D. Cal.), *In re Methionine Antitrust Litigation*, MDL No. 1311 (N.D. Cal.) (over $100 million in settlements), and *In re Citric Acid Antitrust Litigation*, MDL No. 1092 (N.D. Cal.) ($80 million in settlements). *Id.*, ¶ 21. Mr. Simon also served as co-chair of discovery and as a member of the trial preparation team in *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, MDL No. 1486 (N.D. Cal.) ($325 million in settlements). *Id.*

Mr. Simon has handled multiple cases, including jury trials, involving the banking industry. *Id.*, ¶ 22. He represented Union Bank in *Union Bank v. Ernst & Whitney*, a case against the national accounting firm, and obtained a $7 million jury verdict after a two month

trial.  Mr. Simon was the lead attorney in the *HomeFed Securities Litigation* in federal court in San Diego, where he pursued claims on behalf of the bankruptcy trustee against those responsible for the demise of the S&L.  The case resulted in a substantial settlement right before trial.  The HomeFed failure was one of the largest in United States history.  *Id.*

**Clifford Pearson**

Clifford Pearson is a civil litigator and business lawyer who specializes in complex litigation, class actions, and business law.  Mr. Pearson was instrumental in negotiating the substantial settlements that totaled $473 million in *TFT-LCD* and $90 million in *Potash* on behalf of direct purchaser plaintiffs.  In 2013, along with Mr. Simon, Mr. Pearson was recognized for his work in these major antitrust cases by being named in the *Daily Journal* as one of the Top 100 lawyers in California.

Before creating Pearson Simon in 2006, Mr. Pearson was a partner at one of the largest firms in the San Fernando Valley in Los Angeles, California, where he worked for 22 years.  There, he represented aggrieved individuals, investors, and employees in a wide variety of contexts, including complex consumer and business class actions.  Over his 32-year career, Mr. Pearson has successfully negotiated substantial settlements on behalf of consumers, small businesses, and companies.  Mr. Pearson received his B.A. from Carleton University in Ontario, Canada, his J.D. from Whittier Law School in Los Angeles, California, and an M.B.A. from the University of Miami in Miami, Florida.

**George Trevor**

George Trevor has focused his practice for the past twenty-six years representing investors in securities class actions, securities arbitrations, and complex business litigation.  Since joining Pearson Simon in 2009 as Senior Counsel, Mr. Trevor has been the senior attorney on a number of the firm's important cases, including *In re Lehman Securities and ERISA Litigation,* No. 09-md-02017 LAK (S.D.N.Y.), where Pearson Simon represents California public entities that purchased Lehman securities prior to its bankruptcy.  In 2012, Mr. Trevor was lead trial counsel for the City of South San Francisco in a suit challenging the California Board

of Equalization's long-standing interpretation of the Bradley-Burns Local Sales Tax Act. Following a months' long bench trial in the San Francisco Superior Court, Mr. Trevor obtained a judgment ordering the BOE to revise its practices in the allocation of local sales tax. Mr. Trevor also represents bankruptcy trustees as special litigation counsel against former directors, professionals, and financial institutions and recently obtained a substantial settlement on behalf of an investor plaintiff class against a national bank alleged to have aided and abetted a Ponzi scheme.

Mr. Trevor's other significant cases include a class action brought on behalf of former employees of Eel River Sawmills. Mr. Trevor was instrumental in obtaining a substantial settlement for a class of approximately 400 workers who had lost significant amounts promised to them under the company's Employee Stock Ownership Plan. Mr. Trevor also worked for nearly five years as one of the chief attorneys representing a class of shareholders in the Pacific Lumber Company. That case was transferred to the SDNY as part of the *In re Ivan F. Boesky Securities Litigation* MDL before Judge Milton Pollack. On the night before trial, the remaining defendants settled with the Pacific Lumber class. Combined with settlements obtained from Michael Milken, Drexel Burnham Lambert, Boesky and others, the Pacific Lumber shareholders received over $144 million in additional compensation for their shares, one of the largest recoveries in securities litigation at the time. Mr. Trevor has litigated cases against investment banking firms, hedge funds, real estate limited partnerships, software and hardware companies, alternative energy companies, and accounting firms, among others.

In 2003, Mr. Trevor obtained a reversal on appeal of a federal district court's denial of remand to the California Superior Court in a case involving the sale by twelve large brokerage firms of a fixed income investment product known as a "callable CD." In a reported decision of the Ninth Circuit Court of Appeals, the court held the claims made under California law were not preempted by the federal securities laws. This important decision preserved the rights of investors to seek relief in state court instead of being forced into federal court. That decision, *Lippitt v. Raymond James et al.*, is reported at 340 F.3d 1033 (9th Cir. 2003). Mr. Trevor also

represented a class of investors in *Bell Savings & Loan*.

**Aaron Sheanin**

Aaron Sheanin has extensive experience in complex litigation matters in federal and state courts, including the prosecution of antitrust and complex consumer class actions. He has litigated numerous securities fraud and corporate governance cases on behalf of individual and institutional investors, and has advised state pension funds and private institutions with respect to securities matters. Mr. Sheanin also has experience litigating telecommunications, employment discrimination, defective product, and bankruptcy matters.

Mr. Sheanin was a member of the trial team in *TFT-LCD*. He was actively involved in the trial of that case at all stages. He is also one of the attorneys assigned to two other large electronics component antitrust actions, *In re Optical Disc Drive Products Antitrust Litigation,* No. 3:10-md-02143-RS (N.D. Cal.) and *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 3:07-cv-05944-SC (N.D. Cal.), having taken depositions and worked extensively on briefing and discovery. He is also currently counsel in class actions involving music downloads: *James v. UMG Recordings, Inc.*, No. 11-cv-01613 (N.D. Cal.); and *Sledge v. Warner Music Group Corp.*, No. 12-cv-00559 (N.D. Cal.).

Mr. Sheanin is a 1999 graduate of Columbia University School of Law, where he was a James Kent Scholar and a Harlan Fiske Stone Scholar. He received his undergraduate degree from the University of California at Berkeley in 1993, where he was elected to Phi Beta Kappa. Mr. Sheanin is a member of the American Bar Association and a member of the Executive Committee of the Antitrust Section of the San Francisco Bar Association. He has presented before the American Bar Association's Task Force on Contingent Fees (Tort Trial and Insurance Practice Section), is a contributing author to "California Class Actions Practice and Procedure" (Matthew Bender, 1st Ed. 2003), and serves as an articles editor for Competition, the journal of the Antitrust and Unfair Competition Law Section of the State Bar of California.

From 2001 to 2011, Mr. Sheanin prosecuted class actions and other complex cases as an associate and a partner with Girard Gibbs LLP, and as an associate with Lieff, Cabraser,

Heimann & Bernstein LLP.  From 1999 to 2001, Mr. Sheanin was a pro se law clerk for the United States Court of Appeals for the Second Circuit.  In the summer of 1997, he served as a judicial extern to the Honorable Barrington D. Parker, Jr. of the United States District Court, Southern District of New York.  He is admitted to the California, New York, and New Jersey State Bars.

**Thomas Boardman**

Thomas Boardman is a civil litigator and trial lawyer in Pearson Simon's San Francisco office focusing on antitrust, consumer, and business litigation.  Mr. Boardman was a member of the trial team in *TFT-LCD*.  He was the primary author of the plaintiffs' draft of jury instructions, responded to and drafted trial briefs, and helped with various pre-trial motions and oppositions.  For his work on the *TFT-LCD* case, Mr. Boardman was nominated by Consumer Attorneys of California as a finalist for Consumer Attorney of the Year in 2013.  Mr. Boardman was one of the primary attorneys in *Potash,* and is counsel for the plaintiffs in *In re Municipal Derivatives Antitrust Litigation*, No. 08-md-1950-VM-GWG (S.D.N.Y.), *In re NCAA Student-Athlete Name & Likeness Litigation*, No. 4:09-cv-01967-CW (N.D. Cal.), and *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 3:07-md-1917-SC (N.D. Cal.).

Mr. Boardman received his Bachelor of Arts Degree from Vassar College in 2004, majoring in Political Science and Film Studies.  He received his Juris Doctorate from the University of California, Hastings College of the Law in 2009.  While at Hastings, Mr. Boardman was a member of the Hastings Science and Technology Law Journal and worked as a research assistant to professors Geoffrey C. Hazard, Jr. and Rory K. Little.  Prior to joining the firm, Mr. Boardman served as a judicial law clerk to Hon. Christina Reiss in United States District Court, District of Vermont.

Mr. Boardman is admitted to the state bars of California and New York, the Northern District of California, the Central District of California, the Southern District of New York, and the Ninth Circuit Court of Appeals.

**D.**     **LACERA's Complaint Reflects Pearson Simon's Over Two-Year Investigation of the CDS Trading Market**

Pearson Simon began its investigation of the CDS trading market in early 2011, as efforts to reform the CDS trading market floundered in the drawn out rule-making process of the Securities Exchange Commission ("SEC") and Commodity Futures Trading Commission ("CFTC"). Simon Decl., ¶ 4. Pearson Simon discovered an opaque trading market with information on CDS prices tightly controlled by the Defendant Dealer Banks in conjunction with Markit. Certain of the Defendant Dealer Banks hold majority control of Markit.

Reviewing OCC quarterly trading reports, academic research on the impact the lack of pricing transparency had on CDS pricing, and other publicly available information, Pearson Simon concluded by early 2012 that there was a basis to allege that the Defendant Dealer Banks dominated CDS trading to the extreme financial detriment of market participants such as LACERA. *Id.*, ¶ 5. Following consultation with experts on the CDS trading market, Pearson Simon also concluded that the Defendant Dealer Banks had obtained and maintained their control over the CDS trading market through anti-competitive practices and agreements. *Id.*, ¶ 7. Despite limited public information available on the CDS trading market and the Defendant Dealer Banks' complete control over the CDS market infrastructure, Pearson Simon independently drafted a detailed complaint, without relying on others' complaints, laying out the nature of the Defendant Dealer Banks' conspiracy to inflate CDS transactions costs. Pearson Simon had a draft complaint prepared before any cases were filed. *Id.*, ¶ 9.

Pearson Simon consulted with market participants such as LACERA to develop further information in support of the complaint. *Id.* As can be expected, because of the dominant position of the Defendant Banks and fear of retaliation, many potential plaintiffs were hesitant to become named plaintiffs. However, in April 2013, the EC announced its preliminary findings of anticompetitive conduct by the large banks and Markit. Having drafted remarkably similar allegations in 2012 without the benefit of the EC's investigation, Pearson Simon's attorneys concluded that the antitrust theory it had developed was fully supported by the available facts.

Pearson Simon shortly thereafter talked to a number of public entities interested in pursuing legal remedies against the Defendant Dealer Banks that controlled CDS trading. *Id*. The complaint filed on behalf of LACERA is the product of Pearson Simon's over two-year investigation and analysis of the CDS trading market. *Id*., ¶ 10.

**E.      Pearson Simon Is Willing and Able to Commit to Leading This Case**

Pearson Simon has demonstrated it is willing to commit the resources and time necessary to litigate a complex class action such as this one, as it has done in many other cases.

For example, in *TFT-LCD*, Pearson Simon and co-counsel managed discovery of roughly 8 million documents consisting of over 40 million pages, and oversaw as many as 136 document reviewers working concurrently. *Id*., ¶ 16. Approximately 1.5 million foreign language documents were identified, and nearly half were reviewed by foreign language reviewers. *Id*. The direct purchaser class served 184 sets of discovery requests, responded to 75, and engaged in extensive discovery motion practice before a special master. *Id*. Counsel took and defended more than 130 depositions: 50 in San Francisco, 40 elsewhere across the country, and 41 outside of the United States. *Id*. In all, counsel incurred over $11 million in costs and contributed over 250,000 hours of work on the case, prior to trial. *Id*. The Court credited counsel's work as an "excellent result obtained for the Class" after more than five years of litigation. *Id*., Exhibit A. The Court noted that counsel did "an excellent job in this case handling what has been a really enormous and cumbersome process." *Id*.

The key to leading a case of this magnitude is to plan the case by reverse-engineering it from the perspective of what the trial will look like. In *Potash*, for example, Mr. Simon argued almost all motions and all of the appeals, and was involved in discovery and settlement negotiations. This personal involvement is critical to true leadership in a case of this magnitude. It is also critical that the principle attorney supervising the case is involved in all aspects of the case and has tried an antitrust case. Not many are tried.

As noted above, Mr. Simon and his firm are lead counsel in several pending cases. The Court may be concerned about whether that would challenge the firm's resources. However, any

experienced class action antitrust attorney who would be in contention for leadership in a case like this will be lead counsel in other cases, and have concurrent case responsibilities. That is manageable by being organized and efficient. In fact, larger firms sometimes end up being less efficient than smaller firms who are used to multi-tasking. Nonetheless, a case this size may merit more than one firm as lead, and Pearson Simon should be one of those firms.

Pearson Simon also works well with other firms, and has done so with many of the firms engaged in this litigation, should the Court choose to appoint more than one firm as lead counsel.

## F.    **LACERA Will Fully Protect the Absent Class Members' Interests**

Significantly, of the cases filed to date, LACERA appears to have the largest affected commerce. LACERA will protect the interests of the putative class and ensure the attorneys litigating the case work efficiently. As noted above, LACERA has the resources and commitment to protect the class's interests. It purchased or sold a significant amount ($2.8 billion notional value) of CDS during the class period and purchased CDS from every single named Defendant Dealer Bank. *See* LACERA Complaint, ¶¶ 12-25. LACERA is not and has never been in bankruptcy, has no potential or actual conflicts with Defendants, conducted all of its CDS transactions within the United States, and does not hold its claims by virtue of any assignment.

The breadth of LACERA's experience in the CDS market, the size of its trades, and the fact that it is an operating public pension plan whose mission includes protecting the public interest and keeping markets competitive, make it a superior class representative. Pearson Simon is honored to represent such a respected public entity.

Respectfully submitted,

DATED: Novemebr 8, 2013          BRUCE L. SIMON
                                 GEORGE S. TREVOR
                                 AARON M SHEANIN
                                 THOMAS K. BOARDMAN

_/s/ Bruce L. Simon_
BRUCE L. SIMON

PEARSON, SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 8, 2013, I filed and therefore caused the foregoing document and accompanying papers (if any) to be served via the CM/ECF system in the United States District Court for the Southern District of New York on all parties registered for CM/ECF in the above-captioned matters.

/s/ Bruce Simon
Bruce Simon