UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: CREDIT DEFAULT SWAPS ANTITRUST LITIGATION | Master Docket 1:13-md-2476 (DLC) <br><br> ECF CASE |
| This Document Relates to All Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT INTERNATIONAL SWAPS AND DERIVATIVES ASSOCIATION'S MOTION TO DISQUALIFY QUINN, EMANUEL, URQUHART & SULLIVAN LLP AS COUNSEL FOR PLAINTIFF SALIX CAPITAL US INC.**

SIMPSON THACHER & BARTLETT LLP

Matthew J. Reilly
Abram J. Ellis
1155 F St. NW
Washington, DC 20004
Tel: (202) 636-5500
Fax: (202) 636-5502

*Attorneys for Defendant International Swaps and Derivatives Association*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 4

    I.    THE PARTIES ............................................................................................................ 4

    II.   MR. CUNNINGHAM'S REPRESENTATION OF ISDA ........................................... 4

    III.  QUINN EMANUEL'S INADEQUATE RESPONSE TO ISDA'S ETHICAL CONCERNS ................................................................................................................ 6

STANDARD OF REVIEW ....................................................................................................... 7

ARGUMENT ............................................................................................................................. 8

    I.    MR. CUNNINGHAM CANNOT BE ADVERSE TO ISDA IN THE INSTANT ACTION BECAUSE OF HIS PRIOR REPRESENTATION OF ISDA IN SUBSTANTIALLY RELATED MATTERS .................................................................. 8

    II.   QUINN EMANUEL MUST BE DISQUALIFIED BECAUSE THE IRRECONCILABLE CONFLICT OF MR. CUNNINGHAM IS IMPUTED TO QUINN EMANUEL ............. 11

    III.  QUINN EMANUEL'S ASSERTIONS OF A TIMELY AND EFFECTIVE SCREEN ARE INSUFFICIENT TO PROTECT ISDA'S CONFIDENTIAL AND PRIVILEGED INFORMATION ......................................................................................................... 12

        A.   Mr. Cunningham's Substantial Knowledge of Material, Relevant, and Substantial Information Make Quinn Emanuel's Ethical Screen Ineffective and Inconsequential ................................................................................................. 12

        B.   Mr. Cunningham Currently Represents Salix in a Related Antitrust Litigation with the Same Attorneys ................................................................................... 14

        C.   Quinn Emanuel Does Not Deny that it Possesses Information from Mr. Cunningham that Has Been Useful in Initiating or Prosecuting this Case ............ 15

CONCLUSION ........................................................................................................................ 16

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Int'l Grp. v. Bank of Am. Corp.*,
 827 F. Supp. 2d 341 (S.D.N.Y. 2011)................................................................................. 13, 14

*Blue Planet Software, Inc. v. Games Int'l, LLC*,
 331 F. Supp. 2d 273 (S.D.N.Y. 2004)........................................................................ 8, 9, 10, 12

*Bd. of Educ. v. Nyquist*,
 590 F.2d 1241 (2d Cir. 1979)........................................................................................................ 7

*Evans v. Artek*,
 715 F.2d 788 (2d Cir. 1983)......................................................................................................... 8

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
 409 F.3d 127 (2d Cir. 2005)......................................................................................................... 7

*Hull v. Celanese Corp.*,
 513 F.2d 568 (2d Cir. 1975)......................................................................................................... 8

*Kassis v. Teacher's Ins. & Annuity Ass'n*,
 695 N.Y.S.2d 515 (N.Y. 1999) ............................................................................................. 12, 13

*Lott v. Morgan Stanley Dean Witter & Co. Long-Term Disability Plan*,
 No. 03 CIV.9235 HB, 2004 WL 2980193 (S.D.N.Y. Dec. 23, 2004) .................................. 11, 12

*Marshall v. State of NY Div. of State Police*,
 952 F. Supp. 103 (N.D.N.Y. 1997).............................................................................................. 12

*Miroglio v. Morgan Fabrics Corp.*,
 340 F. Supp. 2d 510 (S.D.N.Y. 2004).......................................................................................... 7

*Mitchell v. Metro. Life Ins. Co.*,
 No. 01-CIV-2112 (WHP), 2002 WL 441194 (S.D.N.Y. Mar. 21, 2002) ............................. 12, 14

*Monzon v. U.S.*,
 Nos. 13 Civ.1943(DLC), 99, 2013 WL 4804095 (S.D.N.Y. Sept. 9, 2013)................................ 10

*Murray v. Metro. Life Ins. Co.*,
 583 F.3d 173 (2d Cir. 2009)......................................................................................................... 5

*Papanicolaou v. Chase Manhattan Bank, N.A.*,
 720 F. Supp. 1080 (S.D.N.Y. 1989)......................................................................................... 7, 8

*Papyrus Tech. Corp. v. New York Stock Exch., Inc.*,
 325 F. Supp. 2d 270 (S.D.N.Y. 2004) .................................................................................... 12

*United States v. Oberoi*,
 331 F.3d 44 (2d Cir. 2003) ................................................................................................. 7, 9

## State Rules

22 NYCRR 1200.0, Rule 1.6 ................................................................................................ 1, 10, 11

22 NYCRR 1200.0, Rule 1.9 ................................................................................................ 1, 10, 11

22 NYCRR 1200.0, Rule 1.10 ................................................................................................ 1, 11, 12

22 NYCRR 1200.0, Rule 3.7(b)(1) ................................................................................................ 5

## Other Authorities

Charles W. Wolfram, Former-Client Conflicts,
 10 GEO. J. LEGAL ETHICS 677, 723 (1996-1997) ................................................................ 10, 11

Pursuant to New York Rules of Professional Conduct (the "New York Rules") 1.6, 1.9, and 1.10, Defendant International Swaps and Derivatives Association ("ISDA") respectfully submits this Memorandum of Law in Support of its Motion to Disqualify Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") as Counsel of Plaintiff Salix Capital US Inc. ("Salix"), and all others similarly situated, due to an irreconcilable ethical conflict based on the prior representation of ISDA in substantially related matters by Quinn Emanuel partner Daniel Cunningham, and his possession of ISDA's confidential information that would be materially adverse to ISDA if used by Quinn Emanuel in its representation of Salix.

## PRELIMINARY STATEMENT

Salix alleges that ISDA conspired with certain of its member banks, and a number of other industry participants, to "eliminate competition in the CDS market so they could reap enormous financial gains by overcharging and underpaying other market participants that lacked the information, insider status, and market clout wielded by Defendants here." *Salix* Am. Compl. ¶ 1.[1] The *Salix* action, along with all other related actions, has been consolidated in this Court by Order of the Judicial Panel on Multi-District Litigation. *See* Dkt. # 1. Quinn Emanuel represents Salix and has applied for appointment as lead Plaintiffs' counsel. *See* Dkt. # 80. ISDA seeks Quinn Emanuel's disqualification because Mr. Cunningham, a Quinn Emanuel partner, has obtained confidential knowledge and information related to ISDA from his prior representation of ISDA in substantially related matters, and Quinn Emanuel's involvement in this action risks serious prejudice to ISDA based on the possible use of that confidential information adverse to ISDA.

---

[1] "CDS" is defined as a credit default swap, a "bilateral contract[] that transfer[s] a credit exposure on a specific 'reference entity,'" pursuant to which the "buyer of a CDS makes periodic payments to the seller in exchange for the seller's agreement to make a positive payoff to the buyer if/when a 'credit event' occurs." *Salix* Am. Compl. ¶ 3.

1

Quinn Emanuel has not denied that Mr. Cunningham obtained confidential and privileged information from ISDA related to the instant litigation.  Dkt. # 76, at 2 (rejecting the sufficiency of ISDA's claims but not denying Mr. Cunningham's knowledge of confidential and privileged information).  Rather, Quinn Emanuel has represented to ISDA that it instituted an ethical screen "when it became apparent that ISDA might be involved" in the suit, and has indicated that Mr. Cunningham has "not shared any information gained from his representation of ISDA" with anyone at Quinn Emanuel.  *See* Ex. 2 of the Declaration of Abram J. Ellis ("Ellis Declaration").

Quinn Emanuel's implementation of an ethical screen gives no comfort that ISDA's confidential and privileged information will not be used against ISDA in this case because of a unique combination of facts.  *First*,  Mr. Cunningham's substantial knowledge of ISDA's material and relevant information, obtained over the course of twenty years as ISDA's go-to outside counsel, make him uniquely situated.  It is difficult to envision how Mr. Cunningham can separate his current knowledge and understanding of the credit default swap industry from the confidential and privileged information he obtained while serving as ISDA's outside counsel.  Quinn Emanuel has not demonstrated that Mr. Cunningham can clearly delineate between the confidential and privileged information he obtained as ISDA's outside counsel, and the knowledge and information he has obtained from other sources.

*Second*, Quinn Emanuel instituted the ethical screen only after it became apparent that ISDA would be involved in the case, suggesting that Quinn Emanuel had already engaged in significant fact-finding, case preparation, and other pre-filing activities adverse to ISDA before the screen was implemented.  Thus, there is no comfort that Quinn Emanuel's bringing of the suit against ISDA was not the result, in part, of ISDA's confidential and privileged information.

*Third*, an ethical screen with respect to this single matter is insufficient to ensure that Mr. Cunningham has not already shared and will not in the future share with other Quinn Emanuel attorneys ISDA's confidential and privileged information that could prejudice ISDA in the instant action.  Indeed, Quinn Emanuel attorneys proudly represent that they are involved in litigation around the country involving credit default swaps (Dkt. # 81, at 2), and Mr. Cunningham regularly litigates cases with the other attorneys involved in this action.  Mr. Cunningham currently represents Salix in another antitrust litigation involving the alleged manipulation of LIBOR, and the complaint in that action references ISDA's products and uses the CDS industry as a baseline for allegations relating to LIBOR.  The exact same attorneys representing Salix in this matter—Mr. Brockett, Mr. Olson, and Mr. Andersen—represent Salix in the LIBOR matters, and thus the same attorneys who are "walled off" from Mr. Cunningham in this action are actually working with Mr. Cunningham in another antitrust suit where ISDA's products and the CDS industry are at issue.  It is simply insufficient that Mr. Cunningham is "screened" from participating in this litigation, but allowed to assist Quinn Emanuel in connection with other matters where ISDA is not a defendant, such that the Quinn Emanuel lawyers get the benefit of Mr. Cunningham's knowledge of ISDA's confidential information without actually violating the technical terms of the ethical screen Quinn Emanuel alleges has been instituted.

For these reasons, ISDA respectfully requests that its motion to disqualify Quinn Emanuel be granted.

## FACTUAL BACKGROUND

I.  THE PARTIES.

ISDA is a global trade organization of participants in the market for over-the-counter derivatives.  *See* Ex. 5 of the Ellis Declaration.  ISDA has more than 800 members from 60 countries, and its membership consists of derivatives dealers, service providers, and end-users.  *Id.*  ISDA created and maintains the standardized contract, known as the ISDA Master Agreement, which is used to enter into derivatives transactions, including CDS transactions.  *Id.*

Mr. Cunningham has been a partner at Quinn Emanuel since July 2009.  *See* Ex. 1 of the Ellis Declaration.  Prior to joining Quinn Emanuel, Mr. Cunningham worked at several other law firms.  From 2001 to 2009, Mr. Cunningham was a Senior Partner at Allen & Overy LLP in New York, New York.  *Id.*  From 1979 – 2001, Mr. Cunningham worked at Cravath, Swaine & Moore in New York, New York, as a Partner from 1983 – 2001 and as an associate from 1979 – 1983.  *Id.*  From 1976 – 1978, Mr. Cunningham worked as an associate at Orrick, Herrington & Sutcliffe in San Francisco, California.  *Id.*

II.  MR. CUNNINGHAM'S REPRESENTATION OF ISDA.

Mr. Cunningham served as the primary outside counsel to ISDA over the course of twenty years, during which time he had access to, and gained, ISDA's confidential information.  *See* Declaration of Katherine Tew Darras ("Darras Declaration") ¶¶ 3, 4.  During his representation, Mr. Cunningham advised ISDA regarding the establishment of ISDA's Master Agreements, other derivatives documentation, and provided day-to-day legal advice on a range of issues.  *Id.* ¶ 4.

Mr. Cunningham's Quinn Emanuel biography highlights the depth and breadth of Mr. Cunningham's work with ISDA:

> [Mr. Cunningham] was U.S. counsel to ISDA *from its inception*.  He is *widely recognized as a principal architect of the ISDA Master Agreements and related*

4

> *ISDA credit derivatives and other definitions*. Moreover, he advised ISDA for many years on the preparation of US insolvency legislation creating and *improving safe harbors for swaps and other capital markets products under various US insolvency regimes*.

Ex. 1 of the Ellis Declaration (emphasis added).[2]

Mr. Cunningham has advised ISDA on issues substantially related to the allegations of the *Salix* complaint. For example, Mr. Cunningham advised ISDA on licensing issues, specifically with respect to the licensing of ISDA's pricing information to Eurex Credit Clear. *See* Darras Declaration ¶ 6. ISDA's licensing negotiations with Eurex Credit Clear relate to the central allegations in the *Salix* complaint.[3] Indeed, the *Salix* complaint notes that Eurex Credit Clear was "another potential clearinghouse" that "stopped marketing its CDS clearing operation" because of the purported conspiracy. *Salix* Am. Compl. ¶ 134. This allegation—that potential clearinghouses were prevented from entering the alleged relevant market—is a core argument of the Plaintiffs' claims.[4]

---

[2] Given Mr. Cunningham's stature within the CDS industry, it is not outside the realm of possibility that a party would seek Mr. Cunningham's testimony as a fact witness. Should that situation arise, Mr. Cunningham and Quinn Emanuel would also potentially need to be disqualified as a result. *See* 22 NYCRR 1200.0, Rule 3.7(b)(1); *see also Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178-79 (2d Cir. 2009) (explaining that a law firm can be disqualified by imputation if the movant proves by clear and convincing evidence that "[A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result.").

[3] *See Salix* Am. Compl. ¶ 63 ("There is still essentially no buy-side or sell-side trading of CDS on exchanges or electronic platforms in the United States, even though such platforms are used by dealers in Europe (*e.g.*, Eurex Credit Clear and CDSClear)."); *id.* ¶ 156 ("Using the 10-year German government bond (the Bund Future, listed on the Eurex exchange) as an example, the analysis found that it traded at a bid/ask spread that was, on average, 55% smaller than the corresponding bid/ask spread in the underlying German government bond OTC market.").

[4] *See Essex* Compl. ¶ 146 ("Defendants' concerted effort in refusing to deal with CME Clearing is borne out in the data. . . Two other clearing houses operated by Eurex and Euronext Liffe have already shuttered their business . . . ."); *Unipension* Am. Compl. ¶ 111 (same); *MF Global* Compl. ¶ 106 (same); *LBBW* Compl. ¶ 155 (same).

Mr. Cunningham also acted as antitrust counsel to ISDA, advising ISDA's board of directors and ISDA on antitrust issues under both U.S. and EU law.  *See* Darras Declaration ¶ 5.  Plaintiffs' claims allege violations of U.S. antitrust laws, including Sections 1 and 2 of the Sherman Act, and those allegations implicate topics that came within the antitrust advice Mr. Cunningham provided, including the risk of antitrust violations involving trade associations and their constituent members.  *See id.*

Mr. Cunningham's advice on these topics necessarily involved his receipt of ISDA's confidential, privileged information substantially related to the allegations of this case. *See id*. ¶¶ 4-6.

### III.    QUINN EMANUEL'S INADEQUATE RESPONSE TO ISDA'S ETHICAL CONCERNS.

In response to ISDA's letter informing Quinn Emanuel of its concerns regarding Quinn Emanuel's involvement in this case, Quinn Emanuel filed a letter with the Court (Dkt. # 76) and sent ISDA's outside counsel a separate letter reiterating the statements provided to the Court.  *See* Ex. 2 of the Ellis Declaration.  Quinn Emanuel has asserted in each of these letters that it instituted a timely and effective screen.

In its letter to the Court, Quinn Emanuel states that "Mr. Cunningham was 'walled off' from this matter using strict ethical screening procedures."  *See* Dkt. # 76, at 1. Further, Quinn Emanuel asserts that Mr. Cunningham is "prohibited from discussing this case with anyone in the firm" and likewise "everyone in the firm is prohibited from inquiring of Mr. Cunningham about this case." *See id.* at 1.  Quinn Emanuel's general statements fail to specify when the screen was put in place, what conversations (if any) were had before the implementation of the screen, and how those prior conversations influenced Quinn Emanuel's strategy or even the filing of this suit.  Further, the letter never mentions Mr. Cunningham's

work alongside the other Quinn Emanuel attorneys involved in this case in other matters implicating the CDS industry or ISDA's products.

In its separate letter to ISDA's outside counsel, Quinn Emanuel states that "[e]arly in this case, when it became apparent that ISDA might be involved, Quinn Emanuel instituted firm-wide ethical screening procedures walling Mr. Cunningham off from the Salix action." *See* Ex. 2 of the Ellis Declaration, at 1. Again, this broad statement does not explain what information Mr. Cunningham previously provided, how the screen would prevent Mr. Cunningham from sharing information about ISDA in the context of other cases, or provide comfort that Mr. Cunningham can effectively compartmentalize the confidential and privileged information about ISDA obtained over two decades from his other general background knowledge of the industry.

## STANDARD OF REVIEW

This Court is vested with the ability to disqualify counsel because of a conflict of interest that violates the New York Rules of Professional Conduct. *See, e.g.*, *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). The Second Circuit has unequivocally held that disqualification is appropriate where there is a risk that confidential information acquired from a former client may be used to the former client's disadvantage. *See, e.g.*, *United States v. Oberoi*, 331 F.3d 44, 51 (2d Cir. 2003); *Miroglio v. Morgan Fabrics Corp.*, 340 F. Supp. 2d 510, 512 (S.D.N.Y. 2004) (noting disqualification is warranted in appropriate circumstances to ensure faithful adherence to the attorney's obligation to preserve client confidences, even following termination of the attorney-client relationship (citing *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979))). ISDA acknowledges and agrees that the proper establishment of an effective ethical screen, in general, regularly resolves actual or potential conflicts of the type at issue here. *See Papanicolaou v. Chase Manhattan Bank, N.A.*,

720 F. Supp. 1080, 1086 (S.D.N.Y. 1989) ("A firm can sometimes rebut the presumption of shared knowledge and thus avoid disqualification if it shows that it implemented effective prophylactic measures to insulate an infected attorney.").[5]

## ARGUMENT

### I. MR. CUNNINGHAM CANNOT BE ADVERSE TO ISDA IN THE INSTANT ACTION BECAUSE OF HIS PRIOR REPRESENTATION OF ISDA IN SUBSTANTIALLY RELATED MATTERS.

The Second Circuit has established that an attorney must be disqualified from a matter when:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 276 (S.D.N.Y. 2004) (citing *Evans v. Artek*, 715 F.2d 788, 791 (2d Cir. 1983)).  "When a party moves for disqualification of an adversary's attorney, 'any doubt is to be resolved in favor of disqualification.'"  *Blue Planet*, 331 F. Supp. 2d at 275 (citing *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)).  The Second Circuit has made it clear that disqualification is mandated when there is a risk that confidential information may be used against a former client:

---

[5] ISDA does not challenge the general proposition that in the vast majority of cases the establishment of an ethical screen will resolve disputes of this type.  The instant motion addresses the unique combination of facts that compel the conclusion that the Quinn Emanuel screen employed here is ineffective, including:  (1) Mr. Cunningham served as primary outside counsel for ISDA for twenty years; (2) Mr. Cunningham regularly works with, and in fact currently represents, the same Plaintiff in other cases alongside the same Quinn Emanuel attorneys involved in this action, and at least one of those cases implicates the CDS industry and ISDA's products; and (3) there is no guarantee that the implementation of the screen occurred prior to the divulgence of privileged and confidential information that led to the suit against ISDA.

8

> The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case. These considerations require application of a strict prophylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage.

*Blue Planet*, 331 F. Supp. 2d at 275 (citing *United States v. Oberoi*, 331 F.3d 44, 51 (2d Cir. 2003)). It is indisputable that Mr. Cunningham must be disqualified based on his representation of ISDA, as the three prongs outlined by the Second Circuit for disqualification are all clearly met.

*First*, ISDA, the moving party here, is a former client of Mr. Cunningham and Mr. Cunningham's firm, Quinn Emanuel, now represents Salix, a party adverse to ISDA in this action.

*Second*, there is a substantial relationship between the subject matter of Mr. Cunningham's prior representation of ISDA and the issues in the present lawsuit. *See Blue Planet*, 331 F. Supp. 2d at 277. Mr. Cunningham references the fact that he is "widely recognized as the principal architect of the ISDA Master Agreements and related ISDA credit derivatives[.]" Ex. 1 of the Ellis Declaration. CDS are the very core of the Plaintiffs' allegations. The *Salix* complaint notes that the ISDA "Master Agreement" and other documents are used "in *nearly every CDS transaction*." *Salix* Am. Compl. ¶ 43 (emphasis added).

Moreover, Mr. Cunningham advised ISDA on licensing and antitrust issues, which are also central to the Plaintiffs' allegations. Mr. Cunningham advised ISDA on licensing issues, specifically with respect to the licensing of ISDA's pricing information to Eurex Credit Clear and other exchanges. *See* Darras Declaration ¶ 6. Quinn Emanuel attempts to distract the Court from this fact by alleging that ISDA merely mentions Eurex and licensing issues generally. However, Mr. Cunningham's work for ISDA relating to Eurex Credit Clear touches on the very

9

issues raised in the Plaintiffs' complaint because the Eurex Credit Clear licensing issue Mr. Cunningham was involved in is precisely the issue Salix refers to in its complaint. *Compare* Darras Declaration ¶ 6, *with Salix* Am. Compl. ¶¶ 126-134.

Finally, it is telling that Quinn Emanuel completely ignores Mr. Cunningham's previous antitrust work for ISDA, in which he advised ISDA's board of directors on antitrust issues under U.S. and EU laws. Plaintiffs' allegations involve supposed violations of U.S. antitrust laws, including Sections 1 and 2 of the Sherman Act, and those allegations implicate topics that fall squarely within the antitrust advice provided by Mr. Cunningham to ISDA, particularly the risk of antitrust violations involving trade associations and their constituent members. *See* Darras Declaration ¶ 5.

*Third*, Mr. Cunningham had access to relevant privileged information in the course of his prior representation of ISDA. *See Blue Planet*, 331 F. Supp. 2d at 277-78. Courts have recognized that a conflict is not cured by an attorney's present failure of recollection. *See Monzon v. U.S.*, Nos. 13 Civ.1943(DLC), 99, 2013 WL 4804095, at *4 (S.D.N.Y. Sept. 9, 2013) ("The right to loyal counsel who will maintain the confidentiality of communications and not take any materially adverse position to his former client in substantially related matters survives both the active representation of the client and the vagaries of his counsel's recollection."). In the instant case, Mr. Cunningham clearly acquired information protected by Rule 1.6 and Rule 1.9(c), and, through his representation of ISDA, he gained confidential information which is relevant to the litigation and will be detrimental to ISDA if utilized by Quinn Emanuel. *See* Darras Declaration ¶¶ 4-6.

*Fourth*, Mr. Cunningham's prior advisory role has allowed him to obtain ISDA's "playbook information." Playbook information has been described as:

> [S]ettlement strategy and philosophy, . . . [the] sequence of demands or other tactics the former client uses in negotiating business deals, how the former client

10

> generally conducts its business, how the client deals with the stresses of litigation, what quirks of personality the client possesses or suffers from, or, in general, what 'hot buttons' can be pushed to cause panic or confusion to the former client. Confidential information about any one of those elements, it is claimed, would give the lawyer significant advantage if it were permissible to represent an adversary against the former client, regardless of the factual dissimilarities between the two representations in other respects.

Charles W. Wolfram, Former-Client Conflicts, 10 GEO. J. LEGAL ETHICS 677, 723 (1996-1997).  Given Mr. Cunningham's long term relationship with ISDA, Mr. Cunningham is in possession of the exact type of information that could be of great disadvantage to ISDA.

## II.     QUINN EMANUEL MUST BE DISQUALIFIED BECAUSE THE IRRECONCILABLE CONFLICT OF MR. CUNNINGHAM IS IMPUTED TO QUINN EMANUEL.

In the Second Circuit, it is well-settled that the conflict of a single attorney shall be imputed to the attorney's entire firm if the attorney formerly represented a client in a substantially related matter to a matter in which the firm represents a client whose interests are materially adverse to the former client, and the attorney acquired confidential information of the former client that would be protected by Rule 1.6 and Rule 1.9 of the New York Rules.  The New York Rules provide:

> When a lawyer becomes associated with a firm, the firm may not knowingly represent a client in a matter that is the same as or substantially related to a matter in which the newly associated lawyer, or a firm with which that lawyer was associated, formerly represented a client whose interests are materially adverse to the prospective or current client unless the newly associated lawyer did not acquire any information protected by Rule 1.6 or Rule 1.9(c) that is material to the current matter.

22 NYCRR 1200.0, Rule 1.10.  As one court has explained, the "imputation rule is based upon the belief that when attorney-client confidences are disclosed to a member of the law firm, every other attorney in the law firm has the opportunity to ascertain the information gleaned from disclosure." *Lott v. Morgan Stanley Dean Witter & Co. Long-Term Disability Plan*, No. 03

11

CIV.9235 HB, 2004 WL 2980193, at *4 (S.D.N.Y. Dec. 23, 2004).  Imputation is appropriate unless there is evidence in the record which demonstrates that an attorney "perform[ed] only minimal work" for the former client.  *See Blue Planet*, 331 F. Supp. 2d at 278 (citing *Papyrus Tech. Corp. v. New York Stock Exch., Inc.*, 325 F. Supp. 2d 270, 276-77 (S.D.N.Y. 2004)).

Mr. Cunningham's clear conflict is imputed to Quinn Emanuel.  As explained in detail above, Mr. Cunningham's representation on numerous substantially related matters are materially adverse to ISDA's interests in the present litigation.  Accordingly, Mr. Cunningham's conflict is imputed to Quinn Emanuel.  *See* 22 NYCRR 1200.0, Rule 1.10.

### III. QUINN EMANUEL'S ASSERTIONS OF A TIMELY AND EFFECTIVE SCREEN ARE INSUFFICIENT TO PROTECT ISDA'S CONFIDENTIAL AND PRIVILEGED INFORMATION.

#### A. Mr. Cunningham's Substantial Knowledge of Material, Relevant, and Substantial Information Make Quinn Emanuel's Ethical Screen Ineffective and Inconsequential.

Although an ethical screen is often sufficient to overcome otherwise prohibited activities, law firms are not able to avoid disqualification in every instance "simply by adopting screening methods." *Marshall v. State of NY Div. of State Police*, 952 F. Supp. 103, 110 (N.D.N.Y. 1997).  For example, when an attorney has played an "appreciable role" in representing an adversary in a similar matter, a screen will, as a matter of law, be ineffective to rebut the presumption of shared confidences.  *See*, *e.g.*, *Kassis v. Teacher's Ins. & Annuity Ass'n*, 695 N.Y.S.2d 515, 520 (N.Y. 1999) (holding that the "erection of a [ethical screen] in this case . . . is inconsequential" because the conflicted attorney "played an appreciable role as counsel for" the former client on similar matters); *Mitchell v. Metro. Life Ins. Co.*, No. 01-CIV-2112 (WHP), 2002 WL 441194, at *9-10 (S.D.N.Y. Mar. 21, 2002) (holding attorney's personal conflict was imputed to firm based on the attorney's substantial role and noting Second Circuit has expressed consistent skepticism about screening as a remedy for conflicts of interest).

12

Mr. Cunningham's role as counsel for ISDA for twenty years raises doubts that a screening mechanism could be effective in the instant case. In *Kassis*, the court held that the implementation of an ethical screen was "inconsequential" and that disqualification of an entire law firm was required. 695 N.Y.S.2d at 520. The court reasoned that the attorney played an "appreciable role as counsel" for the former client, because he was "sufficiently knowledgeable and steeped in the files" of the case through his "extensive participation" litigating for his former client. *Id*. Like the attorney in *Kassis*, Mr. Cunningham played an appreciable role serving as ISDA's primary legal counsel. During his representation he conversed regularly with ISDA, and was extensively involved with matters at the heart of this litigation. In particular, he advised ISDA on the establishment of the Master Agreements, counseled ISDA on licensing issues, and provided antitrust counsel to ISDA on issues regarding trade associations. *See* Darras Declaration ¶¶ 4-6. This extensive and appreciable role makes it difficult to conclude that Mr. Cunningham himself can compartmentalize information he obtained from ISDA from his other activities as a specialist in the CDS industry. Accordingly, unless Mr. Cunningham is precluded from ever discussing the CDS industry with the same Quinn Emanuel attorneys involved in this suit, it is difficult to imagine how the screen could be effective.

Quinn Emanuel's reliance on *American International Group v. Bank of America Corp.*, 827 F. Supp. 2d 341 (S.D.N.Y. 2011) is misplaced. Although the court in *American* denied a motion to disqualify, the situation there was entirely different. First, the attorney with the purported conflict, Mr. Becker, voluntarily left the firm a month after the defendants' raised concern about a risk of future disclosures. *Id.* at 344. Unlike Mr. Becker, Mr. Cunningham remains at Quinn Emanuel and is actively litigating substantially related matters. Additionally, Mr. Becker had limited exposure to the underlying matter, as Mr. Becker worked for a subsidiary of the party moving for disqualification, and had only billed roughly 120 hours before leaving his

13

former firm.  *Id.*  Unlike Mr. Becker, Mr. Cunningham's involvement with the issues in dispute far exceeds the involvement of Mr. Becker.  As Mr. Cunningham notes in his biography, he has advised ISDA *since its inception*.  Clearly the twenty years Mr. Cunningham advised ISDA have led to more substantial involvement, and are further reasons why any ethical screening procedures Quinn Emanuel has erected are inadequate.  Additionally, the court in *American* held there was "de facto separation" between Mr. Becker, who worked in the London office, and the Quinn Emanuel attorneys handling the matter out of the firm's New York office.  *Id.* at 346-47.  However, unlike Mr. Becker, Mr. Cunningham works in the New York office, where the lead counsel and primary team of attorneys are handling the current case.  Thus, there is no such similar protection through a "de facto separation."

> **B.     Mr. Cunningham Currently Represents Salix in a Related Antitrust Litigation with the Same Attorneys.**

In *Mitchell*, a conflicted attorney was not personally involved in the matter against her former client, but two attorneys at her law firm were assigned to the case.  2002 WL 441194, at *10.  The conflicted attorney, who was subject to a screen, worked with one of those lawyers on another significant class action suit.  *Id.*  The firm was disqualified by imputation because of the "continuing danger that [the conflicted attorney] may inadvertently transmit information gained through her prior representation."  *Id.*  Just like the conflicted attorney in *Mitchell*, Mr. Cunningham is working on several related antitrust litigations regarding LIBOR, which focus on issues involving CDS and the ISDA Master Agreements.  Most notably, however, Mr. Cunningham currently represents Salix, the exact same Plaintiff Quinn Emanuel represents in the instant case.  In fact, Mr. Cunningham serves as co-counsel with *three of the exact same Quinn Emanuel attorneys who are representing Salix in the instant action*.  *See* Exs. 3 & 4 of the Ellis Declaration.  Although they involve a different set of allegations, the LIBOR complaints reference the CDS market, and make repeated references not just to the CDS industry

but to ISDA itself, with a particular focus on the ISDA Master Agreements.[6]  *See id.*  Just as in this case, the ISDA Master Agreements are mentioned numerous times in the plaintiffs' complaints.  Given the fact that Mr. Cunningham works with Mr. Brockett, Mr. Olson, and Mr. Andersen on other cases implicating CDS issues and ISDA, walling off Mr. Cunningham in this case is meaningless, because Mr. Cunningham can simply discuss his inside knowledge of ISDA in another context.  Quinn Emanuel's screen does nothing to alleviate ISDA's concerns that confidential information possessed by Mr. Cunningham will be shared with the exact same Quinn Emanuel attorneys working against ISDA in the instant case.

### C. Quinn Emanuel Does Not Deny that it Possesses Information from Mr. Cunningham that Has Been Useful in Initiating or Prosecuting this Case.

ISDA informed Quinn Emanuel of its ethical concerns on November 7, 2013.  Dkt. # 76-1.  Although Quinn Emanuel has asserted that it has erected ethical screens to prevent any conflict, Quinn Emanuel has failed to state and demonstrate that Mr. Cunningham never provided Quinn Emanuel with information related to the investigation, strategy or the decision to commence this action.  There is simply no comfort in the vague assertion that Mr. Cunningham was screened before the confidential information of ISDA that he possessed due to his prior representation of ISDA was obtained and used by Quinn Emanuel to the detriment of ISDA in the instant action.

---

[6] In his Quinn Emanuel biography, Mr. Cunningham self-identifies himself as "a principal architect of the ISDA Master Agreements and related ISDA credit derivatives and other definitions."  Ex. 1 of the Ellis Declaration.

## **CONCLUSION**

For all of these reasons, and any others the Court may deem just and proper, ISDA respectfully requests that its motion for disqualification be granted.

Dated: November 15, 2013

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By: /s/ Matthew J. Reilly
Matthew J. Reilly
Abram J. Ellis
1155 F St. NW
Washington, DC 20004
Tel: (202) 636-5500
Fax: (202) 636-5502

*Attorneys for Defendant International Swaps and Derivatives Association*