**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

IN RE CREDIT DEFAULT SWAPS ANTITRUST
LITIGATION

13 MD 2476 (DLC)

------------------------------------------------------------

This Document Relates to:

ALL ACTIONS

------------------------------------------------------------

**LOS ANGELES COUNTY EMPLOYEES RETIREMENT**
**ASSOCIATION'S OPPOSITION TO OTHER PLAINTIFFS'**
**APPLICATIONS FOR LEAD COUNSEL AND LEAD PLAINTIFF**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT ..........................................................................................................1

     A.     Pearson Simon Satisfies the Standard Under Rule 23(g).........................1

     B.     Pearson Simon Conducted a Thorough, Independent Investigation into the CDS Antitrust Conspiracy ...................................................................2

     C.     As a Large and Sophisticated Public Pension Fund, LACERA Understands Its Fiduciary Duty to Represent the Best Interests of the Class in this Case ..........5

     D.     LACERA Has Substantial Experience Managing Complex Litigation .................7

     E.     Pearson Simon Brings Unmatched Antitrust Experience To the Case ...................8

III.    CONCLUSION.......................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*,
    Case No. 12-2335 LAK (S.D.N.Y.) ...........................................................7

*In re Citigroup, Inc. (Focal Communications) Sec. Litig.*,
    Case No. 04-cv-5854 (S.D.N.Y.) ..............................................................7

*In re Enterasys Networks, Inc. Sec. Litig.*,
    Case No. C-0271 (D.N.H.) ........................................................................7

*In re King Pharmaceuticals Sec. Litig.*,
    Case No. 03-cv-77 (E.D. Tenn.) ...............................................................7

*In re Potash Antitrust Litig. (II).*,
    Case No. 08-cv-6910 (N.D. Ill.) ...............................................................8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
    MDL No. 1827 (N.D. Cal.) ........................................................................8

*Los Angeles County Employees Retirement Association, et al. v. Towers, Perrin, Forester
    & Crosby, Inc. et al.*,
    Case No. CV01-1351 DDP (C.D. Cal.) .....................................................7

*Minn-Chem, Inc. v. Agrium Inc.*,
    683 F.3d 845 (7th Cir. 2012) (*en banc*) ...................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(g) ...............................................................................1, 2

Fed. R. Civ. P. 23(g)(1)(A)-(B) ...................................................................2

Fed. R. Civ. P. 23(g)(2) ............................................................................2, 8

## I.     INTRODUCTION

Plaintiff Los Angeles County Employees Retirement Association ("LACERA") and its counsel, Pearson, Simon & Warshaw, LLP ("Pearson Simon"), submit this memorandum pursuant to the Court's November 6, 2013 Order allowing any opposition to the applications for appointment of interim lead plaintiff and counsel to be filed by November 22, 2013.  (ECF No. 57.)  Consistent with the *Manual For Complex Litigation* (Fourth) at §10.22, various plaintiffs and their counsel have made substantial efforts to organize the leadership of this case. Consensus has not been reached, however.  LACERA and Pearson Simon respectfully submit that they present the strongest combination of plaintiff and counsel to fairly and adequately represent the interests of the class.  Although there is a strong cast of attorneys seeking to be lead counsel, there are differences, as described below, that make LACERA and Pearson Simon the right choice.

Pearson Simon has investigated this case for nearly three years and has the resources to litigate the case effectively through trial.  Pearson Simon meets all the criteria for appointment of lead counsel under Federal Rule of Civil Procedure 23(g) and is the applicant best able to represent the interests of the class.  LACERA is one of the largest public pension funds in the United States.  It will provide the putative class with a sophisticated lead plaintiff that will fully represent the class members' best interests.  Accordingly, LACERA and Pearson Simon request that the Court enter an order appointing them as lead plaintiff and lead counsel, respectively.

## II.    ARGUMENT

### A.     Pearson Simon Satisfies the Standard Under Rule 23(g)

Under Rule 23(g), the Court considers the following factors in selecting interim lead counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; … (iv) the resources counsel will commit to representing the class[; … and] any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.

Fed. R. Civ. P. 23(g)(1)(A)-(B).  As detailed in LACERA's Application For Appointment of Pearson, Simon & Warshaw, LLP as Interim Lead Counsel (ECF No. 85) ("LACERA Lead Counsel Application"), and expanded upon below, Pearson Simon satisfies the standards under Rule 23(g) and in comparison to the other applicants is "best able to represent the interests of the class."  Fed. R. Civ. P. 23(g)(2).

### B.   Pearson Simon Conducted a Thorough, Independent Investigation into the CDS Antitrust Conspiracy

Pearson Simon's attorneys began investigating the CDS trading market more than two years ago.  As set forth in the Declaration of Bruce L. Simon In Support of Los Angeles County Employees Retirement Association's Opposition to Other Plaintiffs' Applications for Lead Counsel and Lead Plaintiff ("Simon Decl."), that investigation entailed extensive research into the CDS trading market by Pearson Simon attorneys and involved substantial work with industry consultants to analyze the market and understand the contours of the antitrust claims at issue here.

Pearson Simon commenced its investigation after it identified several inefficiencies in the CDS trading market.  Pearson Simon initially reviewed the Office of Controller of the Currency ("OCC") quarterly reports on derivative trading by United States-based banks.  Simon Decl. ¶ 5.  That analysis revealed not only that the five biggest United States banks control the CDS trading market, but also that the market share of these banks had actually increased since 2008.  In addition, Pearson Simon's attorneys investigated the role of Defendant Markit Group, Ltd.

("Markit") and other firms that made up the CDS trading market infrastructure.  Simon Decl. ¶ 5.

From its initial examination, Pearson Simon concluded that the Defendant Dealer Banks had a

strangle hold over CDS trading and controlled the market infrastructure, including Markit, which

provides CDS trading information to the Dealer Banks, and the recently formed CDS central

clearing house, now known as Ice Clear Credit.  *Id.*

Next, Pearson Simon examined academic research concerning the relationship between

opaque financial trading markets and supracompetitive transaction costs paid by market

participants.  *Id.* ¶ 6.  The academic literature provides economic support to the claims here.

Pearson Simon also sought the advice of industry consultants familiar with CDS and derivatives

trading.  *Id.* ¶ 7.  Pearson Simon reviewed OCC quarterly derivative trading reports going back

to 2008, FDIC reports on derivatives trading, particularly the CDS trading market, and the Bank

for International Settlements ("BIS") reports on CDS trading activity in international markets.

*Id.* ¶ 8.  In addition, Pearson Simon attorneys worked with consultants on fixed income asset

pricing.  *Id.* ¶ 7.  By the fall of 2011, Pearson Simon was in contact with a number of public

pension funds located throughout the country.  *Id.* ¶ 9.  From those discussions, Pearson Simon

developed an understanding of how those funds used CDS in their fixed income portfolios.  The

investigation provided sufficient information for Pearson Simon attorneys to start drafting a

complaint alleging antitrust violations in the CDS trading market by the Defendant Dealer

Banks.

Pearson Simon's attorneys also met with state and local officials overseeing public

pension funds.  Again, these meetings informed Pearson Simon's legal theories pled in

LACERA's Complaint.  Pearson Simon received voluminous trading information from the

public pension funds that the firm had consulted.  *Id.*  However, because much of the CDS

trading information was provided by outside money managers responsible for the pension funds' fixed income portfolios, there were certain inconsistencies in the manner of presentation. Pearson Simon and its consultants analyzed the CDS trading data and identified the counterparties to the CDS trades in order to better understand the magnitude of the claimed losses.  Simon Decl. ¶ 9.

The result of Pearson Simon's extensive research and analysis is reflected in LACERA's Complaint, which identifies by dollar amount CDS purchases and sales made by LACERA as to each of the Defendant Dealer Banks.[1]  Pearson Simon, with its co-counsel and the active participation of LACERA's legal staff, drafted LACERA's Complaint without relying upon any other plaintiff's complaint.  LACERA's Complaint sets forth a concise but detailed statement of Defendants' antitrust conspiracy that has caused antitrust injury to all CDS market participants such as LACERA.  That Complaint reflects its counsel's independent investigation.  It represents the considered analysis of Pearson Simon's attorneys working closely with its institutional client, bolstered by insights from consultants familiar in CDS trading and fixed income asset pricing.

Pearson Simon recognizes the efforts of other counsel, including their investigations as outlined in some of the moving papers.  Pearson Simon stands ready to work with other plaintiffs and their counsel in presenting a consolidated amended complaint that amalgamates these contributions in pleading this antitrust conspiracy among the world's largest banks.

---

[1] No other complaint filed in this multidistrict litigation provides such detailed information as to a plaintiff's specific purchases from the Defendant Dealer Banks.  As alleged in its Complaint, LACERA made CDS purchases and/or sales with each of the thirteen Defendant Dealer Banks.

**C.    As a Large and Sophisticated Public Pension Fund,
LACERA Understands Its Fiduciary Duty to Represent
the Best Interests of the Class in this Case**

LACERA is one of the largest county retirement system in the United States with more than 150,000 members and over 75 years of experience.[2]  LACERA satisfies its fiduciary duty to its members by promoting, enhancing, and efficiently administering a financially sound retirement and healthcare benefits program through prudent investment and conservation of plan assets.[3]  In 2001, LACERA adopted a litigation policy to protect the financial interests of its members and respond to increasing incidents of corporate corruption and fraud.  LACERA continues to meet its fiduciary duty by identifying, monitoring, and evaluating litigation in which the fund has an interest and pursuing claims that are in its best interests.[4]  This is one such case.  As a fiduciary to its members and a sizeable investor, LACERA has a strong interest in ensuring the fair and efficient operation of financial trading markets including those for CDS trading.

After receiving a full evaluation of the potential antitrust claims involving the CDS trading market, LACERA issued a Request For Proposals ("RFP") to national law firms that specialize in antitrust litigation for the purpose of selecting its litigation counsel.  LACERA's legal staff conducted an extensive vetting process of experienced applicants before retaining Pearson Simon along with Goodin, MacBride, Squeri, Day & Lamprey, LLP and The Lawrence Firm.  Simon Decl. ¶ 10.  In connection with this process, and consistent with its prior experience managing complex litigation, LACERA negotiated an arm's-length fee agreement

---

[2] *See* LACERA Annual Financial Report, 2012, p. 4.
(http://www.lacera.com/investments/Annual_Report/cafr-2012/docs/cafr-2012.pdf).

[3] *See* LACERA's Mission Statement
(http://www.lacera.com/about_lacera/mission_statement.html).

[4] *See* LACERA Annual Financial Report, 2012, p. 54.

which it considers to be in the best interests of not only its members, but also the putative class

of CDS purchasers and sellers with claims here.    Simon Decl. ¶ 11.  The RFP process and fee

negotiation ensured that there was real competition in the selection of LACERA's counsel.

Pearson Simon believes that LACERA is the most adequate lead plaintiff among the

group vying for the position.  Of the public pension plans that have applied for appointment,

LACERA appears to have the largest economic interest.  By comparison, the State Universities

Retirement System of Illinois ("SURS of Illinois"), as of June 30, 2012, held a fixed income

investment portfolio of approximately $3.6 billion.[5]  That compares to LACERA's fixed income

portfolio of approximately $10.7 billion as of the same date.[6]  In addition, LACERA has a

knowledgeable and dedicated staff, including an in-house legal office consisting of seven full-

time attorneys, that will help ensure that this is a client-driven case.   As detailed below,

LACERA has taken an active role as a plaintiff in other large financial cases.

LACERA's interest in this action is clear.  It is not an assignee of its claim but holds a

direct financial interest in the relief sought for the plaintiff class.[7]  Having purchased CDS in the

United States, LACERA will not be subject to potential challenges associated with transactions

occurring in foreign markets.  Unlike one of the private plaintiffs vying for a leadership position,

LACERA is not in receivership or bankruptcy.[8]

---

[5] *See* SURS Annual Financial Report, 2012
(http://www.surs.com/pdfs/ann_rep/content/PDFS/COMP.pdf).

[6] *See* LACERA Annual Financial Report, 2012, p. 23.

[7] Plaintiffs Salix Capital US Inc., Value Recovery Fund, LLC, and Fund Liquidation
Holdings LLC all bring their claims through assignment.

[8] Plaintiff MF Global is currently engaged in Chapter 11 bankruptcy proceedings in the
Southern District of New York.

Furhter, MF Global (and interim lead counsel applicant Korein Tillery LLC) declined to name J.P. Morgan Chase as a defendant.  One could easily surmise that this was a result of claims between MF Global's liquidating trustee relating to J.P. Morgan Chase's holding of MF Global client funds before it collapsed.[9]

LACERA and Pearson Simon do not have these types of issues.  Although these factors should not disqualify the competing applicants from contention for leadership, and do not reflect on the efforts of counsel, such considerations will ultimately determine which plaintiffs are included in a consolidated amended complaint.  The inclusion of LACERA as a class representative, and Pearson Simon in any leadership structure, mitigates any issues with the other proposed class representatives and protects the class.

## D.   LACERA Has Substantial Experience Managing Complex Litigation

As a fiduciary to more than 150,000 members, LACERA has actively pursued class litigation to defend the market place from securities fraud and market manipulation.  Some examples of these cases include:

- *Los Angeles County Employees Retirement Association, et al. v. Towers, Perrin, Forester & Crosby, Inc. et al.*, Case No. CV01-1351 DDP (C.D. Cal.), an actuarial malpractice case where LACERA alleged over $2 billion in damages.

- *In re Citigroup, Inc., (Focal Communications) Sec. Litig*., Case No. 04-cv-5854 (S.D.N.Y.), a federal securities class action where LACERA was the sole lead plaintiff.

- *In re Enterasys Networks, Inc. Sec. Litig*., Case No. C-0271 (D.N.H.), a federal securities class action where LACERA was the sole lead plaintiff.

---

[9] *See* Tiffany Kary & Kit Chellel, "JPMorgan Pays $100 Million in MF Global Trustee Accord," *Bloomberg*, March 20, 2013 (http://www.bloomberg.com/news/2013-03-20/mf-global-inc-trustee-reaches-agreement-with-jpmorgan.html).

- *In re King Pharmaceuticals Sec. Litig.*, Case No. 03-cv-77 (E.D. Tenn.), a federal securities class action where LACERA was the co-lead plaintiff.

- *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, Case No. 12-md-2335 LAK (S.D.N.Y.), an action alleging False Claims Act, breach of contract, and other common law causes of action against Bank of New York Mellon for its conduct in executing foreign exchange transactions in custodian accounts of LACERA and other government entities.

As a result of its experience in the matters described above, LACERA understands the responsibilities of a lead plaintiff, its duty to monitor the litigation effectively, and its role of fiduciary to the absent class members.

Moreover, LACERA has worked extensively with institutional investors in some of these actions and maintains productive relationships with other public pension funds on matters focusing on the interests of their members.  LACERA anticipates continuing to do so with, amongst others, SURS of Illinois, with whom there have already been discussions about how to best pursue the claims herein.  Simon Decl. ¶ 12.

### E.   Pearson Simon Brings Unmatched Antitrust Experience To the Case

As detailed in LACERA's Lead Counsel Application, Pearson Simon has the resources, experience, and dedication to see a massive antitrust conspiracy case through to the end. Specifically, Pearson Simon served as co-lead counsel on behalf of the direct purchaser plaintiffs in *In re TFT-LCD (Flat Panel) Antitrust Litig.* MDL No. 1827 (N.D. Cal.), successfully bringing that case to trial last year and obtaining more than $473 million in settlements after five years of hard-fought litigation against a foreign cartel whose members were represented by some of the most formidable defense counsel in the country.  *Id.* ¶ 13.  Pearson Simon's willingness and experience in leading an antitrust case of the magnitude of *TFT-LCD* to trial demonstrates that the firm is "best able to represent the interests of the class."  Fed. R. Civ. P. 23(g)(2).

Further, Pearson Simon has successfully argued antitrust matters before a federal court of appeals sitting *en banc*. After briefing and arguing *In re Potash Antitrust Litig. (II)*, Case No. 08-cv-6910 (N.D. Ill.), from the District Court to the Seventh Circuit, Pearson Simon obtained a unanimous, favorable decision involving antitrust pleading standards and the Foreign Trade and Antitrust Improvement Act. *See Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845 (7th Cir. 2012) (*en banc*); Simon Decl. ¶ 14. These issues may be asserted in this litigation, especially if certain foreign plaintiffs remain in the consolidated amended complaint.[10]

Moreover, Pearson Simon has never represented any of the Defendants in prior matters and is free of any known conflicts of interest with any of the parties to this case. *Id*. ¶ 15.

Cases of this magnitude require equal measures of leadership and cooperation. Pearson Simon recognizes that the choice of interim lead counsel and lead plaintiff is up to the discretion of the Court. Should the Court choose to select more than one firm to lead this litigation, Pearson Simon is prepared to work alongside any of the other well-qualified applicants. Pearson Simon has worked with many of the applicant firms on prior cases and believes it could effectively do so again here.

### III.   CONCLUSION

The pairing of LACERA and Pearson Simon brings a level of experience, resources, and commitment to this case that is unrivaled. LACERA is the largest of the public pension funds in this case and does not have certain issues related to some of the private plaintiffs. LACERA and

---

[10] The foreign plaintiffs are Denmark-based Unipension Fondsmaeglerselskab A/S, Arkitekternes Pensionskasse, MP Pension – Pensionskassen for Magistre & Psykologer, and Jordbrugsakademikere & Dyrlaeger (represented by Korein Tillery LLC, Cohen, Milstein, Sellers & Toll PLLC, the Mehdi Firm PC, Berger & Montague PC, and Fine, Kaplan & Black, RPC) and Germany-based LBBW Asset Management Investmentgesellschaft MBH (represented by Miller Law LLC, Lovell, Stewart, Halebian, Jacobson LLP, Motley Rice LLC, and Kirby McInerney, LLP).

Pearson Simon are best able to represent the interests of the class, and are ready to work with all plaintiffs and their counsel to further those interests.  Accordingly, LACERA and Pearson Simon respectfully request that the Court grant their application for appointment as lead plaintiff and interim lead counsel, and should the Court appoint more than one firm, that Pearson Simon be included in that leadership structure.

Respectfully submitted,

DATED: November 22, 2013          PEARSON, SIMON & WARSHAW, LLP

*/s/ Bruce L. Simon*
BRUCE L. SIMON (*pro hac vice*)

George S. Trevor (*pro hac vice*)
Aaron M Sheanin (*pro hac vice*)
Thomas K. Boardman (TB-0530)
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

*Attorneys for Los Angeles County Employees Retirement System Individually and on Behalf of All Those Similarly Situated*

857182.3