UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CREDIT DEFAULT SWAPS<br>ANTITRUST LITIGATION | No.  13 Md. 2476 (DLC) |

**RESPONSE OF QUINN EMANUEL URQUHART & SULLIVAN, LLP TO COMPETING APPLICATIONS FOR APPOINTMENT OF INTERIM LEAD CLASS COUNSEL**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................5

I. QUINN EMANUEL POSSESSES EXPERIENCE AND RESOURCES THAT ARE UNIQUE AMONG FIRMS APPLYING FOR INTERIM LEAD COUNSEL. ...................................................................................................................5

    A. No Competing Firm or Firms Can Match Quinn Emanuel's Size, New York and International Presence, and Appellate Practice. .......................................5

    B. Quinn Emanuel Has Unmatched Expertise Litigating CDS and Other Structured Finance Cases. ....................................................................................7

    C. Quinn Emanuel is the Only Firm that Conducted a Quantitative Pre-Suit Investigation. ........................................................................................................9

II. COMPETING GROUPS HAVE PROPOSED STRUCTURES THAT MAY LEAD TO CASE MANAGEMENT DIFFICULTIES AND INEFFICIENCIES. .............10

III. THE CRITICISMS OF QUINN EMANUEL AND SALIX ARE MERITLESS..............11

CONCLUSION..............................................................................................................................16

**TABLE OF AUTHORITIES**

                                                                  **Page**

**Cases**

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)..................................................................................................12

*In re Crude Oil Commodity Futures Litig.*,
   No. 11 Civ. 3600 (WHP), 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012) ................................10

*In re Electronic Books Antitrust Litig.*,
   No. 11 Md. 2293 (DLC) (S.D.N.Y. Dec. 20, 2011) ...................................................5, 9, 10, 12

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06 Md. 1775 (VVP), 2010 WL 4916723 (E.D.N.Y. Nov. 24, 2010)................................13

*In re Katrina Canal Breaches Consol. Litig.*,
   No. 05 Civ. 4182 (SRD), 2008 WL 3845228 (E.D. La. Aug. 13, 2008) ................................14

*Sharp v. Next Entm't, Inc.*,
   163 Cal. App. 4th 410 (Cal. Ct. App. 2008) ....................................................................14, 15

*Third Circuit Task Force on Selection of Class Counsel*,
   208 F.R.D. 340 (2002) .......................................................................................................4, 12

*Trief v. Dun & Bradstreet Corp.*,
   144 F.R.D. 193 (S.D.N.Y. 1992) ...........................................................................................13

**Rules**

22 N.Y.C.R.R. § 1200.0, Rule 1.7(b) ...............................................................................................14

**Miscellaneous**

7 *Newberg on Class Actions* § 22:7 (4th ed.) ..................................................................................11

The Legal 500, Financial Services: Litigation (2013), http://www.legal500.com/c/united-
   states/finance/financial-services-litigation..............................................................................9

*Manual of Complex Litigation* § 21.11 (4th ed.) ...........................................................................10

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") respectfully submits this response to the competing applications for appointment as interim lead class counsel filed by (1) Scott + Scott LLP, Korein Tillery LLC, and Robbins Geller Rudman & Dowd LLP (collectively, the "Scott-Korein-Robbins Group"); (2) Pearson Simon & Warshaw LLP ("Pearson"); and (3) Entwistle & Cappucci LLP and Kaplan Fox & Kilsheimer LLP (collectively, the "Entwistle-Kaplan Group").

## PRELIMINARY STATEMENT

The competing applications merely confirm that Quinn Emanuel is far and away the most qualified firm to serve as interim lead counsel for the proposed class in this case concerning anticompetitive conduct in the multi-trillion dollar market for credit default swaps ("CDS"). The competing applications, in fact, confirm that Quinn Emanuel is the *only* firm with the requisite breadth and depth of resources to serve as interim lead counsel in this case against these defendants, represented by the world's largest law firms, where relevant events occurred both inside and outside the United States, and which is pending in the Southern District of New York.

Respectfully, none of the groups of firms vying for interim lead counsel have the experience – even collectively – litigating CDS and other complex financial cases against the defendant financial institutions that Quinn Emanuel has individually. While it appears that some of the firms applying for lead counsel have conducted "educational meetings" and "training sessions," and consulted with a host of "experts" to learn about "the history and makeup of the CDS market, the identity of key players and institutions, and the nuts and bolts of CDS trading,"[1] Quinn Emanuel has *already* litigated – and won – numerous cases involving the CDS market, the relevant institutions, and CDS trading. Quinn Emanuel's litigation expertise with regard to these

---

[1] Burke Decl. ¶ 7, Nov. 8, 2013, ECF No. 89.

1

types of financial derivatives is second to none, and we will not need to be trained on the class's dime.

Similarly, none of the competing firms have been recognized as having among the leading antitrust, class action, structured finance, *and* appellate practices in the country. Nor have any of the competing firms been recognized as the most feared adversaries for in-house counsel, much less repeatedly, as has Quinn Emanuel. No other competing firm will have the same credibility in its ability to make this case trial ready and to take it to trial, if necessary.

Quinn Emanuel is also the clear choice for interim lead counsel because it is the only firm that offers a New York office large and sophisticated enough to manage this case, international offices to conduct investigations and to support foreign discovery, and the preeminent appellate practice in the Second Circuit to defend and pursue the class's interests on appeal. These advantages are undoubtedly in the best interests of the class. Indeed, the class would perhaps be ill-equipped for this battle without such resources behind it. These resources will also lead to great efficiencies. With Quinn Emanuel as lead counsel, the class will not incur the additional expenses associated with coordinating across multiple firms headquartered in different cities, training attorneys regarding the CDS market or antitrust litigation, or traveling cross-country to New York for court hearings, in-person meetings, or settlement discussions. With Quinn Emanuel as lead counsel, the class will not have to find European counsel to assist with foreign discovery, or appellate counsel to handle any interlocutory or post-judgment appellate issues.

Although the competing applications devote numerous pages to describing the background investigations they have undertaken, they do not explain how the various proposed attorney consortiums will manage this case in an efficient manner. For example, the Scott-Korein-Robbins Group's application does not indicate how work will be distributed across three

2

co-lead firms (and their 15 co-counsel firms) without waste or duplication of effort.  Nor does that application explain how these firms propose to staff the case in light of the fact that those firms have few if any attorneys in New York.  Indeed, of the attorneys proposed to lead the case for that group, two are based in San Diego (Christopher Burke of Scott+Scott and Patrick Coughlin or Robins Geller) and the third (George Zelcs of Korein Tillery) is based in Chicago.  That is not an efficient way to lead a case that was consolidated in the Southern District of New York precisely because of the strong nexus between the parties and relevant facts and New York.  The Pearson application similarly fails to demonstrate how a 12-lawyer firm based in Los Angeles, with no attorneys in New York, could possibly lead this case on the class's behalf against more than a dozen of the largest financial institutions in the world.[2]

Perhaps recognizing these realities, other Plaintiffs have, at times, raised spurious criticisms of our firm and our client Salix.  None have merit.  *Every* firm that has now applied to be appointed lead counsel has expressed willingness to partner with Quinn Emanuel as co-lead counsel.  It was only after we expressed our concern with a multi-firm, govern-by-committee approach – and after counsel for defendant ISDA sent a letter to all counsel, on the eve of the applications being due, alleging that Quinn Emanuel had a conflict that required withdrawal – that other firms decided to go in a different direction.[3]

The objections that have previously been raised regarding Salix – *i.e.*, that it holds claims as an assignee of FrontPoint, and that FrontPoint was previously owned by Morgan Stanley – do not provide any basis for selecting a firm other than Quinn Emanuel to represent the class.

---

[2]   Likewise, the Entwistle-Kaplan Group's application does not explain how these two firms – with a combined 41 attorneys between them – could commit to a long-term battle of the type this case will demand.

[3]   ISDA's ill-timed claim that Quinn Emanuel has a disabling conflict lacks merit, as we will demonstrate in our opposition papers to ISDA's motion.

Unlike a securities case under the Private Securities Litigation Reform Act ("PSLRA"), there is no need to appoint a lead plaintiff in this antitrust case, nor does any lead plaintiff select lead counsel.[4]  Instead, a court selects the firm (or firms) that will best serve the interests of the class. That firm (or firms) then will select one or more representative plaintiffs to be named in the consolidated complaint, and the court then decides at the class certification stage whether the class representatives chosen by lead counsel are adequate representatives of the class.

Thus, any theoretical questions about whether Salix should be a named representative in this case are irrelevant to choosing the firm most qualified to serve as interim lead counsel. Salix's claims are also equally viable as the claims brought by any other named Plaintiff, and Morgan Stanley's former ownership of FrontPoint is no impediment to Salix's ability to vigorously pursue claims against all Defendants.  Salix brings claims based on CDS trades of more than $***30 billion*** notional during the class period.  In any event, such theoretical questions can always be raised about potential class representatives.[5]  But attacking each other is not in the best interests of the class.

This Court has clearly expressed a preference that a single firm, or at most two firms, should be appointed lead counsel.  We respectfully submit that Quinn Emanuel is the only firm with the resources and experience necessary to serve as sole interim lead counsel.  As we noted in our opening papers, we would be happy to work with one additional firm in that capacity, and we would do so efficiently.

---

[4]  *See, e.g.*, *Third Circuit Task Force on Selection of Class Counsel*, 208 F.R.D. 340, 415 (2002) (noting that "[t]he 'most adequate' plaintiff notion established in the PSLRA" does not "extend[] to the appointment of counsel in other kinds of class actions, such as antitrust cases").

[5]  *See* Section III *infra*.

4

**ARGUMENT**

I. **QUINN EMANUEL POSSESSES EXPERIENCE AND RESOURCES THAT ARE UNIQUE AMONG FIRMS APPLYING FOR INTERIM LEAD COUNSEL.**

In considering whether counsel has the resources and experience necessary to represent a class as interim lead counsel, this Court has considered a firm's ability to devote the resources that the case demands, whether the firm has a strong New York presence, and whether it has particularized expertise in the industry in which the antitrust conspiracy occurred.[6] Judged by these standards, Quinn Emanuel stands alone among counsel applying to be named interim lead counsel.

    A. **No Competing Firm or Firms Can Match Quinn Emanuel's Size, New York and International Presence, and Appellate Practice.**

No firm filing a competing application can offer even close to the resources and depth of experience Quinn Emanuel does. While Quinn Emanuel has over 600 attorneys worldwide, over 225 of which are based in New York:

- The Scott-Korein-Robbins Group *combined* appears to have a total of 12 attorneys based in New York (Korein Tillery and Robbins Geller have no New York offices at all), only three of which are named in their application.

    - Christopher Burke, the attorney from Scott+Scott identified as leading that firm's efforts, is based in San Diego;

    - Patrick Coughlin, the attorney from Robbins Geller identified as leading that firm's efforts, is also based in San Diego;

    - George Zelcs, the attorney from Korein Tillery identified as leading that firm's efforts, is based in Chicago;

- Pearson has a total of 12 attorneys based in Los Angeles and San Francisco, with no New York office;

---

[6] *See In re Electronic Books Antitrust Litig.*, No. 11 Md. 2293 (DLC) (S.D.N.Y. Dec. 20, 2011) (Tr. 14:6-23; 31:7-12; 42:17-20) (considering whether a firm has the ability to staff the case, a "New York presence" of more than "one lawyer," and any "particular expertise" in the relevant industry).

5

- The Entwistle-Kaplan Group have a combined 41 attorneys total between their two firms.

With all due respect to these firms, they have provided little if any explanation of how they could possibly handle the very substantial staffing demands of this case. This case will undoubtedly demand frequent in-person court appearances and meetings of counsel in New York. It is hardly efficient that lead counsel would fly back and forth across the country for every such appearance or meeting.

Additionally, while the other firms vying for lead counsel have acknowledged that this is a case of "international significance,"[7] and that they "anticipate[] significant discovery to take place abroad,"[8] they have not explained how they would manage the international components of the case. Quinn Emanuel is the *only* firm applying for interim lead that has international offices. We have nine foreign offices, including offices in London, Paris, and Germany – where important fact witnesses and documents may be located – and we have leading European competition lawyers available in those offices. Discovery in this case is likely to require coordination with experienced foreign practitioners that know how to navigate the substantive and procedural laws of the relevant jurisdictions. Only Quinn Emanuel can offer those capabilities to the class without having to locate and retain new sets of lawyers in multiple foreign jurisdictions. No other firm appears to have conducted investigations outside of the United States, and their ability to do so is uncertain.

Quinn Emanuel's appellate practice is also unmatched by any other firm that has applied to be named interim lead. We offer the Class what we believe is the premier Second Circuit

---

[7] Appl. for Appointment of Scott+Scott, Robbins Geller, and Korein Tillery at 21, Nov. 8, 2013, ECF No. 88.

[8] Appl. for Appointment of Entwistle & Cappucci and Kaplan Fox at 8, Nov. 8, 2013, ECF No. 94.

practice and one of the nation's leading Supreme Court practices, led by Kathleen Sullivan. Once again, the other firms that seek to be appointed interim lead have not explained how they would handle appellate issues in the case. Without Quinn Emanuel, the class may well be at a disadvantage against the appellate departments of many of the defense firms, which have detailed knowledge of Second Circuit procedure and significant experience before that Court.

### B. Quinn Emanuel Has Unmatched Expertise Litigating CDS and Other Structured Finance Cases.

All applicants for lead counsel claim to have antitrust experience,[9] but only Quinn Emanuel has particularized expertise in structured finance litigation. In fact, we believe we have the leading structured-finance litigation practice in the world, having successfully litigated numerous cases concerning CDS and other complex financial products against many of the same defendants in this case. As one of the other applications notes, while "the underlying damage theories of this case are tied to federal antitrust laws, a key factor in this litigation will also be lead counsel's thorough understanding and knowledge of the CDS industry and related markets."[10]

To that end, it appears that some of the competing firms have hosted "educational sessions" and "training sessions," attended by lawyers flown in from all over the country, so these lawyers could learn about "the history and makeup of the CDS market, the identity of key players and institutions, and the nuts and bolts of CDS trading."[11] It also appears these firms have retained or consulted with scores of "experts." These background, educational efforts have undoubtedly contributed to the high numbers of hours these firms have already spent on the case,

---

[9] It is worth noting, however, that not all of the firms seeking to be appointed lead counsel are known for having a significant antitrust practice. Several of these firms appear to specialize in securities fraud litigation.

[10] Appl. for Appointment of Entwistle & Cappucci and Kaplan Fox at 8, ECF No. 94.

[11] Burke Decl. ¶ 7, ECF No. 89.

7

before a consolidated amended complaint has even been filed.

But there are real questions about whether these duplicative background efforts, and the many hours spent on them, have been an efficient use of time. It is not at all clear, for example, that the class should bear the expense of in-person meetings, bringing together attorneys from around the country, in order to educate them about the "nuts and bolts of CDS trading." And it appears that such efforts continue. Scott+Scott, for example, states that it has "spearheaded" an effort "to organize *a group of lawyers from the various cases* to analyze the complaints that have been filed and develop a *nearly completed* consolidated complaint."[12] Such efforts are, at best, presumptuous and, at worst, inefficient.

Quinn Emanuel has been litigating CDS and other structured finance cases against these defendants for years. *See, e.g.*, *Brookfield Asset Mgmt., Inc. v. AIG Fin. Prod. Corp.*, No. 09 Civ. 8285 (S.D.N.Y.) (concerning the interpretation of swap agreements); *MBIA Ins. Corp. v. Royal Bank of Canada*, No. 12238/09 (N.Y. Sup. Ct.) (concerning the interpretation of CDS contracts); *AIG Fin. Prod. Corp. v. ICP Asset Mgmt., LLC*, No. 651117/2011 (N.Y. Sup. Ct.) (concerning fraud in the sale of CDS); *ASR Levensverzekering NV v. Swiss Re Fin. Prod. Corp.*, No. 650557/2009 (N.Y. Sup. Ct.) (concerning breach of contract and fraud in relation to CDS transactions). These cases have demanded a mastery of the intricacies of the CDS market, and have given us a base of institutional knowledge that enables us to litigate these cases more efficiently and effectively. That experience and knowledge base distinguishes Quinn Emanuel not only from the other firms vying for lead counsel, but from most firms generally. As *The Legal 500* publication has noted, Quinn Emanuel

---

[12] Appl. for Appointment of Scott+Scott, Robbins Geller, and Korein Tillery at 10, ECF No. 88 (emphasis added).

has carved out a great niche at advising institutional plaintiffs in financial services litigation. Praised for its trial-ready approach, the firm is at the forefront of cases arising out of the financial crisis including disputes relating to RMBS, *credit default swaps*, CDOs and other structured products and derivatives.[13]

As this Court has noted, "knowing an industry and understanding an industry is invaluable," and can "tip the ball" in favor of a firm with "particular expertise" in the relevant industry. *In re Electronic Books Antitrust Litig.*, No. 11 Md. 2293 (DLC) (S.D.N.Y. Dec. 20, 2011) (Tr. 42:17-43:1). Here, Quinn Emanuel is the only firm with particularized expertise concerning CDS, and therefore brings to the table industry-specific knowledge that would not otherwise be available to the class.

### C. Quinn Emanuel is the Only Firm that Conducted a Quantitative Pre-Suit Investigation.

Although each of the firms vying for interim lead counsel have touted their pre-suit investigations, it appears that only Quinn Emanuel has invested resources into a *quantitative* investigation to measure the effect of Defendants' anticompetitive conduct. In contrast, other counsel appear to have investigated this case principally by collecting information made publicly available as a result of the ongoing government investigations and speaking to various "witnesses" and "experts." As noted above, there are questions about the true benefit and the efficiency of these efforts.

Salix's amended complaint, on the other hand, is the only complaint that contains truly propriety information, derived from an expert, quantitative analysis of CDS bid/ask spreads. The conclusions of that analysis – that bid/ask spreads in exchange-based markets were between 56% and 90% narrower than the spreads observed in the market for CDS – is central to the Class's

---

[13] The Legal 500, Financial Services: Litigation (2013), http://www.legal500.com/c/united-states/finance/financial-services-litigation (internal quotations omitted) (emphasis added).

damages calculations, and would be unavailable if not for Quinn Emanuel's investigation.

## II. COMPETING GROUPS HAVE PROPOSED STRUCTURES THAT MAY LEAD TO CASE MANAGEMENT DIFFICULTIES AND INEFFICIENCIES.

Interim class counsel appointments are designed to ensure the efficient prosecution of a complex lawsuit. *See Manual of Complex Litigation* § 21.11 (4th ed.). Overly complicated organization structures "can lead to substantially increased costs and unnecessary duplication of efforts." *In re Crude Oil Commodity Futures Litig.*, No. 11 Civ. 3600 (WHP), 2012 WL 569195 (S.D.N.Y. Feb. 14, 2012). Thus, this Court's preference for one firm to serve as lead, and its recognition that "having more than two would be impossible," is understandable. *In re Electronic Books Antitrust Litig.*, No. 11 Md. 2293 (DLC) (S.D.N.Y. Dec. 20, 2011) (Tr. 42:17-43:1).

The Scott-Korein-Robbins Group proposes a three firm leadership structure, with what appear to be at least 15 additional firms, and possibly more, serving as co-counsel.[14] As noted, it appears these firms have already spent thousands of hours engaging in various background work, educational sessions, and consulting with dozens of "experts."[15] Some of this background work was likely duplicative. It also appears these firms continue to spin out time, for example by

---

[14] The Scott-Korein-Robbins Group identifies the following firms as co-counsel: Cohen Milstein Sellers & Toll PLLC; The Mehdi Firm, PC; Berger & Montague, P.C.; Fine, Kaplan & Black, R.P.C.; Freed Kanner London & Millen LLC; Robins, Kaplan, Miller & Ciresi L.L.P.; The Mogin law Firm, P.C.; Lindh Foster, LLC; Grant & Eisenhofer, P.A.; Jinks, Crow & Dickson, P.C.; Branstetter, Stranch & Jennings, PLLC; Lexington Law Group; Schneider Wallace Cottrell Konecky LLP; Wagstaff & Cartmell LLP; and Doyle Lowther LLP. *See* Appl. for Appointment of Scott+Scott, Robbins Geller, and Korein Tillery at 7, ECF No. 88; Burke Decl. ¶¶ 2, 16-20, ECF No. 89; Zelcs Decl. ¶ 4, Nov. 8, 2013, ECF No. 90. *See also* Labaton Sucharow's Mem. in Supp. of Appl. for Appointment, Nov. 8, 2013, ECF No. 79; Motley Rice, Kirby McInerney and Lovell Stewart's Mem. in Supp. of Appl. for Appointment, Nov. 8, 2013, ECF No. 83; Fine Kaplan's Mem. in Supp. of Appl. for Appointment, Nov. 8, 2013, ECF No. 91; Cohen Milstein's Mem. in Supp. of Appl. for Appointment, Nov. 8, 2013, ECF No. 95; Freed Kanner's Mem. in Supp. of Appl. for Appointment, Nov. 8, 2013, ECF No. 97; Robins Kaplan's Mem. in Supp. of Appl. for Appointment, Nov. 8, 2013, ECF No. 98.

[15] *See* Appl. for Appointment of Scott+Scott, Robbins Geller, and Korein Tillery at 6, 11, ECF No. 88 (noting each of the firms have spent over 1,000 hours performing similar investigative work).

having an unspecified "group" of lawyers working on a consolidated amended complaint, despite the fact that they have not been appointed interim lead counsel. These inefficiencies simply amplify the concerns that, since the lead attorneys for the Scott-Korein-Robbins Group are based in California and Chicago, not New York, this leadership structure would require the unnecessary expense of sending at least one lawyer to and from New York for every hearing, pretrial conference, or in-person meeting. These facts highlight the risk that such a configuration could "cause duplication of effort, increased attorneys' fees," "lack of coordination among counsel," and even "delay of the litigation." 7 *Newberg on Class Actions* § 22:7 (4th ed.).

This is a large and complex case, but that does not justify a large and complex leadership structure. Appointing Quinn Emanuel as sole interim lead counsel offers a simple solution to the logistical difficulties inherent in a multi-firm leadership structure. It also fully addresses the Court's preference for appointing New York-based counsel, and obviates any need to search for and retain foreign counsel to assist with discovery in the U.K., France, or Germany. In the alternative, we remain willing to work with any other firm this Court may select.[16]

### III.  THE CRITICISMS OF QUINN EMANUEL AND SALIX ARE MERITLESS.

At prior stages of these proceedings, certain counsel have criticized Salix because it brings claims as an assignee, and because FrontPoint was owned by Morgan Stanley for some of the Class period.[17] Defendant ISDA has also moved to disqualify Quinn Emanuel from serving as Salix's counsel, a development that has already achieved one of its intended goals of causing certain plaintiffs' counsel to waver in their support for Quinn Emanuel as interim lead. None of

---

[16]  As noted in our opening papers, Quinn Emanuel does not have any arrangement with any other firm that would affect how we prosecute this case as lead counsel or co-lead counsel.

[17]  *See* Consolidated Resp. of Illinois Pls. to Interested Party Resp. of Salix Capital at 3-4, Dkt. No. 128, *In re Credit Default Swaps Antitrust Litigation,* MDL No. 2476 (J.P.M.L. Sept. 17, 2013).

these claims and procedural maneuvers have merit, and none affect our ability to best represent the interests of all class members.

***First,*** any objections to Salix are procedurally misguided. Unlike a securities class action governed by the PSLRA, a lead plaintiff does not select lead counsel.[18] Instead, a court first selects an interim lead counsel based on that firm's ability to best represent the class. Once counsel has been selected, it may file a consolidated complaint with a collection of plaintiffs to represent the class. The court then decides at the class certification stage whether the chosen representatives are adequate representatives for the class. Indeed, as this Court has noted, "you don't even have to file a case to be making an application" for lead counsel in an antitrust multi-district litigation. *In re Electronic Books Antitrust Litig.*, No. 11 Md. 2293 (DLC) (S.D.N.Y. Dec. 20, 2011) (Tr. 40:7-9).

***Second,*** the objections to Salix are misguided on the merits. Neither Salix's status as an assignee of FrontPoint's claims, nor Morgan Stanley's prior ownership of FrontPoint in any way affect the *bona fides* of Salix's claims asserted here. Antitrust claims are readily assignable, and their assignment in no way renders Salix an inadequate representative of the class. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 100 (2d Cir. 2007). In addition, the FrontPoint Funds that assigned the claims had nothing to do with the alleged conspiracy. They were separately incorporated (Am. Compl. ¶ 27(a)-(d)), were prohibited from using Morgan Stanley to trade CDS, and nothing prevents a former affiliate fund from suing its former parent company for an antitrust violation.

***Third***, even accepting these criticisms at face value, they do not give rise to a legal

---

[18] *See Third Circuit Task Force*, 208 F.R.D. at 415 (noting that "[t]he 'most adequate' plaintiff notion established in the PSLRA" does not "extend[] to the appointment of counsel in other kinds of class actions, such as antitrust cases.").

defense.  *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 06 Md. 1775 (VVP), 2010 WL 4916723, at *4 (E.D.N.Y. Nov. 24, 2010) (noting that an *in pari delicto* defense "may be asserted in an antitrust case only where . . . the claimant bears at least substantially equal responsibility for the violations he seeks to redress").  Nor would they be a basis to find that Salix is not an adequate class representative.  *See Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 200 (S.D.N.Y. 1992) (the "mere existence of individualized factual questions" or "defenses particular to" a class representative does not render a lead plaintiff atypical or inadequate so long as the defense does not "threaten to become a central focus of the litigation").

Moreover, any such attacks lodged now against Salix or Quinn Emanuel are of dubious credibility, given the fact that each of the competing firms has expressed a willingness to support Quinn Emanuel, so long as we would agree to a certain structure.  In addition, to the extent anyone was motivated to do so, any firm could identify theoretical blemishes with the other named plaintiffs in the case.  Other Plaintiffs proceed with assigned claims.  MF Global Capital LLC (represented by the Scott-Korein-Robbins Group) is precluded from suing JP Morgan – the largest of the Bank Defendants – apparently because it released all claims against JP Morgan as part of MF Global's ongoing bankruptcy proceedings.[19]

Unipension Fondsmaeglerselskab A/S (also represented by the Scott-Korein-Robbins Group) is a foreign fund which has not disclosed whether it has any (or any significant amount of) U.S.-based trades.[20]  Other named plaintiffs have similarly been coy about their trading volumes.  This is not to say that none of these plaintiffs may serve as class representatives; to the contrary, we believe that – like Salix – most or all would be fine class representatives.  We raise

---

[19] MF Global Capital identifies JP Morgan Chase only as an unnamed "co-conspirator" despite acknowledging that JP Morgan Chase sold $56.6 trillion notional value CDS during the Class Period.  MF Global Capital Complaint, Case No. 1:13 Civ. 05417, ¶ 35.

[20] *See* Unipension Fondsmaeglerselskab's First Am. Compl., No. 13 Civ. 4979, ¶¶ 13-20.

13

this only to make the point that there is no reason for any plaintiffs' counsel to start slinging mud; defense counsel will do plenty of that.

*Additionally*, in discussions with us, certain counsel have previously suggested that Quinn Emanuel's representation of Morgan Stanley on unrelated matters poses an impediment to being named as lead counsel. That is simply not the case. The New York Rules of Professional Conduct allow the representation of a client (here, the class) notwithstanding the existence of a conflict, provided each client gives informed consent. *See* 22 N.Y.C.R.R. § 1200.0, Rule 1.7(b). Quinn Emanuel has obtained a full and complete written waiver from Morgan Stanley, which we are willing to provide to the Court upon request. Salix has also waived this potential conflict, and that waiver is effective for the entire class. *See Sharp v. Next Entm't, Inc.*, 163 Cal. App. 4th 410, 433 (Cal. Ct. App. 2008) (comment 25 to Rule 1.7 "authorizes the class representative to provide informed consent" as each member of the proposed class is not "required to provide written consent to representation"); *In re Katrina Canal Breaches Consol. Litig.*, No. 05 Civ. 4182 (SRD), 2008 WL 3845228, at *4, *7 (E.D. La. Aug. 13, 2008) (same). Other named plaintiffs could sign this waiver as well. Thus, as both Morgan Stanley and a class representative have waived this purported conflict, there is no issue with our representation of the class.

Any assertion that Quinn Emanuel cannot proceed without the consent of the entire class makes no practical sense. Right now, there is no certified class. It would be impossible for Quinn Emanuel to obtain the consent of absent class members because there is no defined class. If and when a class is certified in this case, the notice that goes to class members will make full disclosure of the Morgan Stanley conflict. It will explain the conflict waiver, and give any class member an opportunity to either consent to the waiver or to opt out of the class. Thus, there will be full and fair disclosure of the "Morgan Stanley conflict" to all class members, but it cannot be

done, and does not need to be done, now.  This issue is no impediment to appointing Quinn Emanuel "Interim" lead counsel.  *See Sharp*, 163 Cal. App. 4th at 432 ("were we to require a procedure by which each and every member of a class action lawsuit has to agree to the choice of class counsel, we would eviscerate the class action device that is designed to permit class members to sit back through the process, knowing there are safeguards for their protection.")

*Finally,* ISDA's motion to disqualify Quinn Emanuel based on one partner's former representation of ISDA also lacks merit.  As will be shown in Quinn Emanuel's opposition, he never performed any work for ISDA that related to this case and no confidential information that partner ever learned from ISDA formed the basis of Quinn Emanuel's strategy or any allegation in either the original or amended complaint.  Tellingly, ISDA chose to keep quiet for months before asserting the conflict in a letter sent to all plaintiffs' counsel on the eve of the lead counsel applications.  If anything, the filing of this motion is but independent verification of the fact that Quinn Emanuel is the adversary the defendants in this case most fear.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in Quinn Emanuel's Application to be Named Interim Lead Counsel, we respectfully submit that Quinn Emanuel is best suited to represent the interests of all class members, and should be appointed interim lead class counsel.

DATED: New York, New York
November 22, 2013

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ Daniel L. Brockett
Daniel L. Brockett
Stephen R. Neuwirth
Steig D. Olson
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
Fax: (212) 849-7100
danbrockett@quinnemanuel.com
stephenneuwirth@quinnemanuel.com
steigolson@quinnemanuel.com

Jeremy D. Andersen (*pro hac vice* application forthcoming)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
jeremyandersen@quinnemanuel.com

*Attorneys for Plaintiff Salix Capital US Inc. and the Proposed Class*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 22, 2013, I filed and therefore caused the foregoing document and accompanying papers (if any) to be served via the CM/ECF system in the United States District Court for the Southern District of New York on all parties registered for CM/ECF in the above-captioned matters.

                                                    /s/ Daniel L. Brockett
                                                    Daniel L. Brockett