UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: CREDIT DEFAULT SWAPS ANTITRUST LITIGATION | Master Docket 1:13-md-2476 (DLC) ECF CASE |
| This Document Relates to All Actions | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
INTERNATIONAL SWAPS AND DERIVATIVES ASSOCIATION'S MOTION
TO DISQUALIFY QUINN, EMANUEL, URQUHART & SULLIVAN LLP AS
COUNSEL FOR PLAINTIFF SALIX CAPITAL US INC.**

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph (GJ 1210)
(gjoseph@jhany.com)
Pamela Jarvis (PJ 1250)
(pjarvis@jhany.com)
Sandra M. Lipsman (SL 1220)
(slipsman@jhany.com)
485 Lexington Ave., 30th Floor
New York, New York 10017
Tel: (212) 407-1200
Fax: (212) 407-1280

*Attorneys for Quinn Emanuel Urquhart &
Sullivan, LLP*

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Daniel L. Brockett
(danbrockett@quinnemanuel.com)
Stephen R. Neuwirth
(stephenneuwirth@quinnemanuel.com)
Steig D. Olson
(steigolson@quinnemanuel.com)
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Plaintiff Salix Capital US Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 4

I.     THERE IS NO SUBSTANTIAL RELATIONSHIP
BETWEEN MR. CUNNINGHAM'S PRIOR REPRESENTATION
OF ISDA AND THIS LAWSUIT ....................................................................... 5

II.    MR. CUNNINGHAM DOES NOT POSSESS RELEVANT
CONFIDENTIAL INFORMATION ................................................................ 11

    A.    A Presumption of Access to Relevant
Confidential Information Is Rebuttable ............................................ 11

    B.    Any Presumption of Access to Relevant Confidential Information
Is Dispositively Rebutted on This Record ........................................ 12

    C.    "Playbook" Information Allegations Are Unsupported and Irrelevant ........... 14

III.   THERE IS NO BASIS FOR IMPUTING A CONFLICT TO QUINN EMANUEL .... 15

    A.    A Presumption of Confidence Sharing Is Rebuttable ...................... 15

    B.    Any Presumption of Confidence Sharing Is Rebutted on This Record ........... 17

    C.    No "Unique Combination of Facts" Compels Disqualification ....................... 20

IV.   ISDA'S INVOCATION OF THE
WITNESS-ADVOCATE RULE IS FRIVOLOUS ................................................ 21

V.    THE BALANCE OF EQUITIES STRONGLY FAVORS QUINN EMANUEL'S
CONTINUED REPRESENTATION OF SALIX ...................................................... 22

CONCLUSION ........................................................................................................... 24

# TABLE OF AUTHORITIES

Page

## Cases

*Acker v. Wilger*,
No. 12 Civ. 3620 (JMF), 2013 WL 1285435 (S.D.N.Y. Mar. 29, 2013) .........................23

*Am. Int'l. Grp., Inc. v. Bank of Am. Corp.*,
827 F. Supp. 2d 341 (S.D.N.Y. 2011).................................................................... *passim*

*Applied Tech. Ltd. v. Watermaster of Am., Inc.*,
No. 07 CV 6620(LTS)(DF), 2009 WL 804127 (S.D.N.Y. Mar. 26, 2009) ...............5 n.6, 6

*Arista Records LLC v. Lime Grp. LLC*,
No. 06 CV 5936 (KMW), 2011 WL 672254 (S.D.N.Y. Feb. 22, 2011) ................... *passim*

*Bennett Silvershein Assocs. v. Furman*,
776 F. Supp. 800 (S.D.N.Y. 1991)....................................................... 5, 6 & n.7

*Blue Planet Software Inc. v. Games Int'l, LLC*,
331 F. Supp. 2d 273 (S.D.N.Y. 2004)......................................................11 n.10, 17 n.17

*Chichilnisky v. Trustees of Columbia Univ.*,
No. 91 Civ. 4617 (MJL), 1993 WL 403972 (S.D.N.Y. Oct. 7, 1993) ..........................3 n.3

*Daudier v. E&S Med. Staffing, Inc.*,
No. 12 Civ. 206 (PAE), 2012 WL 3642823 (S.D.N.Y. Aug. 23, 2012)............................3

*Emp'rs Ins. Co. of Wausau v. Munich Reins. Am., Inc.*,
No. 10 Civ. 3558(PKC), 2011 WL 1873123 (S.D.N.Y. May 16, 2011) .......10, 11 n.11, 14

*Evans v. Artek Sys. Corp.*,
715 F.2d 788 (2d Cir. 1983)................................................................................5

*Georges v. Peters*,
No. 10 CV 7436(VB), 2012 WL 336153 (S.D.N.Y. Feb. 1, 2012) ...................17 n.16, 23

*Gov't of India v. Cook Indus.*,
569 F.2d 737 (2d Cir. 1978)................................................................................2, 5, 11

*H&H Acquisition Corp. v. Fin. Intranet Holdings*,
No. 98 Civ. 5269 (BSJ), 2000 WL 502869 (S.D.N.Y. Apr. 27, 2000)...............1 n.2, 5, 23

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
409 F.3d 127 (2d Cir. 2005) ................................................................................ *passim*

*Hickman v. Burlington Bio–Med. Corp.*,
    371 F. Supp. 2d 225 (E.D.N.Y. 2005) ............................................................. 8-9, 13 n.12

*In re MTBE Prods. Liab. Litig.*,
    438 F. Supp. 2d 305 (S.D.N.Y. 2006)............................................................................23

*Intelli-Check, Inc. v. Tricom Card Techs., Inc.*,
    No. 03 CV 3706 (DLI)(ETB), 2008 WL 4682433 (E.D.N.Y. Oct. 21, 2008)........... *passim*

*Kassis v. Teacher's Ins. & Annuity Ass'n*,
    695 N.Y.S. 2d 515 (1999) ................................................................................. 16 & n.16

*Koch Indus., Inc. v. Hoechst AG*,
    650 F. Supp. 2d 282 (S.D.N.Y. 2009)..............................................................1 n.2, 5 n.6, 9

*Lamborn v. Dittmer*,
    873 F.2d 522 (2d Cir. 1989)..........................................................................................22

*Leslie Dick Worldwide, Ltd v. Soros*,
    No. 08 Civ. 7900 (BSJ)(THK), 2009 WL 2190207 (S.D.N.Y. July 22, 2009) ...4 n.5, 6, 11

*Lott v. Morgan Stanley Dean Witter & Co. Long-Term Disability Plan*,
    No. 03 Civ. 9235 HB, 2004 WL 2980193 (S.D.N.Y. Dec. 23, 2004) ......................17 n.17

*Marshall v. State of N.Y. Div. of State Police*,
    952 F. Supp. 103 (N.D.N.Y. 1997)........................................................................16 n.15

*Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*,
    542 F. Supp. 2d 296 (S.D.N.Y. 2008)................................................................. 12-13, 20

*Mitchell v. Metro. Life Ins. Co., Inc.*,
    No. 01 Civ. 2112 (WHP), 2002 WL 441194 (S.D.N.Y. Mar. 21, 2002)..................16 n.14

*Murray v. Metro. Life Ins. Co.*,
    583 F.3d 173 (2d Cir. 2009)..........................................................................................22

*Nw. Nat'l Ins. Co. v. Insco, Ltd.*,
    No. 11 Civ. 1124 (SAS), 2011 WL 4552997 (S.D.N.Y. Oct. 3, 2011) ....................1 n.2, 5

*Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*,
    325 F. Supp. 2d 270 (S.D.N.Y. 2004)........................................................6, 8 n.8, 13, 18

*Reilly v. Computer Assocs. Long-Term Disability Plan*,
    423 F. Supp. 2d 5 (E.D.N.Y. 2006) ...................................................................18, 19, 24

iii

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*,
    687 F. Supp. 2d 381 (S.D.N.Y. 2010) .................................................................... *passim*

*Rosewood Apartments Corp. v. Perpignano*,
    No. 99 Civ. 4226 (NRB) (MHD), 2000 WL 145982 (S.D.N.Y. Feb. 7, 2000) ............6 n.7

*Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*,
    518 F.2d 751 (2d Cir. 1975) ................................................................11 n.11, 12, 13 n.12

*Siverio v. Lavergne*,
    No. 86 CIV. 6584 (KMW), 1989 WL 31531 (S.D.N.Y. Mar. 29, 1989) ........................22

*Skidmore v. Warburg Dillon Read LLC*,
    No. 99 Civ. 10525 (NRB), 2001 WL 504876 (S.D.N.Y. May 11, 2001) .......................3, 6

*Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*,
    No. 01 CV 1574(ILG)(RML), 2006 WL 2013471 (E.D.N.Y. July 18, 2006) .....6, 8, 10, 12

*Tylena M. v. Heartshare Human Servs.*,
    No. 02Civ.8401 (VM)(THK), 2004 WL 1252945 (S.D.N.Y. June 7, 2004) ....................23

*United States v. Newman*,
    534 F. Supp. 1113 (S.D.N.Y. 1982) .............................................................................24

*United States v. Oberoi*,
    331 F.3d 44 (2d Cir. 2003) ...............................................................................17 n.17

*United States v. Quest Diagnostics Inc.*,
    No. 11-1565-cv, 2013 WL 5763181 (2d Cir. Oct. 25, 2013) ..............................................1

*Universal City Studios Inc. v. Reimerdes*,
    98 F. Supp. 2d 449 (S.D.N.Y. 2000) ...........................................................................23

*Vestron, Inc. v. Nat'l Geographic Soc'y*,
    750 F. Supp. 586 (S.D.N.Y. 1990) ...............................................................................14

*VMP Int'l Corp. v. Yushkevich*,
    No. 92 Civ. 7573 (LJF), 1993 WL 287641 (S.D.N.Y. July 27, 1993) .............................23

*W.T. Grant Co. v. Haines*,
    531 F.2d 671 (2d Cir. 1976) ........................................................................................5

**Rules & Statutes**

N.Y. RULES OF PROF'L CONDUCT R. 1.6(a) ...................................................7

N.Y. RULES OF PROF'L CONDUCT R. 3.7(b)(1) ..............................................22

**Other Authorities**

Charles W. Wolfram, *Former-Client Conflicts*, 10 GEO. J. LEGAL ETHICS 677 (1997) ...............14

GEOFFREY C. HAZARD, JR. & W. WILLIAM HODES,
   LAW OF LAWYERING § 13.7 (3d ed. Supp. 2013) ......................................................14 n.13

RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 132 cmt. d(iii) ...................... 14-15 n.13

Plaintiff Salix Capital US Inc. ("**Salix**") and Quinn Emanuel Urquhart & Sullivan, LLP ("**Quinn Emanuel**," "**QE**" or the "**Firm**") submit this brief in opposition to the motion ("**Motion**") of International Swaps and Derivatives Association ("**ISDA**") to disqualify the Firm from this case (the "**CDS Action**") because Daniel P. Cunningham, a partner of the Firm, represented ISDA on unrelated matters more than four years ago, prior to joining the Firm.

## PRELIMINARY STATEMENT[1]

It is somewhat remarkable, given that there is one issue—and only one issue—posed by ISDA's Motion, that ISDA glaringly fails to address it. Under well-settled Second Circuit law, the only issue is whether the conflict alleged by ISDA poses a substantial risk of trial taint—a substantial risk that it would confer an unfair advantage on Salix in trying this case. If not, disqualification is unwarranted. *See United States v. Quest Diagnostics Inc.*, No. 11-1565-cv, 2013 WL 5763181, at *8 (2d Cir. Oct. 25, 2013) ("courts must ... limit[] remedies for ethical violations to those necessary to avoid 'tainting the underlying trial'"); *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) ("disqualification is only warranted where an attorney's conduct tends to taint the underlying trial").[2]

There is no risk of trial taint here:

- Mr. Cunningham has scrupulously avoided discussing *any* confidential information of ISDA with anyone at Quinn Emanuel since he joined the Firm.

- No one from Quinn Emanuel has ever sought such information from him.

---

[1]   Emphasis is added to, and internal citations, quotations and brackets are omitted from, quotations in this brief, unless otherwise indicated. ISDA's November 15, 2013 Memorandum in Support of its Motion to Disqualify Quinn Emanuel (ECF 132) is cited "**ISDA Mem.**"

[2]   *See also Am. Int'l. Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 345 (S.D.N.Y. 2011) ("*AIG*") ("The Second Circuit instructs that disqualification is appropriate only where continued representation 'poses a significant risk of trial taint'"); *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 (KMW), 2011 WL 672254, at *4 (S.D.N.Y. Feb. 22, 2011) ("Disqualification is only warranted in the rare circumstance where an attorney's conduct poses a significant risk of trial taint.); *accord H&H Acquisition Corp. v. Fin. Intranet Holdings*, No. 98 Civ. 5269 (BSJ), 2000 WL 502869 at *1 (S.D.N.Y. Apr. 27, 2000); *Nw. Nat'l Ins. Co. v. Insco, Ltd*, No. 11 Civ. 1124 (SAS), 2011 WL 4552997, at *5, *8 (S.D.N.Y. Oct. 3, 2011); *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp.2d 381, 388 (S.D.N.Y. 2010); *Koch Indus. v. Hoechst AG*, 650 F. Supp. 2d 282, 286 (S.D.N.Y. 2009).

- Mr. Cunningham did not retain any documents containing confidential ISDA information and therefore brought none with him when he joined Quinn Emanuel.

- His only involvement in the *Salix* matter was *de minimis*—fewer than 5 hours of participation in the pre-suit investigation, consisting of discussions with Quinn Emanuel lawyers about the complexities of the CDS market and directing them to useful sources of public information.  He discussed nothing aimed at imputing liability to ISDA and nothing any experienced derivatives lawyer does not know.

- He did not assist anyone at Quinn Emanuel in developing any allegation or claim against ISDA.

- He did not assist in the drafting of the *Salix* complaint or any court paper.

- Every allegation in the *Salix* complaint is derived from public information.

- An electronic audit of Quinn Emanuel's electronic document management system demonstrates that Mr. Cunningham never accessed, much less drafted or edited, any pleading or other court paper filed in the CDS Action.

- Quinn Emanuel and Mr. Cunningham were acutely aware of his prior ISDA representation from the outset of the Firm's pre-suit investigation and took pains to ensure that he did not impart any confidential ISDA information to anyone or have any role in the development of any claims or allegations against ISDA.

- This informal wall was strictly adhered to from the outset and formalized when the case went into suit.  *De facto* separation protects against trial taint as fully as a formal screen.  *Hempstead*, 409 F.3d at 138; Declaration of Professor Bruce A. Green at ¶20.

- Mr. Cunningham's prior representation of ISDA did not concern matters relevant to the issues in the CDS Action, much less matters that were "identical or essentially the same," as the Second Circuit requires.  *Gov't of India v. Cook Indus.*, 569 F.2d 737, 740 (2d Cir. 1978).

- Mr. Cunningham had no inkling, when he represented ISDA, that it was participating in an antitrust conspiracy and therefore does not have any confidential ISDA information relevant to the CDS Action.

These points are fully documented in the Declarations submitted by Mr. Cunningham, every lawyer who has clocked time on the CDS Action, and the Firm's Chief Information Officer.

ISDA "carries a heavy burden of proof and must demonstrate that, absent disqualification, the trial would be tainted."  *Intelli-Check, Inc. v. Tricom Card Tech., Inc.,* No. 03 CV 3706 (DLI)(ETB), 2008 WL 4682433, at *3 (E.D.N.Y. Oct. 21, 2008).  ISDA has

defaulted on this burden.  Its submissions do not even mention trial taint.  ISDA's vague, broad-brush treatment of the facts is utterly inadequate and affirmatively impedes the "detailed consideration of the record" required on disqualification motions, which "turn[] upon the precise activities of the lawyer vis-a-vis adverse clients."  *Skidmore v. Warburg Dillon Read LLC*, No. 99 Civ. 10525 (NRB), 2001 WL 504876, at *1 (S.D.N.Y. May 11, 2001).[3]  ISDA has not carried its burden.[4]

ISDA's Motion distills down to the claim that fewer than 5 hours of general discussions about the CDS market—in which no confidential information of ISDA was disclosed—will taint the trial of this action.  This does not remotely satisfy the strict Second Circuit standard.

As Judge Engelmayer observed last year, in a thorough survey of Second Circuit law:

> Disqualification is viewed with disfavor in this Circuit....  The Second Circuit has noted the high standard of proof required for disqualification motions because they are often interposed for tactical reasons, and that even when made in the best faith, such motions inevitably cause delay.

*Daudier v. E&S Med. Staffing, Inc.*, No. 12 Civ. 206 (PAE), 2012 WL 3642823, at *1 (S.D.N.Y. Aug. 23, 2012).  ISDA's tactical motivation—to avoid facing Quinn Emanuel—is transparent.  It waited two months to file its Motion and did so on the eve of submission of interim lead counsel papers.

To elucidate the facts essential to this Court's consideration of ISDA's Motion, this brief is accompanied by:

- An extensive Declaration from Mr. Cunningham, which comprehensively sets forth the facts concerning his representation of ISDA, his scant involvement in the pre-suit investigation of the *Salix* matter, and his disengagement thereafter.

---

[3]    *Accord Intelli-Check*, 2008 WL 4682433, at *3 ("courts considering disqualification must closely examine the facts of the case"); *Chichilnisky v. Trustees of Columbia Univ.*, No. 91 Civ. 4617 (MJL), 1993 WL 403972 (S.D.N.Y. Oct. 7, 1993) ("the Court must make a painstaking factual analysis").

[4]    *See* Green Dec. ¶22 ("there is ample basis for the Court to conclude that Mr. Cunningham's interactions regarding the lawsuit have been minimal, that any interactions touching on ISDA have been trivial, and that in the course of these interactions, he never disclosed ISDA's confidential information or made use of it").  There is no other conclusion to draw on this record.

- Declarations from every QE lawyer who has recorded time in the CDS Action, all corroborating Mr. Cunningham's limited role in the pre-suit investigation; his non-participation at any time concerning ISDA; his disengagement since suit was filed; and the fact that he never disclosed any confidential ISDA information. (The timekeeper declarations that are not separately filed are appended as Exs. 28-46 of the accompanying Declaration of Gregory O. Tuttle, Esq.).

- A declaration from David Eskanos, the Chief Information Officer of Quinn Emanuel, showing that an electronic audit of all documents maintained on the Firm's electronic document management system proves that Mr. Cunningham never accessed any documents relating the CDS Action and that he is electronically screened from accessing any such documents.

- The Declaration of Professor Bruce A. Green, the Louis Stein Professor of Law and Director of the Louis Stein Center of Law and Ethics and Fordham University School of Law explaining why, on this factual record, there has been no ethical transgression and disqualification is not warranted.

Quinn Emanuel and Mr. Cunningham honored all of their ethical obligations. Because Mr. Cunningham's prior work for ISDA was not substantially related to the allegations in the CDS Action, he could have participated fully—he could have acted adversely to ISDA. He and the Firm chose to take a path beyond reproach, walling him off from any ISDA-related claims or allegations, and terminating his involvement once the matter went into suit. No one at the Firm learned anything from Mr. Cunningham other than general information about the CDS market; no one sought anything more; he would never, and did not, disclose any confidential information of ISDA; and he in fact has no relevant confidential ISDA information because his prior representation of ISDA was not substantially related to the CDS Action. ISDA's motion is meritless and should be denied.

## ARGUMENT

Second Circuit law determines whether disqualification is warranted. State disciplinary rules "merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video*, 409 F.3d, at 132.[5] The Second Circuit

---

[5]     *See also Leslie Dick Worldwide, Ltd v. Soros*, No. 08 Civ. 7900 (BSJ) (THK), 2009 WL 2190207, at *5 (S.D.N.Y. July 22, 2009) ("the only truly binding authority on disqualification issues is Second Circuit precedent, because our authority to disqualify an attorney stems from the Court's inherent supervisory authority."); *Revise Clothing,* 687 F. Supp. 2d at 388 ("because the

emphasizes that:  "The business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it."  *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976).

In this Circuit, a party moving to disqualify a former attorney from a subsequent representation must show that:

> (1)    the movant is a former client of the adverse party's counsel;
>
> (2)    there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3)    the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983).  This stringent test is subject to "a high standard of proof."  *Id.* at 791.  *Accord Nw. Nat'l Ins. Co.*, 2011 WL 4552997, at *5; *H&H*, 2000 WL 502869, at *1; *Bennett Silvershein Assocs. v. Furman*, 776 F.Supp. 800, 802 (S.D.N.Y. 1991).  "There is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters we must be solicitous of a client's right freely to choose his counsel."  *Gov't of India,* 569 F.2d at 739.

## I.    THERE IS NO SUBSTANTIAL RELATIONSHIP BETWEEN MR. CUNNINGHAM'S PRIOR REPRESENTATION OF ISDA AND THIS LAWSUIT

The Second Circuit's deference to a client's choice of counsel has "resulted in honing the 'substantial relationship' test in this Circuit in practical application to granting disqualification only upon a showing that the relationship between issues in the prior and present cases is 'patently clear' [and] only when the issues involved have been 'identical' or 'essentially the same.'"  *Gov't of India*, 569 F.2d at 739-40. [6]  "This Circuit has applied the 'substantially

---

authority to disqualify an attorney is a function of the court's inherent supervisory power..., these [disciplinary] rules provide guidance only and are not conclusive.").

[6]    *Accord Koch Indus.*, 650 F. Supp. 2d at 286 ("Disqualification is appropriate 'only upon a showing that the relationship between issues in the prior and present cases is patently clear—that is, 'identical' or 'essentially the same'"); *accord Applied Tech. Ltd. v. Watermaster of Am., Inc.*, No. 07 CV 6620(LTS)(DF), 2009 WL 804127, at *7 (S.D.N.Y. Mar. 26, 2009).

related' prong <u>strictly</u>."  *Bennett Silvershein*, 776 F. Supp. at 803.

"In comparing the issues in earlier and current matters, the inquiry is not limited to whether there are common legal claims or theories ... but extends to whether there are <u>common factual issues</u> that are material to the adjudication of the prior and current representations." *Leslie Dick*, 2009 WL 2190207, at *6.  This standard "requires a determination with respect to whether the <u>facts</u> which were necessary to the first representation are necessary to the present litigation." *Applied Tech. Ltd.*, 2009 WL 804127, at *7.  A substantial relationship exists "if the facts giving rise to an issue which is material in both the former and the present litigations are as a practical matter <u>the same</u>." *Revise Clothing*, 687 F. Supp. 2d at 392.  The movant must prove that "central issues are common to both matters and …the witnesses, testimony, and other evidence germane to one action are likely to be similar to the other." *Team Obsolete Ltd. v. AHRMA Ltd.*, No. 01 CV 1574(ILG)(RML), 2006 WL 2013471, at *6 (E.D.N.Y. July 18, 2006).

"[A] district court must consider the factual record underlying such a motion in detail to determine whether the party seeking disqualification has sustained the high standard of proof necessary to disqualify opposing counsel." *Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*, 325 F. Supp. 2d 270, 276 (S.D.N.Y. 2004).  *See also Skidmore*, 2001 WL 504876, at *1 ("In this field of ethical judgments, turning as it does upon the precise activities of the lawyer vis-a-vis adverse clients, a detailed consideration of the record is in order.").  The exercise "requires a painstaking factual analysis." *Leslie Dick*, 2009 WL 2190207, at *9.[7]

Instead of supplying a detailed factual record that might sustain its heavy burden, ISDA has reduced Mr. Cunningham's purported two decades of  "day-to-day legal advice [to ISDA] on a range of issues" (ISDA Mem. 4), to three conclusory assertions:

- *Antitrust*.  "Mr. Cunningham … advis[ed] ISDA's board of directors and ISDA on antitrust issues under both U.S. and EU law….  Plaintiffs' claims allege violations of U.S. antitrust laws, including Sections 1 and 2 of the Sherman Act, and those allegations implicate topics that came within the antitrust advice Mr. Cunningham

---

[7]     *See also Bennett Silvershein*, 776 F.Supp. at 803 ("When applying this test, <u>courts must look with 'painstaking' care at the facts</u>"); *Rosewood Apartments Corp. v. Perpignano*, No. 99 Civ. 4226 (NRB), 2000 WL 145982 (S.D.N.Y. Feb. 7, 2000) (same).

provided, including the risk of antitrust violations involving trade associations and their constituent members." ISDA Mem. 6, 10; *see* Declaration of Katherine Tew Darras ("Darras Dec.") (ECF 133) at ¶5.

- *ISDA Master Agreements*. "During his representation, Mr. Cunningham advised ISDA regarding the establishment of ISDA's Master Agreements, [and] other derivatives documentation..... CDS are the very core of the Plaintiffs' allegations. The *Salix* complaint notes that the ISDA "Master Agreement" and other documents are used "in nearly every CDS transaction." ISDA Mem. 4, 9; Darras Dec. ¶4.

- *Licensing of Pricing Information to Eurex Credit Clear*. "Mr. Cunningham advised ISDA on licensing issues, specifically with respect to the licensing of ISDA's pricing information to Eurex Credit Clear.... ISDA's licensing negotiations with Eurex Credit Clear relate to the central allegations in the *Salix* complaint. Indeed, the *Salix* complaint notes that Eurex Credit Clear was 'another potential clearinghouse' that 'stopped marketing its CDS clearing operation' because of the purported conspiracy." ISDA Mem. 5; *see* Darras Dec. ¶6.

Mr. Cunningham's Declaration punctures this conclusory rhetoric with detailed facts.

ISDA protests that "a conflict is not cured by an attorney's present failure of recollection," ISDA Mem. 10, but Mr. Cunningham affirmatively recalls that his work for ISDA was unrelated to the claims in this lawsuit. The fact that ISDA Master Agreements are "used 'in nearly every CDS transaction'" does not make Mr. Cunningham's knowledge as their "architect" material to the CDS Action—it simply reinforces the fact that what he knows is not confidential, but is known to every lawyer in the field. Cunningham Dec. ¶¶17-18. *See also* Green Dec. ¶16 ("Mr. Cunningham's general knowledge regarding Master Agreements cannot be disqualifying, even assuming that the Master Agreements are implicated in the lawsuit, because this knowledge is not confidential. Whatever Mr. Cunningham learned as drafter is precisely the sort of knowledge that a lawyer is expected to bring from one representation to the next and to use for the benefit of future clients. ... [T]he confidentiality duty explicitly excludes information that is generally known in the relevant professional community") (citing N.Y. RULES OF PROF'L CONDUCT R. 1.6(a) (defining "confidential information")).

In response to ISDA's assertion that, at some unspecified times, it received antitrust advice from Mr. Cunningham on unidentified issues, he explains that (1) he is not an antitrust lawyer; (2) he transmitted general antitrust principles in memoranda provided by his colleagues

at Cravath and Allen & Overy, which he revised for comprehensibility by non-lawyers; and (3) he remembers a single instance, in the 1990s, of ISDA asking for advice as to whether a denial of ISDA membership might constitute an antitrust violation, in response to which he conveyed advice from antitrust experts at Cravath.  Cunningham Dec. ¶¶19-21.  There is no relationship, let alone a substantial one, between this legal work and the claims against ISDA in the CDS Action.

As to ISDA's assertion—again, without time frame—that Mr. Cunningham advised on "the licensing of ISDA's pricing information to Eurex Credit Clear," Mr. Cunningham states that he is not even aware of ISDA having CDS pricing information available for license, and that pricing information on CDS trades is collected by Defendant Markit Group Ltd., a fact generally known in the field and alleged in the *Salix* complaint.  Cunningham Dec. ¶¶22-24.  There is not even an allegation in the *Salix* complaint about licensing of ISDA CDS pricing information.

ISDA's conclusory assertions are patently insufficient to contradict Mr. Cunningham's specific, sworn statements.  Ms. Darras was in-house counsel to ISDA during the entire period in question, but her sparse declaration glaringly omits any elaboration or details (Darras Dec. ¶¶3-6).  *See Team Obsolete*, 2006 WL 2013471, at *8 (presumption of access rebutted by attorney affidavit that was met only with "conclusory statements" that "d[id] not elaborate on how the information ... disclosed ... could be used to plaintiffs' disadvantage in this case.").[8]

ISDA does not even situate any advice at any particular point within the more than 20 years Mr. Cunningham represented ISDA.  It does not supply any specifics such as content, form, context, frequency, duration, participants, impetus, results, nature of work product, or any detail that might identify the requisite essentially identical factual issues.  ISDA does not, as it must, provide a basis for the Court to evaluate the "congruence of factual matters ... that establishes a substantial relationship" with this lawsuit.  *Hickman v. Burlington Bio-Med.Corp.*,

---

[8]     *Accord Papyrus*, 325 F. Supp. 2d at 274 n.4 ("the NYSE fails to provide dates and times of the meetings or the names of those in attendance.  In light of NYSE's high burden of proof, ... its bald, conclusory allegation that Van Buskirk received confidences or secrets during these meetings is insufficient to warrant Van Buskirk's and/or Frommer's disqualification").

371 F. Supp. 2d 225, 230 (E.D.N.Y. 2005).

There is no excuse for ISDA's failure to provide this information.  ISDA claims that Mr. Cunningham's "extensive[] involve[ment] with matters at the heart of this litigation" creates a risk of prejudice so great that Salix should be denied its counsel of choice.  ISDA Mem. 1, 13. ISDA must prove it.  Parties withholding documents from production on privilege grounds must provide enough specifics to enable opposing counsel and the Court to assess the privilege claim, and doing so does not waive the privilege they seek to protect.  ISDA has not included in its Motion even the basic kinds of information required in a privilege log.

The opinion in *Koch Industries* illustrates the insufficiency of ISDA's naked contention that antitrust claims "implicate" antitrust "advice."  In *Koch,* plaintiffs alleged they were defrauded when sellers of a business concealed the business's antitrust violations, and sought to disqualify the sellers' counsel, Morgan Lewis, who had previously performed an antitrust compliance audit of the buyer and some affiliates.  The fraud and audit were superficially linked by the antitrust violations, but a detailed factual analysis revealed, *inter alia,* that the audit "was undertaken two years after the transaction that gave rise to th[e] lawsuit and focused on corporate entities other than those at the heart of th[e] case … [and] d[id] not appear to have been particularly in-depth … [or] made Morgan Lewis privy to some overarching Koch philosophy or strategy regarding antitrust compliance."  *Koch*, 650 F. Supp. 2d at 287.  The Court concluded:

> Although the audit and the instant matter both relate to antitrust law, that appears to be the extent of their relationship.  Close scrutiny of the final audit report and careful consideration of the parties' submissions leads us to conclude that there is no meaningful overlap between the scope of the audit project and this litigation, and as such, the Second Circuit's high threshold for disqualification is not met.

*Id.*  ISDA's vague antitrust allegations suffer from precisely the same fatal infirmity.

ISDA's claim that advice "regarding the establishment of ISDA's Master Agreements" justifies disqualification because "CDS are the very core of the Plaintiffs' allegations" and the ISDA Master Agreement and other documents are used "in nearly every CDS transaction" (ISDA Mem. 4, 9) is equally facile.  ISDA's broad strokes cannot place advice about the

standard form Master Agreement documents at "the very core" of the CDS Action claims.  The plaintiff in *Team Obsolete* similarly claimed a substantial relationship between a lawyer's advice regarding the establishment of a corporate entity and claims of wrongdoing by the entity's members.  The Court rejected the argument that the entity's structure "was used to foster the anticompetitive behavior [that] is at the heart of this litigation."  *Team Obsolete*, 2006 WL 2013471, at *6.  The Court held that the "structure is not central to this case.  Rather, it is the alleged conduct itself that is at issue."  *Id.* at *7.  Although the structure might have had "some relevance," it did not permit plaintiff to "demonstrate[] an identity of issues between the ... transaction [establishing it] and the current lawsuit."  *Id.*  Similarly, here, it is the alleged use of the Master Agreement that gives rise to liability, not the fact it exists or contain terms known to lawyers around the world.

Disqualification cannot be founded on such simplistic and superficial connections.  In *Emp'rs Ins. Co. of Wausau v. Munich Reins. Am., Inc.*, No. 10 Civ. 3558(PKC), 2011 WL 1873123 (S.D.N.Y. May 16, 2011)*,* an insurance company asserted that two different arbitrations both involved a question whether there had been one or more "occurrences."  The Court rejected the argument that this "common feature of reinsurance arbitration" established a substantial relationship between the two arbitrations:  "This is no more remarkable than saying that in two actions for breach of contract there would likely be common issues of consideration, construction of the unambiguous terms of the contract, the foreseeability of the claimed loss, the damaged party's duty to mitigate and the absence of availability of punitive damages."  *Id.* at *6.

ISDA's argument that Mr. Cunningham's advice about licensing issues relates to yet another "core argument" in the lawsuit, while ostensibly more specific, is also demonstrably infirm.  *See* ISDA Mem. 5, 10.  Advice on "licensing of ISDA's pricing information to Eurex Credit Clear" cannot possibly relate to "the central allegations in the *Salix* complaint," *id.*, because that complaint makes such allegation—it alleges repeatedly that pricing information is in

the exclusive control of Defendant <u>Markit</u>, not ISDA.[9]  On this aspect of the record, as on the others, ISDA falls hopelessly short of satisfying its burden of showing that "the relationship between issues in the prior and present cases is patently clear" and that "the issues involved have been 'identical' or 'essentially the same.'" *Gov't of India*, 569 F.2d at 739-40.

## II.   MR. CUNNINGHAM DOES NOT POSSESS RELEVANT CONFIDENTIAL INFORMATION

ISDA similarly fails to meet the "access" element of the *Evans* test, offering only the conclusory statement that "Mr. Cunningham had access to relevant privileged information in the course of his prior representation of ISDA."  ISDA Mem. 10.[10]

### A.   A Presumption of Access to Relevant Confidential Information Is Rebuttable

Even if, *arguendo,* there were a substantial relationship between Mr. Cunningham's prior representation and this lawsuit that could give rise to "a presumption ... that any attorney who participated in both likely had access to pertinent privileged information," that "presumption may be rebutted." *Leslie Dick*, 2009 WL 2190207, at *12.[11]  Moreover, the Second Circuit has

---

[9]   *See, e.g., Salix* Amended Complaint ¶143 ("The Dealer Defendants jointly agreed to supply Markit with exclusive information regarding their CDS trades.... The agreement enabled <u>Markit</u> to become the <u>exclusive</u> source of published CDS trading data."); ¶89 ("For CDS trading, there is <u>only one source</u> of after-the-fact pricing information: Defendant <u>Markit</u>.");   ¶15 ("Working jointly and in concert, the Dealer Defendants refused to allow critical real-time information about bids, asks, and closed transactions (<u>which they controlled through Defendant Markit</u>) to be used by any exchange, unless the Dealer Defendants were assured that they would be on at least one side of every transaction.").

[10]   For this proposition, ISDA cites *Blue Planet Software Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 277-78 (S.D.N.Y. 2004).  In *Blue Planet*, although the "ultimate issues" in the two lawsuits were "not identical," it was obvious that they were substantially related, in that, among other things, both concerned ownership rights to the same video game, Tetris.  *Id.* at 277.  The Court observed that "factual overlap appears to be both inevitable and substantial, because the ownership rights to Tetris will be traced in careful detail, just as in the [prior] litigation."  *Id.* The movant in *Blue Planet*, Elorg USA, demonstrated that in the earlier suit, the attorney obtained "unfettered access to the confidential internal records" of movant's predecessor, Soviet Elorg, including privileged communications expressly addressing the ownership of Tetris, during "several years of litigation" on behalf of Soviet Elorg's licensee, to whom Soviet Elorg was contractually obliged to provide assistance and access to documents.  *Id.* at 274-75.

[11]   *See also Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 754 (2d Cir. 1975) ("while this Circuit has recognized that an inference may arise that an attorney formerly associated with a firm himself received confidential information transmitted by a client to the firm, that inference is a rebuttable one."); *Wausau,* 2011 WL 1873123, at *4 ("The law in

cautioned that:  "It will not do to make the presumption of confidential information rebuttable and then to make the standard of proof for rebuttal unattainably high.  This is particularly true where, as here, the attorney must prove a negative, which is always a difficult burden to meet."  *Silver Chrysler*, 518 F.2d at 754.

### B.  Any Presumption of Access to Relevant Confidential Information Is Dispositively Rebutted on This Record

ISDA asserts that "Quinn Emanuel has not denied that Mr. Cunningham obtained confidential and privileged information from ISDA related to the instant litigation," citing Mr. Brockett's November 8, 2013 letter to the Court (Dkt. No. 76 at 2).  This is assertion is false.  Mr. Brockett's letter (at 2) plainly states:  "Mr. Cunningham is prepared to submit an affidavit swearing that he never advised ISDA on any issue related to this case."  He has now done so.

Quinn Emanuel denied ISDA's assertion from the outset because it is untrue, as Mr. Cunningham proves in his Declaration:  "I never had, and could not have shared with anyone at Quinn Emanuel, any confidential information of ISDA concerning the matters at issue in the CDS action."  Cunningham Dec. ¶5.  *See also id.* ¶7 ("I last represented ISDA in March 2009.  The work I did for ISDA before then did not result in my learning any confidential information relevant to the issues in the CDS Action, notwithstanding the characterization that ISDA has now, in very broad brush, appended to it."); ¶21 ("Insofar as ISDA is implying that I may have knowledge about activities at ISDA that could be challenged under the antitrust laws, I do not."); ¶24 ("I have no knowledge of any refusal or delay on ISDA's part to license pricing information or anything else to Eurex Credit Clear").

ISDA's vague, speculative and conclusory accusations cannot overcome Mr. Cunningham's sworn statements.  "[A]n attorney can rebut the presumption [of access] by stating explicitly that no confidences were ever received from the former client."  *Team Obsolete*, 2006 WL 2013471, at *7.  In *Med. Diagnostic Imaging, PLLC v. CareCore Nat'l,*

---

this Circuit has evolved and the presumption that the attorney was likely to have had access to client confidences may be rebutted....").

*LLC*, 542 F. Supp. 2d 296, 315 (S.D.N.Y. 2008)**,** the Court denied a disqualification motion that "d[id] not directly address in what ways Weiss's prior work would taint the current litigation. Rather, Movants appear to argue that there is a substantial relationship between the two, and therefore that relationship must naturally lead to taint."  The Court held there was "no reason to disregard assertions by Weiss that he does not recall receiving, and his notes do not reflect, that he obtained any significant information," particularly when the former client, like ISDA here, "ha[d] not pointed to any information, allegedly in Weiss's possession, which might lead to a request or question that would not have otherwise been advanced" or "demonstrated any way in which information allegedly learned ... through ... prior representation would provide some advantage" to the former client's adversary.  *Id.* at 315-16.[12]

New York federal courts recognize that the passage of time—even much less than the more than four years that have elapsed since Mr. Cunningham last represented ISDA—weighs against disqualification because it diminishes the significance of confidential information, as well as recollection.  *See AIG*, 827 F. Supp. 2d at 346 ("Given that over three years have passed, it is credible that his recollection of any confidential information has naturally diminished"); *Arista*, 2011 WL 672254, at *7 (passage of 32 months since prior representation weighed against disqualification); *Intelli-Check*, 2008 WL 4682433, at *5 (passage of two years since prior representation made it "unlikely that ... [the attorney's] knowledge was central to the ongoing strategies of the [former client]"); *Papyrus* 325 F. Supp. 2d at 279 (30-month gap between lateral attorney's departure from old firm and beginning of adverse representation weighed against imputing conflict to firm).

---

[12]     *See also Silver Chrysler*, 518 F.2d at 757 (affirming denial of disqualification in light of attorney affidavits demonstrating that allegedly conflicted lawyer did not receive relevant confidential information, especially given that "Chrysler was in a position here conclusively to refute Schreiber's position that his role in these cases had been non-existent or fleeting … [and] instead chose to approach the matter in largely conclusory terms"); *Revise Clothing*, 687 F.Supp. 2d at 395 (refusing to credit "evidence proffered by Revise that it disclosed detailed business information [because e]ven when assured that the record would be maintained under seal, [the movant] was vague about the specific information allegedly conveyed"); *Hickman*, 371 F. Supp. 2d at 231 ("Defendants' papers point to no particular instance of any such confidence.").

### C.      "Playbook" Information Allegations Are Unsupported and Irrelevant

ISDA's claim that disqualification is warranted by Mr. Cunningham's access to

"playbook" information is factually vacuous and legally infirm.  ISDA's description of Mr.

Cunningham's "long-term relationship with ISDA" does not cite his participation in a single

lawsuit, settlement, or negotiated transaction warranting an inference of access to the "playbook

information" ISDA generically describes.  ISDA Mem. 10-11.  That is because Mr. Cunningham

was a corporate lawyer, not a litigator, during the years he represented ISDA (Cunningham Dec.

¶1).  Nor does he recall any litigation involving ISDA throughout that period (*id.* ¶20).

Moreover, courts in this Circuit routinely reject "playbook information" allegations as

stating grounds for disqualification.  *See, e.g.*, *Wausau*, 2011 WL 1873123, at *5 ("General

'litigation thinking'—the general strategic plan or hopes of the lawyer and client on how best to

pursue or defend claims—does not satisfy, without more, the substantial relationship test.");

*Revise Clothing,* 687 F. Supp. 2d at 394 ("background information that a diligent lawyer might

obtain about the client upon accepting an engagement does not disqualify that lawyer from

subsequently representing an adverse party unless that information is central to the claims in the

later matter."); *Vestron, Inc. v. Nat'l Geographic Soc'y*, 750 F. Supp. 586, 595 (S.D.N.Y. 1990)

("if insight into a former client's general 'litigation thinking' were to constitute relevant

privileged information, then disqualification would be mandated in virtually every instance of

successive representation.  That clearly is not the law").  Scholars and the Restatement are

equally dismissive, including Charles Wolfram in the very article ISDA cites.  Charles W.

Wolfram, *Former-Client Conflicts*, 10 Geo. J. Legal Ethics 677, 723 (1997) (the playbook

rationale "would portend both over-application of the substantial relationship test and a large

increase in the number of motions to disqualify").[13]

---

[13]      *See also* Geoffrey C. Hazard, Jr. & W. William Hodes, Law of Lawyering § 13.7 at
13-20 to 13-21 (3d ed. Supp. 2013) ("the playbook rationale threatens to create a lifetime
prohibition against opposing a former client in any new matter, regardless of whether the former
and new matters are related or unrelated in any meaningful way, thus obliterating the distinction
between former and current clients.... Few courts take such a broad view today, ... while other
courts reject the concept altogether"); Restatement (Third) of Law Governing Lawyers

**III.**    **THERE IS NO BASIS FOR IMPUTING A CONFLICT TO QUINN EMANUEL**

Even assuming *arguendo* that Mr. Cunningham did possess confidential information pertinent to this lawsuit (he does not), ISDA's argument that no screening procedures would provide adequate protection (ISDA Mem. 6-7, 11-15) completely misstates governing law.

**A.**    **A Presumption of Confidence Sharing Is Rebuttable**

It is <u>not</u> "well-settled" in the Second Circuit "that the conflict of a single attorney <u>shall be</u> imputed to the attorney's entire firm" if there is a finding of a substantial relationship and access to relevant confidences.  *See* ISDA Mem. 11.  To the contrary, the Second Circuit has unequivocally <u>rejected</u> an irrebuttable presumption that confidences are shared within a firm:

> [T]here is a "strong trend," which we join, toward allowing the presumption of confidence sharing within a firm to be rebutted....
>
> This court has adopted no categorical rule against considering practices and structures that protect client confidences within a firm in determining whether an attorney or firm should be disqualified.... We see no reason why, in appropriate cases and on convincing facts, isolation-whether it results from the intentional construction of a "Chinese Wall," or from *de facto* separation that effectively protects against any sharing of confidential information-cannot adequately protect against taint.

*Hempstead,* 409 F.3d at 133, 137-38.  *See also, e.g., Arista*, 2011 WL 672254 at \*4 ("the Second Circuit joined other circuits in holding that the presumption of confidence sharing within a firm [can] ... be rebutted") (brackets and ellipses in original); *AIG,* 827 F. Supp. 2d at 345 ("In the Second Circuit ... the confidence-sharing presumption is rebuttable").

The Second Circuit did not carve out an exception to this in the form of a *per se* rule for lawyers who played an "appreciable role" in the prior representation.  *See* ISDA Mem. 12. *Hempstead* requires courts in *all* instances to "inquire on the facts of the case before them whether the practices and structures in place are sufficient to avoid disqualifying taint." *Hempstead*, 409 F.3d at 137.  In *Arista*, for example the Court denied a motion to disqualify a Willkie, Farr & Gallagher partner who had previously served at Cravath as the senior associate

---

§ 132, Comment d(iii) (limiting use of "playbook information" rationale and noting that only "when such information will be <u>directly in issue or of unusual value</u> in the subsequent matter will it be independently relevant in assessing a substantial relationship").

representing the opposite side in the very same matter.  2011 WL 672254, at *1.  Even though

the "firm's screening procedures appear[ed] to have been sub-standard," the Court found, on the

facts, that the "conflict has not tainted, and will not taint, the upcoming trial."  *Id.* at *8.

In *Intelli-Check*, similarly, the Court denied a motion to disqualify a lateral associate's

new firm despite his prior role as the "primary associate in charge" on behalf of the adversary in

the same litigation at his old firm.  The Court rejected the argument ISDA makes here as

contrary to Second Circuit law, and declined to rule on the basis of the attorney's asserted

"appreciable role" in the very same case:

> The court declines to attach importance to such labels.... [D]espite Intelli-Check's
> suggestion, the inquiry does not end here. The Second Circuit has made it clear
> that there is "no categorical rule against considering practices and structures that
> protect client confidences within a firm in determining whether an attorney or
> firm should be disqualified." ... Instead, courts should review the facts and
> circumstances of a particular case to determine whether disqualification is
> necessary.

*Id.*, 2008 WL 4682433 at *5.

ISDA relies on erroneous standards and discredited law.  All of the cases on which ISDA

relies for its imputation and screening arguments predate the Second Circuit's 2005 decision in

*Hempstead.  See* ISDA Mem. 11-12.  *Hempstead* specifically rejected one of them as "a

mistaken reading of our precedents,"[14] and another for erroneously relying on Second Circuit

authority that "is not binding precedent."[15]  A third, *Kassis v. Teacher's Ins. & Annuity Ass'n*, 93

N.Y.2d 611 (1999), was decided by a New York State court, which applies different standards,

and it is inconsistent with Second Circuit law.[16]  The others are misleadingly quoted and

---

[14]     *Hempstead*, 409 F.3d at 137 (rejecting *Mitchell v. Metro. Life Ins. Co., Inc.*, No. 01 Civ.
2112 (WHP), 2002 WL 441194 (S.D.N.Y. Mar. 21, 2002)).  *See* ISDA Mem. 12.

[15]     *Hempstead*, 409 F.3d at 138 n.5 (criticizing *Marshall v. State of N.Y. Div. of State Police*,
952 F.Supp. 103 (N.D.N.Y. 1997)).  *See* ISDA Mem. 12.

[16]     *Kassis* (ISDA Mem. 12) was a "side-switching" case in which the Court did not fault
screening measures but based disqualification on the conflicted attorney's failure to rebut the
presumption that he possessed pertinent confidential information, and on the notion that "even
the appearance of impropriety must be eliminated."  93 N.Y.2d at 617-19.  Although the state
court seemingly accepted the proposition that a presumption of shared confidences could be
rebutted, it effectively found the presumption irrebuttable, a position rejected by *Hempstead.*

factually inapposite.[17]  The appropriate analysis—under *Hempstead* and its progeny—demonstrates that there is no possibility of trial taint here.

### B.      Any Presumption of Confidence Sharing Is Rebutted on This Record

Because the Second Circuit requires "inquir[y] on the facts of the case before [the Court] whether the practices and structures in place are sufficient to avoid disqualifying taint," *Hempstead*, 409 F.3d at 137, courts do not assess screening procedures rigidly or formulaically. The sole dispositive factor is <u>actual</u> risk of trial taint.  In *Arista*, for example, "[a]s a technical matter, Willkie's screening procedures were imperfect" and "sub-standard."  2011 WL 672254 at *5, *8.  Willkie "repeatedly failed to enter [the] conflict into its conflicts database, ... waited approximately seven weeks to implement an electronic screen, and approximately three months to circulate an internal screening memorandum." *Id.* at *5.  Once erected, screening procedures were "flawed"—the screening memo was not adequately circulated, and the electronic wall did

---

Further, in the Second Circuit, "[a]n appearance of impropriety is insufficient, without more, to serve as a basis for disqualification."  *Georges v. Peters*, No. 10 CV 7436(VB), 2012 WL 336153, at *1 (S.D.N.Y. Feb. 1, 2012).

[17]     *Lott v. Morgan Stanley Dean Witter & Co. Long Term Disability Plan*, No. 03 Civ. 9235 (HB), 2004 WL 2980193 (S.D.N.Y. Dec. 23, 2004), did not impose a *per se* rule of disqualification based on imputed knowledge, as ISDA implies (ISDA Mem. 11).  On the contrary, the Court expressly held that such a rule "would create unnecessarily preclusive and indiscriminate restraints upon an entire law firm," and that any presumption of disclosure could be rebutted by a screen.  "[H]owever, neither Heck nor Binder & Binder implemented any screening procedures." *Lott*, 2004 WL 2980193 at *4.  And Heck was a lateral hire who had billed more than 9,600 hours representing his adverse former client in over 350 similar actions. *Id.* at *1.  No "presumption [of access was] necessary," given evidence of "numerous privileged and confidential telephone calls, shared correspondence, and discussed settlement values and strategies with respect to cases involving [the former client]."  *Id.* at *2, 4.  *Blue Planet* (ISDA Mem. 12) did not hold that imputation is appropriate absent evidence that the lawyer "performed only minimal work" for the former client.  *See* n. 10, *supra*, and 331 F. Supp. 2d at 278.  The firm was disqualified because, among other things, the conflicted lawyer had been running the litigation and "implementing a screening procedure to separate Kirby from the rest of Latham now would be bootless."  *Id.  United States v. Oberoi*, 331 F.3d 44 (2d Cir. 2003) (ISDA Mem. 7, 9) did not involve a motion to disqualify; it involved a public defender's motion to withdraw from representing a criminal defendant after learning that a current and long-time client would testify for the prosecution.  The District Court denied withdrawal because, *inter alia,* both clients had consented.  The Second Circuit credited the public defender's "sincere and not unreasonable belief" that it could not adequately represent both clients, and found that "'the institutional interest in the rendition of just verdicts in criminal cases' may have been jeopardized by the district court's refusal to excuse the Defender."  *Id.* at 52.

not completely isolate the conflicted lawyer.  *Id.*  There were actual breaches, resulting in the conflicted attorney having "several communications about the case with core members of the ... team."  *Id.* at *6 n. 12.

"Notwithstanding these shortcomings," Judge Wood found that "disqualification [was] not warranted because there [was] no real risk that the trial will be tainted."  *Id.* at *6.  Uncontested sworn statements from the conflicted lawyer and all significant members of the litigation team declared that no confidential information had been shared, and an electronic audit confirmed the conflicted lawyer's *de facto* segregation.  *Id.*  The Court rejected arguments based on the conflicted lawyer's "appreciable role" and flaws in the screen as "represent[ing] the kind of per se rule that the Second Circuit rejected in *Hempstead*," maintaining that in "evaluating a motion to disqualify, it is the Court's job to assess whether an attorney's conflict actually 'poses a significant risk of trial taint.'  *Id.* at *7-8.

Similarly, in *AIG*, the "screening procedure was imperfect, without question."  827 F. Supp. 2d at 346.  The conflict was unrecognized until the former client raised it; the screen was late; the conflicted attorney meanwhile performed some work on the matter.  *Id.*  The Court nonetheless denied the motion to disqualify because "flawed screens—including late screens— are not fatal."  *Id.  See also Reilly v. Computer Assocs. Long Term Disability Plan*, 423 F. Supp. 2d 5, 12 (E.D.N.Y. 2006) (denying disqualification motion event though screen was erected one month after conflicted attorney joined firm); *Papyrus*, 325 F. Supp. 2d at 281 (denying disqualification despite three-month delay between firm's learning attorney may have gained confidential information in former representation and implementing formal screen).

As in *Arista* and as here, affidavits in *AIG* demonstrated that "no confidences were shared orally," and an electronic audit confirmed the conflicted partner's separation.  827 F. Supp. 2d at 346-47.[18]  *See also Hempstead*, 409 F.3d at 137 ("uncontroverted affidavits" filed by attorneys

---

[18]    ISDA's attempt to distinguish *AIG* on the ground that the conflicted attorney resigned from his new firm is unavailing because it is clear that the Court saw the two matters as substantially related—indeed, the very same RMBS claims were at issue in both representations, 827 F. Supp. 2d at 344-45—yet disqualification was denied.

"successfully rebut the presumption" confidences were shared); *Arista*, 2011 WL 672254, at *6 ("the Second Circuit has implicitly approved the use of attorney affidavits in a court's evaluation of disqualification motions."); *Reilly*, 423 F. Supp. 2d at 12 ("affidavits provide strong circumstantial support for the claim that Heck was isolated from others in the firm."). *AIG* rejected the movants' objections to "affidavits from potentially 'infected' attorneys," noting that "courts in this jurisdiction have … found that ... affidavits are reliable proof that confidences have not been shared," and absent evidence that confidences were "actually shared ... mere speculation will not suffice." 827 F. Supp. 2d at 346-47. The dispositive factor was that there was "no meaningful showing that the trial process here will be tainted." *Id.* at 347.

Equally strong evidence is present here, in the form of Mr. Cunningham's comprehensive Declaration detailing his minimal involvement in this matter and total lack of involvement in the development of any allegations or claims against ISDA, as well declarations from every Quinn Emanuel time-keeper on the matter, corroborating Mr. Cunningham's non-participation with respect to ISDA and the non-disclosure by him of any confidential ISDA information.[19]

Moreover, Quinn Emanuel has documented public sources for all of the allegations about ISDA in the *Salix* complaint. Tuttle Dec. Ex. 1. These include the preliminary findings of a European Commission investigation, as well as articles, news reports, press releases and blogs— all well-known and readily available in the CDS field. *Id.* The public availability of information supporting the ISDA-related allegations is corroborated by the fact that other CDS antitrust complaints filed *before* the *Salix* complaint contain equivalent allegations. *Id.* "If a party is capable of securing confidential information by means other than through prior representation, disqualification may not be merited, even if there is a technical violation of Canon 4 ... [because]

---

[19]  *See* Green Dec. ¶20 ("One way for a law firm to meet [its] burden is by showing that the lateral lawyer was formally screened from the lawsuit or that he was effectively walled off even without a formal screen. But even absent an effective institutional procedure to prevent the lateral lawyer from speaking with the litigation team about the matter, disqualification is unwarranted if the firm satisfies the court that, as a factual matter, no confidences were disclosed"); *id.* ¶38 ("The essential purpose of screening is to ensure that the personally disqualified lawyer does not convey any confidential information to the litigation team. N.Y. Rules R. 1.0 cmt. [9].").

the Court's concern ... is with taint which results in one side gaining an unfair advantage over the other."  *Med. Diagnostic*, 542 F. Supp. 2d at 315.  If information "is neither privileged, nor confidential, and has been obtained from sources ... it is difficult to see how [the conflicted firm] would have an advantage that another firm representing Plaintiffs would not."  *Id.*

### C.    No "Unique Combination of Facts" Compels Disqualification

ISDA suggests that Mr. Cunningham, a lawyer of considerable stature who has been in practice for more than thirty years, cannot tell the difference between confidential and non-confidential information (ISDA Mem. 2).  In the same vein, ISDA contends that its confidential information is at risk because Mr. Cunningham is working with several other Quinn Emanuel lawyers on cases brought by Salix and others arising from manipulation of LIBOR by major banks (ISDA Mem. 3, 14-15).

There is no reason to doubt the sworn statements of Mr. Cunningham and his colleagues that working together on the LIBOR cases has not compromised any confidential information of ISDA.  Cunningham Dec. ¶32; Brockett Dec. ¶14; *see also* Olson Dec. and Andersen Dec.  As Mr. Cunningham swears in his Declaration (at ¶32):  "Nothing about my participation in the LIBOR cases has detracted or will detract in any way from my commitment and ability to protect any ISDA confidential information.  I have not seen the slightest indication that my participation in the LIBOR cases has diminished or will diminish the ability and commitment of the other Quinn Emanuel lawyers to respect that confidentiality."  *See Hempstead*, 409 F.3d at 137; *Arista*, 2011 WL 672254, at *6 n.14 ("The reality of a large firm .... is that ... a partner [] must continue to work on other matters with those attorneys assigned to a matter as large as the [matter from which that partner is screened.]  The Court cannot ignore this reality, and finds [the attorney's] testimony that no client confidences have been shared to be credible.").

Moreover, it is apparent on the face of the LIBOR complaints that ISDA's confidential information is irrelevant to those cases, which allege that major banks—the only defendants— collusively manipulated LIBOR in an effort to deceive plaintiffs about the risk in entering into certain transactions with defendants.  *See, e.g.,* Salix LIBOR Amended Complaint (Ellis Dec. Ex.

4) ¶¶7, 9, 19, 21, 115-125, 136, 152-5).  ISDA is not a defendant and is not implicated in any wrongdoing.  Brockett Dec. ¶14; Cunningham Dec. ¶25.  CDS are referred to in the LIBOR complaints solely as a point of reference for comparing the panel banks' LIBOR submissions (which were low, suggesting they had strong credit) to the prices of CDS protection written on the same banks by independent third parties (which were high, suggesting they had relatively weak credit).  Brockett Dec. ¶14; Cunningham Dec. ¶28.  The only references to ISDA in the LIBOR complaints concern publicly known facts; they are part of the landscape in which the banks' manipulation of LIBOR occurred.  Brockett Dec. ¶14; Cunningham Dec. ¶30.  Nothing in these allegations implicates any confidential information of ISDA.  Cunningham Dec. ¶31.[20]

Tellingly, Ms. Darras' Declaration does not assert that any confidential information of ISDA is at risk in the LIBOR cases—it does not mention the LIBOR cases at all.

ISDA argues in its Motion—but not in the Darras Declaration—that because Mr. Cunningham represented ISDA for more than 20 years, he has somehow been rendered unable to differentiate between its confidential and non-confidential information.  ISDA Mem. 2; *id.* at 13.  This is the rank speculation.  As Mr. Cunningham attests, in a statement with which every experienced lawyer would agree:  "I have never had the slightest difficulty distinguishing between confidential and non-confidential information, and ISDA can point to no instance in which I have ever divulged confidential information of any client."  Cunningham Dec. ¶34.[21]

## IV.   ISDA'S INVOCATION OF THE WITNESS-ADVOCATE RULE IS FRIVOLOUS

ISDA mentions in a footnote that given Mr. Cunningham's stature in the CDS industry, it is possible that a party might seek his testimony as a fact witness.  That does not state any ground for disqualification under the witness-advocate rule, which provides that:  "A lawyer may not act

---

[20]   *See* Green Dec. ¶24 ("there is nothing to suggest that confidential information—as distinguished from information that is generally known in the field or that is otherwise non-confidential—will have any relevance to other cases involving credit default swaps in which ISDA is not even a party and is not implicated in any wrongdoing.").

[21]   *See id.* (ISDA's "suggestion overlooks the ordinary presumption that lawyers can recognize the difference between confidential and non-confidential information and maintain the secrecy of the former.").

as an advocate before a tribunal in a matter if ... another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client." *See* N.Y. RULES PROF'L CONDUCT R. 3.7(b)(1).  The Second Circuit has established that in order to disqualify a law firm by imputation, the movant must prove "by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result.  *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178-79 (2d Cir. 2009).  Neither prong is satisfied here.  Testimony is "prejudicial" if it is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony."  *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989).  But ISDA has failed to set forth any evidence, let alone clear and convincing evidence, that Mr. Cunningham is likely to testify, or, if he were to do so, that his testimony would be prejudicial to Quinn Emanuel's client or jeopardize the integrity of the judicial system.  ISDA's grasping at the witness-advocate rule vividly illustrates the infirmity of its motion.

## V.   THE BALANCE OF EQUITIES STRONGLY FAVORS QUINN EMANUEL'S CONTINUED REPRESENTATION OF SALIX

"[D]isqualification represents a drastic measure which has the potential to severely prejudice the client."  *Siverio v. Lavergne*, No. 86 CIV. 6584 (KMW), 1989 WL 31531, at *3 (S.D.N.Y. Mar. 29, 1989).  ISDA's vague assertions do not establish prejudice to it from Quinn Emanuel's representation of Salix, and certainly no harm that would outweigh the very real and substantial hardship Salix will suffer if it is compelled to obtain new counsel.

Salix has invested considerable time and resources in Quinn Emanuel's investigation and prosecution of its and the class's claims.  Donovan Dec. ¶9.  "Disqualification is not warranted" under these circumstances, especially in light of "the strong public policy to allow persons to retain counsel of their choice and the need to avoid causing severe prejudice to the client, who would have to secure new counsel to deal with somewhat complex litigation with the

22

accompanying increased expense and loss of time." *In re MTBE Prod Liab. Litig.*, 438 F. Supp. 2d 305, 309-10 (S.D.N.Y. 2006). *See also Tylena M. v. Heartshare Human Servs*., No. 02Civ.8401 (VM)(THK), 2004 WL 1252945, at *3 (S.D.N.Y. June 7, 2004).

Salix specifically sought Quinn Emanuel as counsel in this case because of its experience and specialized expertise in the structured finance and antitrust fields, "deep bench" of lawyers experienced in structured finance and antitrust litigation capable of handling a case of this scope and size, and prior experience as Quinn Emanuel's client in the LIBOR manipulation cases. Donovan Dec. ¶¶6-8.  *See, e.g., Georges*, 2012 WL 336153 at *2 ("disqualification has an immediate adverse effect on the client by separating him from counsel of his choice"); *H&H*, 2000 WL 502869 at *1 (disqualification disfavored because it "disrupt[s] attorney-client relationships sometimes of long standing"); *AIG*, 827 F. Supp. 2d at 347 ("[G]iven the significant relationship between [client] and [counsel] as well as the resources already spent litigating the case and the transaction costs attendant to finding new counsel, the Court finds that it would be unduly prejudicial to disqualify [counsel]").

Moreover, there is substantial reason in this case to believe that the ISDA is motivated by tactical considerations rather than genuine confidentiality concerns.  ISDA was well aware of the supposed conflict on August 29, 2013, when the Complaint was filed, but waited more than two months, until November 6, 2013—on the eve of the due date for interim lead counsel applications, in a letter to all counsel—to raise the issue.  A movant's belated objection makes it "hard to avoid the conclusion that [the] motion is a tactical maneuver meant to cause delay and disadvantage." *Acker v. Wilger*, No. 12 Civ. 3620 (JMF), 2013 WL 1285435, at *2 (S.D.N.Y. Mar. 29, 2013); *see also Universal City Studios Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000) (denying motion in part because movant knew of the conflict two months before raising issue, reflecting that motion was motivated "at least partly by tactical considerations"); *VMP Int'l Corp. v. Yushkevich*, No. 92 Civ. 7573 (LJF), 1993 WL 287641, at *1 (S.D.N.Y. July 27, 1993).

Given the absence of any showing of trial taint, there is nothing on ISDA's side of the

scale to weigh against the substantial prejudice Salix would suffer if Quinn Emanuel were disqualified.  *See, e.g., Arista*, 2011 WL 672254, at *8 ("Given the lack of a meaningful showing that the trial process here will be tainted in any way, and the significant hardship that disqualification would place on Defendants, Plaintiffs' motion must be denied."); *Intelli-Check*, 2008 WL 4682433, at *5 (denying disqualification where risk of taint "does not outweigh the risk of harm to Defendants in losing their counsel"); *accord Reilly*, 423 F. Supp. 2d at 13.

## CONCLUSION

"As the courts have recognized, protestations of ethical outrage are often intended to disguise the tactical motives prompting an effort to disqualify opposing counsel."  *United States v. Newman*, 534 F. Supp. 1113, 1127 (S.D.N.Y. 1982).  This motion is a classic example— inexplicably delayed for months, based on flimsy insinuations of misconduct and duplicity, and bereft of any attempt to address the governing standard of trial taint.  Salix and Quinn Emanuel respectfully request an expeditious ruling on, and denial of, the Motion.

Dated:  New York, New York
        November 25, 2013

**JOSEPH HAGE AARONSON LLC**

By:____/s/ Gregory P. Joseph_____
        Gregory P. Joseph (GJ 1210)
            (gjoseph@jhany.com)
Pamela Jarvis (PJ 1250)
(pjarvis@jhany.com)
Sandra M. Lipsman (SL 1220)
(slipsman@jhany.com)
485 Lexington Ave., 30th Floor
New York, New York 10017
Tel: (212) 407-1200
Fax: (212) 407-1280

*Attorneys for Quinn Emanuel Urquhart &*
*Sullivan, LLP*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:_____/s/ Daniel L. Brockett_____
        Daniel L. Brockett
            (danbrockett@quinnemanuel.com)
Stephen R. Neuwirth
(stephenneuwirth@quinnemanuel.com)
Steig D. Olson
(steigolson@quinnemanuel.com)
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Plaintiff Salix Capital US Inc.*

24