**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S INTERNET ADDRESS
**danbrockett@quinnemanuel.com**

December 12, 2013

<u>VIA ECF</u>

Honorable Denise L. Cote
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *In re Credit Default Swaps Antitrust Litigation*, 13-MD-2476 (DLC)

Dear Judge Cote:

We write pursuant to Your Honor's instructions at the December 5 initial conference in the above matter. At the conference, the Court appointed Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") as lead counsel for the class and asked us to make a further submission about who would serve as our co-lead counsel in this litigation and how the leadership of this case would be structured in a way that would work efficiently for the class and be of benefit to the class.

Having further considered the matter and guided by Your Honor's comments at the hearing, Quinn Emanuel respectfully proposes that the firm of Pearson, Simon & Warshaw, LLP ("Pearson Simon") serve as our co-lead counsel in this matter. In that capacity, Pearson Simon will participate fully in the overall litigation strategies and decision making for the case, and will provide some "boots on the ground," but will be principally focused on litigating any matters relating to Defendant Morgan Stanley.[1]

---

[1]   As used herein, "Morgan Stanley" refers collectively to defendants Morgan Stanley & Co. LLC and Morgan Stanley Bank, N.A.

Partnering with Pearson Simon in this manner will address any theoretical issues relating to Quinn Emanuel's representation of Morgan Stanley on unrelated matters, while avoiding a "top-heavy" leadership structure and preserving the efficiencies of having a single firm principally responsible for litigating the case. (*See* Dec. 5, 2013 Hr'g. Tr. at 48-49.) We are mindful of the Court's observation that it makes sense to structure the leadership of this case with "a few people making the strategic decisions and then lots of boots on the ground executing them." (*Id.* at 49.) Under the structure we propose, the strategic decisions will be made by Quinn Emanuel in consultation with Pearson Simon. We have worked with Pearson Simon in the past and believe its strategic input will benefit the class here. The selection of Pearson Simon as co-lead counsel will also benefit the class by facilitating the continued involvement of the Los Angeles County Employees Retirement Association ("LACERA") as a named plaintiff.

The "boots on the ground" litigating this case will primarily be those of Quinn Emanuel attorneys, and Quinn Emanuel will deploy its resources efficiently. Among other things, Quinn Emanuel will run the massive document discovery expected in this case, using our in-house e-discovery capabilities. We will also handle most of the briefing, depositions, and hearings, with the assistance of Pearson Simon. Having most of the discovery handled by one firm will avoid the potential inefficiencies and duplication of work arising from multiple firms sharing tasks that could be done by the attorneys of a single firm. It is expected the Pearson Simon firm will contribute the resources necessary to prosecute the case to the full extent of its capacity to do so, but without duplicating the work being done by Quinn Emanuel. As Bruce Simon noted at the initial conference, Pearson Simon has significant antitrust experience, but the firm's smaller size creates a structural guarantee that there will not be teams of lawyers at two different firms duplicating each other's efforts or getting bogged down in the logistics of case coordination. (*See id.* at 42-43.) Pearson Simon will focus mostly on matters relating to Morgan Stanley, but will assist on other projects as well.

Quinn Emanuel and Pearson Simon would staff the great majority of the case in this manner. We believe, however, the class will benefit from our ability to assign certain discrete projects to a small group of other counsel where doing so will utilize the unique knowledge and expertise of that counsel. For example, should we choose to name additional class representatives in the consolidated amended complaint that are represented by other plaintiff's counsel, we would involve that counsel as necessary in the preparation and defense of any deposition of their clients. We also note that certain plaintiff's counsel have represented that they engaged in investigative work that would benefit the class, including interviews with potential witnesses. To the extent other plaintiff's counsel have developed relationships with witnesses that will benefit the class, we would plan to utilize that counsel to maximize the benefit of those efforts for the class. In addition, there may be situations where a firm offers particularized expertise with regard to an issue facing the class in the case, such as a certain legal or expert issue. On occasion, we would plan to assign discrete tasks to such a firm. When we do so, we would manage the work to make sure it is done efficiently.

We respectfully submit that the leadership structure proposed herein will maintain, to the greatest extent possible, the benefits of having the case principally litigated by a single firm, that it will be efficient and solve any "Morgan Stanley" issue, and that it is in the class's best interests. We would be pleased to discuss these issues further at the Court's convenience.

In addition, we note that we have no objection to the Court's December 11, 2013 Proposed Case Management Order.

Respectfully submitted,

Daniel L. Brockett

cc:     All counsel of record via ECF