UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
                                                                 :
                                                                 :
IN RE CREDIT DEFAULT SWAPS ANTITRUST                             :
LITIGATION                                                       :   13 Md. 2476 (DLC)
                                                                 :
This Document Relates To: All Actions                            :
                                                                 :
                                                                 :
                                                                 :
                                                                 :
---------------------------------------------------------------- x

### DECLARATION OF THE HONORABLE DANIEL WEINSTEIN (RET.) IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH ALL DEFENDANTS AND PRELIMINARY CERTIFICATION OF A <u>SETTLEMENT CLASS</u>

I, The Hon. Daniel Weinstein (Ret.), hereby declare as follows:

1.     The parties in the above-captioned matter retained me in late 2014 to mediate settlement negotiations in *In re Credit Default Swaps Antitrust Litigation*, No. 13 MD 2476 (DLC) (S.D.N.Y.). As the court-appointed Mediator, I presided over most, if not all, of the mediation sessions, which stretched over a period of 9 months. I submit this declaration to highlight certain aspects of the mediation and settlement process that may be of assistance to the Court in evaluating Class Plaintiffs' motion for preliminary approval of the settlements reached with all Defendants. Class Plaintiffs and Defendants have consented to my providing this declaration generally describing the process.

2.     Subject to the confidentiality of the mediation process, I am also available to provide the Court with any additional information it might find useful in its evaluation of either preliminary or final approval of the settlements.

1

3. As detailed below, counsel for both Plaintiffs and Defendants are sophisticated, experienced, antitrust and class action litigators, who developed a very clear understanding of their respective theories and risks through detailed mediation presentations and other information exchanges. The parties met repeatedly, they exchanged supporting materials and expert modeling, they held numerous follow up meetings, and they carried out significant deposition and document discovery.

4. Plaintiffs faced significant factual and legal hurdles in proving liability, damages, and causation. Given the legal and factual risks Plaintiffs faced, the monetary result achieved for the Class is, in my judgment, exceptional. In fact, I would go so far as to say that, in 30-plus years of mediating high-stakes disputes, this was one of the finest examples of efficient and effective lawyering by plaintiffs' counsel that I have ever witnessed. I have rarely, if ever, observed a Plaintiff in a case of this complexity and size, achieve a result of this magnitude with the speed that Plaintiffs achieved here.

## My Background

5. For the past 28 years, I have served as a full-time mediator, focusing primarily on complex disputes. I am a co-founder of Judicial Arbitration and Mediation Services ("JAMS"), the nation's largest provider of alternative dispute resolution services, and currently serve as a mediator with the organization. I also founded the Class Action Settlement Administration, a subsidiary of JAMS dedicated to the fair and speedy allocation of settlement funds in large matters. I have also taught Mediation Advocacy as a Professor at Stanford University and other Universities.

6. Throughout my career, I have mediated over 3,000 complex disputes. I have mediated, among other things, numerous big-ticket antitrust, securities, and intellectual property

2

cases, many of them class actions. These were cases filed in numerous federal and state courts across the country, including multi-district litigation, and some of them involved billions of dollars at stake. Examples include, among others, the Enron bankruptcy, Adelphia, the I.P.O. cases, Marsh, Motorola, the Shinsei Bank collapse, General Motors, the KPMG tax-shelter class action cases, various price-fixing cases against major financial institutions, the Swiss Converium case, United Health, Apple, Intel, Samsung, and the Parmalat case. I also served as the United States Special Representative to Bosnia (1999-2000), where I oversaw the transfer of over $14 billion in funds to Muslims, Croats, and Serbs, in connection with privatization of that country. In addition, I helped arrange and mediate issues concerning the historic professional boxing match between Floyd Mayweather, Jr. and Manny Pacquiao in 2015 along with numerous other sporting and entertainment matters.

7. My dispute resolution services are well known in the legal community, and I have been the recipient of numerous awards. In 2014, I was the recipient of the International Advocate for Peace Award by the Cardozo Journal of Conflict Resolution; in 2013, I was named as a "Top Master" in the Los Angeles *Daily Journal* Top California Neutrals List; in 2000, I was recipient of the coveted Learned Hand Award from the AGC and in 2002, and again in 2004 to 2012, I was named as a "Top California Neutral" by the Los Angeles *Daily Journal*.

8. Prior to my mediation career, I served as a Judge of the Superior Court of San Francisco (1982-1988), and as Chief Associate Justice Pro Tem for the California Supreme Court and the First District Court of Appeal (1984). Prior to taking the bench, I was an Assistant District Attorney in San Francisco. Immediately after receiving my J.D. with honors from Harvard University, I spent seven years in private practice in which I focused on complex

litigation in federal court. I am the Founder of the Weinstein JAMS International Fellowship, the 7 Teepees Youth Program, and the Danny Weinstein Youth Foundation.

## My Involvement In This Matter

9. Over the course of the last 9 months, I have been directly involved in, or was contemporaneously made aware of, all mediation efforts and settlement negotiations between the parties. Throughout this period, my staff and I conducted a number of lengthy mediation sessions between plaintiffs and the entire defense group, as well as various separate sessions between counsel for the plaintiffs and individual defendants. I also participated in dozens of conference calls and one-on-one meetings with the parties.

10. While I don't keep precise time records as part of my practice, I know that I personally spent over 400 hours on the mediation and settlement of this action, not to mention the numerous additional hours devoted to it by my staff.

11. Throughout these discussions, both Plaintiff and Defendants were represented by very able and experienced attorneys who specialize in complex antitrust, class action and financial litigation. Class counsel for Plaintiffs included Dan Brockett, Ken Chiate, Steig Olson, Sascha Rand, Jonathan Oblak, Cliff Pearson, Bruce Simon, and George Trevor.

12. Defendants were similarly represented by counsel with decades of relevant experience. The firms involved included, among others, Robert Wise (Davis Polk & Wardwell LLP) for Bank of America; Elai Katz and David Januszewski (Cahill Gordon & Reindel LLP) and Jonathan Schiller (Boies, Schiller & Flexner LLP) for Barclays; David Esseks (Allen & Overy LLP) for BNP Paribas; David Graham (Sidley Austin LLP) for Citigroup; Benjamin Holt (Hogan Lovells LLP) and Fraser Hunter and David Lesser (Wilmer Hale LLP) for Credit Suisse; Paula Render and Tracy Schaffer (Jones Day) for Deutsche Bank; Robert Sperling and Elizabeth

Papez (Winston & Strawn LLP) and Richard Pepperman (Sullivan & Cromwell LLP) for Goldman Sachs; Andrew Marovitz and Britt Miller (Mayer Brown LLP) for HSBC; Michael Garvey (Simpson Thacher & Bartlett LLP) for ISDA; Peter Greene and Boris Bershteyn (Skadden Arps Slate Meagher & Flom LLP) for JP Morgan; Colin Kass (Proskauer Rose LLP) for Markit; Daniel Slifkin (Cravath, Swaine & Moore LLP) for Morgan Stanley; Joseph Bial (Cadwalader, Wickersham & Taft LLP) for RBS; and David Bohan (Katten Muchin Rosenman LLP) for UBS.

13. Notably, informed and engaged senior representatives for both Plaintiffs and Defendants also actively participated in numerous mediation sessions and settlement discussions. As one would accordingly expect, the quality of the lawyering and the sophistication of the advocacy and presentations made by counsel was at all times exceptionally high.

## The Mediation Process

14. While it is not possible here to detail the dozens of sessions, meetings and events which led to the full resolution of this action, I wish to highlight certain of them for the Court.

15. The first mediation session among the parties took place in New York on January 22, 2015. Counsel for all parties were present, as were various senior representatives of certain of the banks. In advance of the session, Plaintiffs submitted a forty page mediation brief that set forth Plaintiffs' theory of liability and the prospects for class certification.

16. Plaintiffs' mediation brief made clear that Plaintiffs had reviewed and digested a substantial number of Defendants' documents and were aggressively preparing to begin depositions. At the session, counsel for Plaintiffs gave an excellent PowerPoint presentation in which they advanced their liability and class certification theories.

17. The parties met again on March 31, 2015, to allow Defendants an opportunity to rebut Plaintiffs' liability arguments. Like the Plaintiffs, the Defendants made an excellent presentation in which they advanced the defenses they intended to raise on various fronts including class certification, liability and damages. Thereafter followed a lengthy and contentious arm's-length debate between the parties concerning the merits of each side's positions on liability and class certification. Despite the strong differences between the parties on their views of the merits and prospects for class certification, I encouraged the parties to continue to maintain a dialogue.

18. Specifically, I recommended in follow-up calls with both sides that the parties share additional information with each other concerning liability, class certification, and damages. As a result, Defendants asked Plaintiffs to provide a preliminary damages calculation and to explain how the damages model worked at a follow-up mediation session. Defendants also offered to present their rebuttal to Plaintiffs' presentation.

19. Plaintiffs subsequently prepared for and presented their preliminary damage model at a March 31, 2015 mediation session that was attended by counsel for all Defendants and certain of their representatives. Plaintiffs' presentation demonstrated that they had acquired the records for the millions of CDS transactions and quotes at issue, and had developed a preliminary damages model. I was impressed that Plaintiffs had done so much work in such a short period of time.

20. Following this March 31 session, Defendants requested that Plaintiffs produce a copy of their damages model, as well as the dataset used to calculate damages, to enable them to meaningfully respond. Plaintiffs ultimately agreed and subsequently produced the model and the entire dataset to Defendants.

21. I proposed yet another session on June 8, 2015 in which Defendants would present their responses to Plaintiffs' damages presentation.

22. Throughout the mediation sessions, I understood that the parties were devoting substantial resources to completing their document productions in a timely manner. I learned from Plaintiffs that they had noticed and were preparing for a first wave of approximately 50 depositions to begin in late May 2015.

23. At the June 8, 2015 mediation conference, counsel for all parties were again present. Defendants presented a detailed critique of Plaintiffs' damage model and its assumptions, and alternative models that arrived at very different results. I was likewise impressed at how much work Defendants had done in such a short period of time on these issues.

24. In early June, I understand that Plaintiffs began taking the depositions they had noticed earlier in the spring. I learned through subsequent mediations with individual parties that, by July 29, 2015, Plaintiffs had taken 27 of the 46 depositions they had noticed by that date. In sum, by mid-August, though class certification had not yet been briefed, at the time settlements with all Defendants were reached the parties had exchanged detailed information concerning their views on liability, class certification and damages, including expert modeling and supporting data, and had engaged in extensive document and transactional discovery and significant, substantive deposition discovery.

## The Settlements

25. In July-August 2015, in parallel with Plaintiffs' ongoing depositions and with the August 31, 2015 deadline for opening class certification papers fast approaching, Plaintiffs reached tentative individual settlements with each of the Defendants collectively totaling $1,864,650,000, together with certain behavioral remedies to be provided by Defendant ISDA. I participated directly in various of these individual settlements.

26. In addition, between mid-August and early September, the parties conducted numerous telephonic and email negotiations both among themselves and with my assistance in an effort to come to agreement on the language of a final, definitive settlement agreement. Despite some daunting drafting challenges presented during the holidays, I understand that the parties finalized and executed settlement agreements on or about September 30, 2015.

27. As reflected by the foregoing chronology, the mediation and settlement negotiations that resulted in the comprehensive settlement of this case were complicated, exhaustive and conducted at arm's-length by sophisticated, knowledgeable, and fully-informed counsel who consulted directly with senior client representatives throughout the process.

### The Settlement Result

28. While I found Plaintiffs' counsel to be tenacious, at times aggressive, and often expressing strong differences with my views and recommendations, they were always professional and courteous. In the end, their strategy, timing, and execution resulted in one of the best settlements I have witnessed in more than 30 years of mediating, particularly given the challenges they would have faced in litigating this complex case.

29. Based on all the knowledge I gained about the case and its potential strengths and weaknesses, it is my view that the $1,864,650,000 settlement achieved by Plaintiffs is not only fair and adequate to the class, but exceedingly favorable and reflects a recovery well beyond what I expected could be achieved during much of the mediation process.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 15th date of October, 2015, at San Francisco, CA.

_____
Hon. Daniel Weinstein (Ret.)