**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x
                                                                 :

IN RE CREDIT DEFAULT SWAPS ANTITRUST
LITIGATION                                            :         13 Md. 2476 (DLC)

This Document Relates To: All Actions
------------------------------------------------------------------ x

**DECLARATION OF DANIEL L. BROCKETT IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES**

I, Daniel L. Brockett, declare under penalty of perjury as follows:

1. I am a member of the Bar of this Court and of the law firm Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), court-appointed Lead Counsel for the Plaintiffs in this action. I submit this declaration in support of Class Counsel's Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives.

**Case Beginning and Pleading Stage**

2. As part of Quinn Emanuel's efforts to maintain our industry-leading bank litigation practice, we regularly monitor the legal and financial press. In 2013, we saw reports discussing government investigations into the CDS market. Our firm had substantial experience in litigation involving CDS instruments and such a case fell right into our firm's "sweet-spot." A team was formed and immediately began putting together a case based not just on what could be gleaned from the public record, but also by working with a top-tier consulting firm with experience in this industry. We spent hundreds of attorney hours and hundreds of thousands of dollars developing our complaint.[1]

3. We successfully petitioned the Judicial Panel on Multidistrict Litigation to transfer all CDS-related cases to this Court. We then prevailed in a highly-contentious leadership battle, which saw one of the Defendants (ISDA) file a motion to disqualify Quinn Emanuel. We then chose Pearson, Simon & Warshaw LLP ("Pearson Simon") as Co-Lead Counsel, because our Los Angeles office highly recommended them based on their past experience with the firm, and because they came with a large, sophisticated named plaintiff, the

---

[1] *See Salix Capital US Inc. v. Bank of America Corp., et al.*, No. 13 Civ. 6116 (S.D.N.Y.), Dkt Nos. 1, 8.

Los Angeles County Employees Retirement Association ("LACERA"), which had selected Pearson Simon through a competitive bidding process.

4. Throughout this period, we continued to work on further developing what would become the consolidated class-action complaint. This again included continuing to work with experts, scouring the public record, and interviewing industry insiders.

**Written Discovery**

5. Shortly after the Court's ruling on the Defendants' extensive motions to dismiss, we served extensive written discovery requests.

6. Because we were able to quickly secure an agreement to expedite the production of documents that had been already produced to the U.S. Department of Justice ("DOJ") and the European Commission ("EC"), within weeks of the Joint Initial Report, we had large teams digesting millions of pages of documents. Eventually, when we hit our stride, our teams were reviewing approximately 5,000 documents per day.

7. The document review plan was dynamic. We used sophisticated processes and protocols aided by powerful technology to ensure that lessons learned one day guided which documents would be reviewed the next. We also designed the document review process so that the information learned was being continually added to annotated narrative descriptions and chronologies, for use by everyone on the team.

8. Throughout late 2014 and into 2015, Counsel negotiated for the production of materials beyond those previously given to the DOJ and EC. Eventually, Defendants produced over 50 million pages of documents.

9. In November 2014, Plaintiffs served interrogatories. After months of negotiations (and threats to seek Court relief), we eventually secured from each Defendant a list of dates and attendees of meetings.

10. We also served twenty-four third-party subpoenas on institutions with important information about the case, including the Chicago Mercantile Exchange ("CME"), Citadel Investment Group ("Citadel"), Bloomberg LP ("Bloomberg"), the Depository Trust & Clearing Corporation ("DTCC"), and many others.

11. We also worked to ensure that each of the named Plaintiffs produced their own trading records, emails, and other relevant documents.

**Defendants' Proposed "Outreach" Program**

12. Early in the discovery process, information came to our attention that Defendants were planning an "outreach" program to discuss this lawsuit with absent class members. Because of the inherently coercive relationship between the banks and members of the class, we requested a conference with the Court.[2] The Court temporarily limited the degree to which Defendants could contact absent class members at a January 22, 2015 conference.[3]

**Depositions**

13. In response to comments made by the Court, the parties agreed to move the deadline for Plaintiffs' motion to certify the class ahead by almost six months.

14. To meet the new, accelerated schedule, our document review processes continued apace, while witness-specific deposition preparation teams were created. Each witness's deposition team was headed by a highly-experienced litigation partner. Eventually, thirty-four

---

[2] *See* Ltr. from D. Brockett to the Hon. Denise Cote (Jan. 13, 2015), Dkt. No. 374.
[3] Transcript of Hearing at 31, 13 MD 2476 (Jan. 22, 2015).

3

party depositions were noticed, multiple third-party depositions were noticed, and twenty-seven depositions were actually taken. As many as four depositions were taken on the same day. Our total plan for the case involved over 100 deponents before discovery was to close in January 2016.

## Expert Work and Class Certification Preparations

15. Preparation for class certification required efforts beyond pursuing document discovery and depositions. It also required the work of many outside experts, pouring through millions of records and other data to demonstrate that the class-action vehicle was appropriate.

16. As detailed in the Declaration of Elizabeth Kroger Davis, we retained BRG to create a sophisticated model capable of calculating damages on a class-wide basis.

17. We also retained Professor Darrell Duffie, one of the world's foremost experts on CDS and OTC markets. Over many months, working with our team, Professor Duffie worked to prepare an extensive report explaining why all or nearly all class members were impacted by the alleged conspiracy, which was based in part on an exhaustive review of the record. At the time settlements were reached, Professor Duffie was still working on a merits-focused report for use later in the case, explaining why a CDS exchange-trading platform was viable.

18. We also hired a team of industry experts and consultants to supplement BRG's work on various damages-related issues. For example, a former CDS trader provided general advice and prepared a report explaining why CDS were sufficiently standardized for class treatment. We also retained a consultant to help interpret the DTCC's voluminous trade data.

## Mediations and Settlement

19. Our mediation and settlement efforts are fully described in Plaintiffs' Motion for Preliminary Approval and the Declaration of Judge Weinstein. Suffice it to say here that these

efforts required substantial focus and meticulous preparation involving additional investments both by way of attorney-hours, and by way of the out-of-pocket expert expenses to present and defend our damages model.

### Preliminary Reactions by the Class

20. I have spoke with dozens of class members, including those expected to be near the top and the bottom of the waterfall, and they have been uniformly pleased with the settlement. We mailed the Notice on January 11, 2016 and not a single objection has been filed as of January 29, 2016.

### Attorney Fees

21. Based on its review of its contemporaneous records, I have calculated that Quinn Emanuel has spent 60,349 in attorney hours pursuing this action.

22. We have converted this to the equivalent we would charge paying clients using, for Quinn Emanuel employees, the standard hourly rates in effect for the timekeepers at the time the hours were spent. These hourly rates have been found to be appropriate and reasonable in numerous other cases.[4] For "contract attorneys" hired through an outside agency to work on the document review process, we have used an hourly rate of $200 per hour.[5]

---

[4] *See, e.g.*, Report and Recommendation of Special Master, *Transweb, LLC v. 3M Innovative Props. Co.*, No. 10-cv-04413-FSH (D.N.J. Sept. 24, 2013) (ECF No. 567) (Special Master's ruling finding that Quinn Emanuel was a "premier litigation firm" and that total fees of $26,146,493.45 were reasonable); Civil Minutes re: Order Granting Motion for Attorneys' Fees, *Riverside Cty. Dep't of Mental Health v. A.S.*, No. 08-cv-00503-ABC (C.D. Cal. Feb. 22, 2010) (ECF No. 123) (awarding full amount of attorneys' fees sought for work performed by Quinn Emanuel); Order Approving Interim Fee Requests Regarding Professionals, *In re Am. Home Mortgage Holdings, Inc.*, No. 07-11047, Dkt. 3695 (Bankr. D. Del. Apr. 14, 2008) (finding attorneys' fees requested by Quinn Emanuel were reasonable); Notice of Ruling on Quinn Defendants' Motion for Award of Attorneys' Fees, *Lockton v. O'Rourke*, No. BC361629 (Cal. Super. Ct. Feb. 23, 2011) (attaching order finding Quinn Emanuel's rates and total hours reasonable); Order Granting Plaintiff's and Plaintiffs in Intervention's Motions for Attorneys'

23. Based on these standard rates, we have determined that we would have charged a paying client to pursue this action approximately $24,511,413.50. Attached as Appendix A is a breakdown of Quinn Emanuel's attorney hours, by timekeeper.

24. I understand from the declaration of Bruce L. Simon that Pearson Simon, using similar techniques, calculates that, through December 31, 2015, they expended an additional 31,552 hours, totaling an additional $15,367,359 in fees at the then-applicable Pearson Simon rates for paying clients.

25. In total, then, Class Counsel have as of December 31, 2015 expended 91,901 hours, the equivalent of $39,878,772, in pursuing this action.

26. In addition, the Court approved Entwistle & Cappucci LLP and Labaton Sucharow LLP to handle the discrete tasks of preparing their clients for depositions and assisting in responding to written discovery requests and with document discovery related to their clients.[6] Class Counsel monitored this work while it was being performed. Following a review of their time records by myself and members of my team, I believe a reasonable estimate of the lodestar incurred in performing the above tasks to be approximately $400,000 for each firm.

---

Fees, *Monrovia Nursery Co. v. Rosedale*, No. BC351140 (Cal. Super. Ct. Jan. 12, 2009) (finding Quinn Emanuel's rates and total fees reasonable); Order Granting In Part Defendant Packaging Advantage Corp.'s Motion For An Award Of Attorneys' Fees And Costs, *Packaging Advantage Prop. Assocs., LLC v. Packaging Advantage Corp.*, No. VC045957 (Cal. Super. Ct. Nov. 6, 2007) (granting full amount of Quinn Emanuel's fee request); Final Award, *DIRECTV, Inc. v. NWS Corp.*, Am. Arbitration Assoc., No. 72 494 Y 00219 09 NOLG (June 15, 2010) (finding Quinn Emanuel's rates and hours reasonable); Final Award, *Academy of Television Arts & Sciences v. National Academy of Television Arts & Sciences*, Am. Arbitration Assoc., No. 72 140 00247 07 JENF at ¶ 2.2 (May 19, 2008) (finding Quinn Emanuel's billable rates and hourly totals reasonable).

[5] *See, e.g.*, *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 394-99 (S.D.N.Y. 2013) (Stein J.) (surveying cases and determining that $200/hour was an appropriate rate for temporary contract attorneys).

[6] Dkt. No. 343.

27. Combining the lodestar of Class Counsel and these two supporting firms, I calculate that the equivalent of $40,678,772 in lodestar was incurred by plaintiffs' counsel in connection with this action, for purposes of conducting a lodestar cross-check.

**Expenses**

28. As detailed by category in Appendix B, Quinn Emanuel and Pearson Simon have together directly expended a total of $9,391,241.49 in unreimbursed litigation expenses in prosecuting this case. The largest category is "outside professional services," which is in turn largely made up of funds paid to outside experts. This includes $5,401,634.89 just on BRG's work. The remainder of this line-item is made up of other consultants and vendors serving important functions, such as, among others, the mediator, Professor Darrell Duffie, Plaintiffs' industry expert, and the economic consulting firm Quinn Emanuel hired to conduct a preliminary analysis of class members' damages prior to filing its first complaint.

29. The other expenses incurred are similarly of the kind typically billed by attorneys to paying clients in the marketplace. They include costs such as electronic legal research, deposition expenses, travel, and other similar routine expenses.

30. The expenses incurred are reflected in the books and records of Quinn Emanuel and Pearson Simon.

31. We audited our expenses, and Pearson Simon audited their own expenses, as would be done for any playing client, and found them to be reasonable. We have taken some steps, identified in the tables below, to cut back expenses to make them conservative.

32. In addition, the supporting firms Entwistle & Cappucci LLP and Labaton Sucharow LLP claim to have incurred a total of $43,394.90 and $51,000.06, respectfully, in out-of-pocket expenses in connection with this action. We believe those numbers to be reasonable in

7

amount. A breakdown of the claimed expenses, by category, for each firm, is included as Appendix C to this declaration. We are requesting that these expense amounts be paid out of the common fund.

**Administrative and Other Ongoing Expenses**

33. Pursuant to the terms of the Settlement Agreements, costs incurred providing notice and paying other administrative expenses are to be paid directly out of the Settlement Fund, provided they do not exceed $10 million. This Court Order preliminary approved such costs as being paid from the settlement fund.[7]

34. We have received invoices from the class administrator, Garden City Group, LLC, for $276,261.80. This covers services rendered through December 31, 2015. I have reviewed those invoices and found them to be reasonable. We expect that amount to be paid directly by Signature Bank, the escrow agent, in due course.

35. Class Counsel will continue to monitor Garden City Group, LLC's work, including reviewing their invoices. We will do so before such invoices are submitted to the escrow agent for direct payment from the settlement fund in accordance with the Court's order.

36. In addition, we expect BRG to continue to perform a substantial amount of support services, given its role in developing various aspects of the claims administration model and database. Class Counsel will continue to pay BRG's invoices out-of-pocket, following a review for reasonableness. Class Counsel intends to then seek, at an appropriate future time, Court approval for additional expense reimbursements.

---

[7] Dkt. No. 465.

## Our Team

37. Quinn Emanuel is the largest litigation-focused law firm with over 700 attorneys in 18 offices around the world. We have extensive experience litigating complex antitrust and securities cases against the same Wall Street banks that orchestrated the alleged conspiracy in this case, including before this Court. Quinn Emanuel's history of success in complex commercial litigation, and particularly in class actions and cases involving the financial industry, is well-recognized. *Law360* recently named Quinn Emanuel "Class Action Group of the Year."[8] Quinn Emanuel is one of the few firms to have tried multiple class actions to verdict, and, overall, Quinn Emanuel's partners have collectively tried over 2,400 trials and arbitrations, and won 88% of them.

38. The lead attorneys from Quinn Emanuel in this action were myself, Steig D. Olson, Sascha N. Rand, Kenneth R. Chiate, and Jonathan B. Oblak.

39. I have over 30 years of experience handling complex, high-profile cases with an emphasis on antitrust, securities, commodities, and financial products litigation. As part of my work, I have represented large institutional investors such as Allstate, Prudential, and Susquehanna in major litigation against Wall Street banks. I have served as lead trial counsel in over 20 major bench and jury trials and arbitrations, and have won 90% of them. In November 2015, I was recognized as a "Competition MVP" by the legal journal *Law360* for 2015. In 2014, I was nationally ranked in Chambers USA as a Recognized Practitioner for Securities Litigation in New York, and in 2012, I was selected as one of the "New York Area's Top Rated Lawyers" by *ALM Magazine*. I have published numerous articles on securities litigation and other topics.

---

[8] *See Law360 Names Practice Groups Of The Year*, (Dec. 20, 2015), available at http://www.law360.com/articles/739452/law360-names-practice-groups-of-the-year.

40. Steig D. Olson is a partner in Quinn Emanuel's New York office, and is an experienced antitrust and class action litigator. Mr. Olson was named a 2013 Rising Star in the field of competition law by *Law360*, and has represented both plaintiffs and defendants in high-stakes antitrust and other complex commercial litigation, including class actions. Mr. Olson's scholarship on complex litigation matters has been cited by the Third and Ninth Circuit Courts of Appeals.

41. Sascha N. Rand is a partner in Quinn Emanuel's New York office, and has substantial experience litigating complex financial and commercial disputes including multi-district litigation actions. Mr. Rand is currently representing the Federal Housing Finance Authority ("FHFA") in its landmark actions against numerous financial institutions that has resulted in over $20 billion in recoveries. In past years, Mr. Rand has been responsible for multi-billion dollar litigation actions brought against banks, auditors and other professionals in Enron, Parmalat, and Refco. Mr. Rand was recognized as a National Litigation Star for Bankruptcy by *Benchmark Litigation* from 2011-2015, and as a New York Local Litigation Star for General Commercial Litigation by *Benchmark Litigation* from 2011-2015.

42. Kenneth R. Chiate is a Senior Partner in Quinn Emanuel's Los Angeles office and an experienced trial lawyer who has recovered over $3.5 billion in plaintiffs' verdicts and settlements. He was named one of Southern California's Top 100 Super Lawyers in 2004 and a Super Lawyer every year from 2004-2015. In total, he has 48 years of experience litigating complex civil cases, including more than 80 jury trials.

43. Jonathan B. Oblak is a Partner in Quinn Emanuel's New York office, and devotes a substantial portion of his practice to complex commercial matters, including litigation involving securities, structured finance transactions, and antitrust matters. Mr. Oblak is also

currently representing FHFA in in its landmark actions against numerous major financial institutions. Mr. Oblak has also represented numerous Fortune 500 companies in a range of high-stakes complex commercial litigation, both at the trial court and appellate levels, involving issues such as securities fraud, breach of contract, fraud, breach of fiduciary duty, antitrust, federal licensing and bankruptcy.

44. Many other highly qualified attorneys performed work on this large and complex action. As reflected in the chart of hours over time presented in our brief, Class Counsel worked hard on this case, but did so efficiently in response to the specific demands of the case.

45. While Quinn Emanuel is experienced in litigating class actions on behalf of plaintiffs, the majority of our revenues derive from paying clients. Deciding to file this case, and devoting numerous attorneys to it, meant forgoing revenues from such paying clients for nearly three years.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29 day of January of 2016.

_____
Daniel L. Brockett

**Appendix A – Breakdown of Quinn Emanuel Fees, By Timekeeper**
*As of December 31, 2015.*

| Timekeeper | Position | Billed Hours | Weighted Average Rate | Total Fee |
|---|---|---|---|---|
| Daniel Brockett | Partner | 2047.8 | $1,066.56 | $ 2,184,101.00 |
| Steig D. Olson | Partner | 1322.8 | $924.76 | $ 1,223,274.00 |
| Sascha Rand | Partner | 1194 | $934.56 | $ 1,115,862.00 |
| Justin Reinheimer | Associate | 1652.9 | $664.19 | $ 1,097,834.50 |
| Kenneth R. Chiate | Partner | 777.4 | $1,125.00 | $ 874,575.00 |
| William Sears | Associate | 2025 | $428.36 | $ 867,424.00 |
| Miles H. Plant | Associate | 1518.9 | $537.03 | $ 815,698.00 |
| Jonathan B. Oblak | Partner | 866 | $930.00 | $ 805,380.00 |
| David LeRay | Associate | 1523.1 | $480.13 | $ 731,284.50 |
| Augustus Golden | Associate | 1160.9 | $563.91 | $ 654,644.50 |
| Andrew Kutscher | Associate | 907.3 | $653.58 | $ 592,996.00 |
| Michael J. Madigan | Associate | 808.6 | $714.42 | $ 577,678.00 |
| Blair Adams | Associate | 1167.9 | $468.93 | $ 547,662.50 |
| Clinton Dockery | Associate | 858.5 | $613.59 | $ 526,770.50 |
| Israel Meth | Attorney | 1495.3 | $320.00 | $ 478,496.00 |
| Richard Kim | Attorney | 1439.6 | $320.00 | $ 460,672.00 |
| Joy Odom | Associate | 758.1 | $528.12 | $ 400,364.00 |
| Morgan Brady | Attorney | 1237.6 | $320.00 | $ 396,032.00 |
| Alice H. Lee | Attorney | 1131 | $332.85 | $ 376,455.00 |
| Nick Landsman-Roos | Associate | 911.1 | $411.15 | $ 374,596.00 |
| Greg Kanyicska | Attorney | 1122.7 | $320.00 | $ 359,264.00 |
| David Bloom | Attorney | 1639 | $200.00 | $ 327,800.00 |
| Alicia Veglia | Associate | 658 | $494.21 | $ 325,188.00 |
| Thomas J. Chen | Attorney | 1620 | $200.00 | $ 324,000.00 |
| Neji Dhakouani | Attorney | 1601.3 | $200.00 | $ 320,260.00 |
| Wade T. Walker | Attorney | 1575.7 | $200.00 | $ 315,140.00 |
| Daniel Needleman | Attorney | 966.7 | $320.00 | $ 309,344.00 |
| Christopher Gotterba | Attorney | 1503.7 | $200.00 | $ 300,740.00 |
| Alexander Natanzon | Attorney | 1483.5 | $200.00 | $ 296,700.00 |
| Kenneth Robbins | Attorney | 1478.5 | $200.00 | $ 295,700.00 |
| Evan O'Brien | Associate | 656 | $448.25 | $ 294,052.00 |
| Jeremy Andersen | Partner | 352.1 | $834.24 | $ 293,736.00 |
| Shirley Reginiano | Attorney | 1333.7 | $200.00 | $ 266,740.00 |
| A. Roman Pacheco | Attorney | 1244.2 | $200.00 | $ 248,840.00 |
| Jeffrey G. Shandel | Associate | 462.2 | $535.00 | $ 247,277.00 |
| Farah Anthony | Attorney | 1161.4 | $200.00 | $ 232,280.00 |
| Lalindra Sanichar | Paralegal | 706.7 | $300.00 | $ 212,010.00 |

| Name | Role | Hours | Rate | Total |
|---|---|---|---|---|
| Janice Barth | Attorney | 613.7 | $320.00 | $ 196,384.00 |
| Sarah Kern | Attorney | 574.3 | $320.00 | $ 183,776.00 |
| Koo Lee | Attorney | 570.2 | $320.00 | $ 182,464.00 |
| Adam Cashman | Counsel | 240.6 | $751.13 | $ 180,723.00 |
| Joseph Bowley | Attorney | 535.1 | $320.00 | $ 171,232.00 |
| Jennifer Brandt | Paralegal | 551.8 | $300.00 | $ 165,540.00 |
| Nathalie Pierre | Attorney | 516.5 | $320.00 | $ 165,280.00 |
| Jonathan Land | Litigation Support | 439.7 | $365.00 | $ 160,490.50 |
| Diana Peng | Attorney | 494.8 | $320.00 | $ 158,336.00 |
| John Volpe | Associate | 299.6 | $501.19 | $ 150,158.00 |
| Shiful Chowdhury | Paralegal | 496.8 | $299.78 | $ 148,929.00 |
| Alvin Sandjaya | Attorney | 680 | $200.00 | $ 136,000.00 |
| Susan English | Attorney | 671.5 | $200.00 | $ 134,300.00 |
| Lisa Mosholder | Attorney | 651 | $200.00 | $ 130,200.00 |
| Travis Rich | Attorney | 607.3 | $200.00 | $ 121,460.00 |
| Abby Bilkiss | Attorney | 582 | $200.00 | $ 116,400.00 |
| Chris Ernest Kehrer | Paralegal | 384.7 | $300.00 | $ 115,410.00 |
| Melanie Kibbler | Attorney | 576 | $200.00 | $ 115,200.00 |
| Olubayo Evans | Attorney | 358.7 | $320.00 | $ 114,784.00 |
| Robert Tzall | Attorney | 546.5 | $200.00 | $ 109,300.00 |
| Justin Arnold | Attorney | 495 | $200.00 | $ 99,000.00 |
| Michelle Gesser | Attorney | 306.3 | $320.00 | $ 98,016.00 |
| Raul Vasquez | Litigation Support | 643.9 | $150.00 | $ 96,585.00 |
| Stephanie J. McTighe | Associate | 153 | $597.39 | $ 91,401.00 |
| Roger Geissler | Attorney | 452 | $200.00 | $ 90,400.00 |
| Maaren Shah | Associate | 108.1 | $670.00 | $ 72,427.00 |
| Jung Yun (Kelly) Cho | Associate | 146.8 | $445.60 | $ 65,414.00 |
| Anand Rajkumar | Litigation Support | 430.3 | $150.00 | $ 64,545.00 |
| Sean Akari | Attorney | 321.5 | $200.00 | $ 64,300.00 |
| Linda Jovel | Litigation Support | 424.2 | $150.00 | $ 63,630.00 |
| Jon Steiger | Partner | 56.3 | $1,035.00 | $ 58,270.50 |
| Robert Trisotto | Associate | 89.1 | $640.00 | $ 57,024.00 |
| Cameron Myler | Attorney | 161.4 | $320.00 | $ 51,648.00 |
| Sherika Sterling | Paralegal | 156.4 | $300.00 | $ 46,920.00 |
| Ben Odell | Associate | 88.6 | $500.00 | $ 44,300.00 |
| Ron Primus | Paralegal | 136.5 | $300.00 | $ 40,950.00 |
| Jonathan Feder | Law Clerk | 83.2 | $365.00 | $ 30,368.00 |
| Danny Rose | Litigation | 192.1 | $150.00 | $ 28,815.00 |

| Name | Role | Hours | Rate | Total |
|---|---|---|---|---|
| | Support | | | |
| Laura R. Merchant | Attorney | 139.8 | $200.00 | $ 27,960.00 |
| Laura Johns-Bolhouse | Attorney | 137.3 | $200.00 | $ 27,460.00 |
| Daniil Chernichenko | Paralegal | 90.4 | $300.00 | $ 27,120.00 |
| Matthew J. MacDonald | Associate | 42.7 | $506.07 | $ 21,609.00 |
| Michael Will | Attorney | 67.5 | $320.00 | $ 21,600.00 |
| Toby Futter | Associate | 32.3 | $614.32 | $ 19,842.50 |
| Thomas Werlen | Partner | 17 | $1,112.32 | $ 18,909.50 |
| Andrew Kennedy | Paralegal | 59.3 | $300.00 | $ 17,790.00 |
| Wuk Kim | Litigation Support | 66.4 | $250.00 | $ 16,600.00 |
| Dominic J. Pody | Law Clerk | 45.4 | $365.00 | $ 16,571.00 |
| Keith Errick | Litigation Support | 98.7 | $150.00 | $ 14,805.00 |
| Christopher R. Barker | Associate | 17.9 | $610.50 | $ 10,928.00 |
| Jennifer Puchalski | Law Clerk | 26 | $320.00 | $ 8,320.00 |
| James Greenberg | Attorney | 40 | $200.00 | $ 8,000.00 |
| Catherine M. Manley | Counsel | 11.3 | $703.94 | $ 7,954.50 |

**Appendix B – Unreimbursed Expenses Incurred By Lead Class Counsel**

*As of 12/31/2015*

| | |
|---|---:|
| **Outside Professional Services** (experts, consultants, mediator, etc.)[9] | $7,577,925.07 |
| **Document Delivery** (postage, messengers, service, filing fees, etc.) | $13,130.93 |
| **Document Reproduction Services** (on and off-site copying, binding, etc.) | $106,817.92 |
| **Deposition Services** (videographer, transcripts) | $65,550.93 |
| **Electronic Legal Research** (Westlaw, PACER, hearing transcripts) | $182,151.95 |
| **Telephone Conferencing Charges** | $3,441.80 |
| **Travel** (airfare, train fare, hotels, meals, taxis)[10] | $160,335.05 |
| **Local Meals**[11] | $8,240.42 |
| **Litigation Support** | |
|    Hosting (per GB) | $1,087,575 |
|    Processing (digital prints, filtering, OCRing, blowbacks, physical media) | $141,147.42 |
|    System access user fees | $44,925.00 |
| | |
| **Total** | **$9,391,241.49** |

---

[9] This figure includes an invoice from BRG received in January 2016 for work performed in December 2015.

[10] Quinn Emanuel is only including in the above table *half* of the hotel, airfare, and travel-meal charges we actually incurred, while Pearson Simon (who had fewer charges) is only including charges for the coach-fare equivalent, for which it has "capped" hotels at $500/night and eliminated nearly all meal charges.

[11] Quinn Emanuel is only including in the above table *half* of the local meal expenses actually incurred. Pearson Simon, which had far fewer of these costs, is not seeking reimbursement for this category of expense.

## Appendix C – Unreimbursed Expenses Incurred By Other Plaintiffs' Counsel

### Entwistle & Cappucci LLP

| | |
|---|---|
| Litigation Support Fees (document vendor) | $29,739.83 |
| Electronic Research | $6,618.20 |
| Filing Fees | $400 |
| Telephone/Fax | $52.26 |
| Postage / Federal Express / Messengers | $1,277.45 |
| Court Reporters / Transcripts | $435 |
| Travel | $4,343.77 |
| Service of Process / Witness Fees | $528.39 |
| **Total** | **$43,394.90** |

### Laboton Sucharow LLP

| | |
|---|---|
| Litigation Support Fees (document vendor) | $36,374.14 |
| Duplication | $2,438.80 |
| Electronic Research | $1,185.78 |
| Filing Fees | $650.00 |
| Telephone/Fax | $276.54 |
| Postage / Federal Express / Messengers | $155.81 |
| Court Reporters / Transcripts | $68.40 |
| Travel | $9,850.59 |
| **Total** | **$51,000.06** |