**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
                :

IN RE CREDIT DEFAULT SWAPS ANTITRUST  :
LITIGATION                                      :     13 Md. 2476 (DLC)
                :
This Document Relates To: All Actions      :
                :
------------------------------------------------------------------ x

# DECLARATION OF MICHAEL HERRERA IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES

I, Michael Herrera, declare as follows:

1. I am Senior Staff Counsel for the Los Angeles County Employees Retirement Association ("LACERA"), lead plaintiff in *In re Credit Default Swaps Antitrust Litigation*, 13-MD-2476 (DLC) ("CDS Litigation"). I have personal knowledge of the facts stated herein.

2. I have been an attorney in LACERA's Chief Counsel's office for over 14 years. One of my principle duties is to evaluate and supervise all complex securities and antitrust litigation involving LACERA's investment portfolio.

3. I have been the attorney on LACERA's in-house legal staff charged with overseeing the CDS Litigation. Throughout my oversight of the CDS Litigation, I have kept LACERA's Chief Counsel, management team, and its Board of Investments fully apprised of all material matters.

4. Established in 1938, LACERA provides defined benefits for employees of Los Angeles County and other public agencies. As of December 31, 2015, LACERA was the largest county retirement system in the United States, with over 160,000 members, and investment assets of $48.8 billion. LACERA is governed by two boards, the Board of Retirement and the Board of Investments, and employs approximately 370 professionals.

**Retention of Pearson Simon and the Negotiation of a Fee Schedule**

5. As a fiduciary to its members in the management of their retirement assets, LACERA has a strong interest in ensuring that financial markets, such as CDS, are transparent and free from anticompetitive practices. When I learned of the alleged wrongdoing in the CDS market, I recognized that LACERA would have a strong interest both in pursuing damages but also in helping to ensure the financial marketplace is free from anticompetitive behavior. In light

1

of these concerns, LACERA decided it would issue a Request for Proposal ("RFP") to law firms to evaluate the CDS Litigation.

6.  It is LACERA's practice to issue such RFPs. This process allows LACERA to evaluate all facets of the case, to ascertain the relevant experience of the submitting law firm(s), and to compare proposed engagement terms.

7.  Pearson, Simon & Warshaw, LLP ("Pearson Simon") was among several law firms selected to receive the RFP. LACERA determined that Pearson Simon's response was the strongest, and it was selected, subject to further negotiations as to an appropriate fee structure and final approval of the engagement by LACERA's Board of Investments.

8.  LACERA's practice is to negotiate a fair and reasonable contingent fee structure with counsel. Consistent with that practice, LACERA conducted negotiations in this case at arms-length with Pearson Simon. As LACERA has done in similar engagements with outside counsel, it proposed a fee structure capping the fees for attorneys based upon a percentage of the recovery for the Class. The fee structure also considered the point at which a settlement or judgment was obtained with the percentage increasing based upon the stage at which resolution was achieved.

9.  The settlement achieved here was completed during the "commencement of fact discovery through the date of completion of all discovery" stage. Five brackets were provided as to the amount of recovery. As applied to the eventual recovery here, the fee table negotiated provided:[1]

---

[1] At the Court's request, LACERA is prepared to submit its fee agreement with Pearson Simon for *in camera* review.

| Portion of Settlement | Percentage Applied to that Portion | Fee for Portion | Cumulative Fee |
|---|---|---|---|
| $0 - $200 million | 18% | $36 million | $36 million |
| $200 - $400 million | 17% | $34 million | $70 million |
| $400 - $600 million | 15% | $30 million | $100 million |
| $600 - $800 million | 13% | $26 million | $126 million |
| $800 - $1,864.65 million | 12% | $127.758 million | $253.758 million |

10. Based upon my discussions with both law firms appointed by the Court as co-lead counsel for the Class, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") has also agreed to seek an award of attorneys' fees based upon the fee schedule LACERA negotiated with Pearson Simon.

### LACERA's Oversight of the CDS Litigation

11. LACERA actively oversaw the work of counsel and participated in all aspects of the litigation. I reviewed all significant pleadings and responses to discovery. I reviewed and had numerous telephonic discussions and email communications with senior Pearson Simon attorneys regarding the allegations made, and approved all briefs filed on behalf of plaintiffs in opposition to the Defendants' motions to dismiss. On a regular basis I received updates as to the status of the litigation from Pearson Simon, and met with Pearson Simon and Quinn Emanuel attorneys in LACERA's offices or in New York prior to settlement mediations and important court hearings.

12. Under my direction, LACERA's staff also worked closely with Pearson Simon attorneys in identifying documents requested from LACERA, and in responding to interrogatories. LACERA produced account statements covering six years, and produced other hard-copy documents. Approximately 80,000 pages of hard-copy documents were produced to Defendants.

13. Another significant task was the identification of ESI documents found on various LACERA electronic devices. I and LACERA staff spent considerable time identifying appropriate LACERA document custodians, servers, and other electronic devices likely to contain relevant information. Over 1.5 million pages of electronic documents were collected from LACERA devices, and several hundred thousand documents were identified and produced to Defendants as potentially responsive to their document requests. I also assisted Pearson Simon in obtaining documents and cooperation from LACERA's four investment managers.

14. In addition, I participated in nearly all mediation sessions conducted under the supervision of the Honorable Daniel Weinstein (Ret.), almost always in-person. At the mediation held on March 31, 2015, attended by all parties, I addressed representatives of Defendants and their counsel as to the importance LACERA placed on the CDS Litigation. I also participated in numerous teleconferences and in-person meetings with Pearson Simon and Quinn Emanuel senior attorneys regarding settlement. I also met in-person and by telephone with Judge Weinstein (Ret.) throughout the settlement negotiations.

15. I had extensive discussions with LACERA's Chief Counsel regarding the status of settlement negotiations throughout 2015 and prepared and presented to LACERA's Investment Board regular updates on those negotiations. As settlements were reached with individual Defendants during the summer of 2015, I prepared written memoranda for LACERA's executive officers and board members and in September 2015, I presented all 14 settlements to the Board which gave its approval by formal vote at a closed session.

16. I estimate that I and other members of LACERA's Chief Counsel's office spent 600 hours of professional time on the CDS Litigation between July 2013 and October 2015. In addition, LACERA's professional staff in the fixed income investment unit devoted at least 100

hours of time during that same period assisting me and Pearson Simon attorneys with CDS Litigation discovery issues. And I estimate that LACERA's information technology staff spent another 150 hours working with me and Pearson Simon attorneys in identifying and processing ESI documents necessary for responding to discovery requests. Thus, the total time spent by LACERA staff overseeing the CDS Litigation is at least 850 hours, and likely greater.

**LACERA Supports the Proposed Settlements and the Fee Request**

17. Throughout my work on the CDS Litigation, I had numerous discussions with Plaintiffs' Counsel regarding the work of its consulting experts, including Berkeley Research Group ("BRG"). I attended the March 31, 2015 mediation where BRG's preliminary damage model was presented, and the June 8, 2015 mediation where Defendants' counsel rebutted that presentation. I have also reviewed the Declaration of Elizabeth Kroger Davis In Support Of Class Counsel's Motion For Award Of Attorneys' Fees, Reimbursement of Expenses, And Incentive Awards For Class Representatives and all invoices submitted by BRG for its work through December 31, 2015.

18. From my years of overseeing complex securities and antitrust litigation for LACERA, I understand that constructing a rigorous economic model for the purpose of calculating damages suffered by the Class is a challenging process that requires extensive expert work and analysis. I also recognize the risks posed by complex damage modeling in the context of seeking class certification and damage awards, particularly when decided by a jury. Given this experience, and based on an informed appreciation of the complexity of the economic models constructed by Plaintiff Counsel's consulting expert, I consider the total settlements obtained here to be an excellent result for LACERA and the other members of the Class.

19. In addition to providing a substantial recovery for the Class, the settlement amounts will have a substantial deterrent effect on future misconduct in this market. The equitable remedies agreed to by Defendant International Swaps & Derivatives Association will further ensure that the CDS trading market remains free from collusive conduct in the future. As one of the largest public pension funds in the United States, LACERA has a strong interest in ensuring that financial markets are transparent and free of fraud and collusion.

20. In light of all these factors, LACERA fully supports final approval of these settlements.

21. I have also reviewed Class Counsel's motion for an award of attorneys' fees, reimbursement of expenses and an incentive award for the Class Representatives. The attorneys' fees requested comport with the fee schedule LACERA negotiated with Pearson Simon prior to filing its complaint. As reflected by the results of its *ex ante* negotiation, LACERA believes such an award of attorneys' fees is fair and reasonable to the Class.

22. The requested attorneys' fees here are in accord with other agreements LACERA has made with outside counsel in similar complex litigation. In all such cases, LACERA has retained counsel on a contingent basis. The fee structure in most of those cases, as here, used a declining percentage as the recovery amount increased and a higher percentage based upon when a settlement or judgment was obtained. Since 2001, LACERA has entered into 15 fee agreements with outside counsel substantially similar to fee structure in the CDS Litigation.

23. The work performed by Class Counsel here was at a very high level. As detailed above, I am fully aware of and can appreciate the tremendous work Pearson Simon and Quinn Emanuel did to obtain this result.

24.  Based upon the result obtained and the effort expanded, I believe the attorneys' fees requested are reasonable and fair to LACERA and the Class.

25.  I have also reviewed a summary of litigation expenses for which class counsel seeks reimbursement. The largest single cost was for BRG which through December 31, 2015, has billed the Class $5,401,634.89. As noted above, the work performed by BRG was essential to the ultimate success of this litigation. I have also reviewed Appendix B to the Declaration of Daniel Brockett which lists costs class counsel has advanced during the CDS Litigation. In my view these costs were reasonable and necessary to reach the resulting settlements. On behalf of LACERA, I support reimbursement to counsel of $9,391,241.49 in litigation costs expended to obtain a settlement of $1,864,650,000.

26.  I understand that class counsel has also requested an incentive award be made to LACERA in the amount of $200,000. LACERA did not bring this action with any expectation of a recovery beyond its *pro rata* share as a class member. However, in light of the tremendous recovery obtained for the entire Class as a result, in part, to the time, resources and effort expanded by LACERA during the litigation, I believe such an incentive award is reasonable and will encourage LACERA and other institutional investors to take active roles in similar, important cases in the future.

I declare under penalty of perjury that the foregoing is true and correct and was executed on January 28, 2016 at Pasadena, California.

By: _____
Michael Herrera