**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
       :
       :
IN RE CREDIT DEFAULT SWAPS ANTITRUST   :
LITIGATION                                                     :     13 Md. 2476 (DLC)
       :
This Document Relates To: All Actions        :
       :
       :
       :
       :
------------------------------------------------------------------ x

**DECLARATION OF DANIEL DONOVAN IN SUPPORT OF**
**INCENTIVE AWARD FOR SALIX CAPITAL US INC.**

I, Daniel Donovan, hereby declare as follows:

1. I am a former owner of Salix Capital Ltd. Salix Capital US Inc. ("Salix") is owned by Thomas Felgner and Eric Grannan. As explained in the Declaration of Thomas Felgner, Salix has brought claims in this case as an assignee of the FrontPoint Funds.

2. I have worked consistently as a sell-side trader or portfolio manager for virtually my entire career. From 1992–99, I was a Managing Director and Head of European Derivatives and Government Bond Trading at Lehman Brothers. From 1999–2000, I was the Chief Investment Officer of the Alternatives Group at Unicredito. From 2000–01, I was the Chief Investment Officer for an entity backed by Berkshire Hathaway. From 2001–09, I was a Portfolio Manager at FrontPoint Partners, L.P. I left FrontPoint Partners in 2009 and have been self-employed ever since.

3. Based on my 17 years working at major banks, it is my experience that banks are extremely unlikely to hire or do business with people they view as having acted adverse to their interests. Agreeing to serve as a class representative in this case thus, in my mind, essentially ended my employment prospects with the sell-side banks, including the major dealers of CDS. I also understood that I would have difficulty working at a buy-side institution that is dependent upon the banks for core services and routine trading activity, as are many hedge funds.

4. As one of the owners of Salix, I have been closely involved with the prosecution of this case from its outset. I first discussed the possibility of serving as a class representative with Daniel Brockett and other lawyers from Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") in the summer of 2013. While I was aware of the risks involved in filing a lawsuit against the Wall Street banks, it was clear to me that legal action was necessary to force important changes in the CDS market.

1

5. After Salix agreed to serve as a class representative, I worked closely with Quinn Emanuel over nearly two years. Given my 17-plus years of experience as a head trader at major banks, I was able to assist Quinn Emanuel at numerous junctures throughout the case.

6. Initially, I worked with Quinn Emanuel to analyze how Defendants' alleged conspiracy to block the exchange trading of CDS would have harmed a class of investors by inflating CDS bid-ask spreads. I helped Quinn Emanuel incorporate this analysis into their first filed complaint in this action.[1]

7. When Defendants filed their motions to dismiss in May 2014, I worked with Class Counsel to digest and rebut Defendants' arguments, some of which I believed were not supported by the facts. I also reviewed drafts of Plaintiffs' opposition brief, and provided feedback and guidance on this filing throughout the drafting process.

8. After the Court largely denied Defendants' motions to dismiss in September 2014, I assisted Class Counsel with their offensive discovery efforts while simultaneously ensuring that Salix met its own discovery obligations.

9. Given my sell-side experience, I helped Plaintiffs formulate their document requests and reviewed drafts of the Requests for Production that Plaintiffs served on September 25, October 1, and October 3, 2014. As Defendants began to produce documents at the end of October, 2014, I regularly conferred with Quinn Emanuel regarding the evidence they were developing and frequently provided guidance on how to interpret complex documents regarding CDS market structure.

---

[1] *See Salix Capital US Inc. v. Bank of America Corp., et al.*, No. 13 Civ. 6116 (S.D.N.Y.), Dkts. 1, 8.

10. I also devoted dozens of hours to producing documents and responding to interrogatories. Some responsive FrontPoint documents, transferred to Salix under the governing assignment agreement with FrontPoint, were stored on encrypted hard drives that were difficult to locate and access. I worked with Quinn Emanuel to ensure that we could find and produce such documents before Plaintiffs' document production deadline in June 2015. I also discussed Defendants' interrogatories – which sought information regarding FrontPoint's trading practices – in great detail with attorneys from Quinn Emanuel and helped draft Salix's interrogatory responses.

11. My most significant contribution to this case, however, was my work assisting Quinn Emanuel and Plaintiffs' experts in constructing a damages model. As I learned, the CDS transactional data necessary to construct this model was massive and extremely difficult to process. Quinn Emanuel and the experts at Berkeley Research Group ("BRG") were required to address a number of difficult issues and logistics. My banking experience and industry expertise was very valuable here and I was able to help BRG better understand and work through complex issues that arose during the construction of the damages model. For example, I engaged in extensive discussions with Counsel regarding the impact of the alleged conduct on transactions such as assignments, index rolls, and terminations.

12. As part of the mediation process, Defendants provided a critique of Plaintiffs' damages model in June 2015. I worked closely with Class Counsel between June 2015 and August 2015, when this case settled, to rebut these arguments, many of which required detailed knowledge of CDS trading to respond to.

13. Given the number of hours I was devoting (and had devoted) to this matter, and my expertise on important industry issues, Quinn Emanuel decided in late March 2015 to enter

into a consulting agreement with me, under which I was to be paid an hourly rate of $600 per hour as an industry consultant for my consulting work. While I had been informally providing such advice for several years, we decided to formalize the agreement in light of the increasing number of hours that my work on this matter was requiring as the deadline for Plaintiffs' class certification motion approached. Under the consulting agreement, I was not reimbursed for any time or out-of-pocket expenses incurred prior to March 2015. Because the case settled in the summer of 2015, I performed just 10.5 hours of work under this consulting agreement, for which I invoiced and was paid $6,300.

14. As noted in the Declaration of Thomas Felgner, Salix brought these CDS claims against the major banks pursuant to an assignment agreement between Salix and the FrontPoint funds. Under that agreement, Salix itself does not share in any recovery until the former FrontPoint investors are repaid a certain amount. Because Salix's *pro rata* share of the recovery will not exceed this threshold, Salix will not retain its claims under the settlement. Thus, without an award of incentive fees, Salix will receive nothing for its nearly three-year involvement in this case. While I may receive a small sum through my ownership stake of 0.50% in one of the FrontPoint Funds, this amount is likely to be insignificant.

15. In total, I spent 256 hours between May 2013 and December 2015 working on this case. I have reduced this amount to 245 hours to account for the 10.5 hours for which I billed my time in the consulting role noted above.

16. A description of the time I spent on this case is below.

| Task | Hours |
|---|---|
| Pre-suit investigation. Discuss merits of lawsuit and consequences of joining with Quinn Emanuel. Provide information to Quinn Emanuel regarding CDS market and framing of complaint. | 40 |
| Drafting of complaint. Review drafts of complaint and provide comments on feedback to Quinn Emanuel. | 30 |
| Motion to dismiss briefing. Discuss arguments raised by Defendants with Quinn Emanuel and comment on draft of amended complaint. | 25 |
| Document discovery. Retrieve and review relevant files retained from FrontPoint Funds and send to Quinn Emanuel. | 60 |
| Interrogatories. Discuss Defendants' interrogatories with Quinn Emanuel, and provide responses to Defendants interrogatories. | 20 |
| Damages model. Discuss damages model, and damages-related issues raised by Defendants, with Quinn Emanuel. Provide advice regarding construction of damages model and thoughts on how to rebut Defendants' damages-related arguments. | 60 |
| Settlement negotiations. Discuss settlement progress and strategy with Quinn Emanuel. Provide feedback on model for settlement purposes. | 10 |
| **Total** | **245** |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 29 day of January of 2016, at Dublin Ireland.

Daniel Donovan

5