UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
                                                            :
                                                            :
IN RE CREDIT DEFAULT SWAPS ANTITRUST        :
LITIGATION                                                  :    13 Md. 2476 (DLC)
                                                            :
This Document Relates To: All Actions              :
                                                            :
                                                            :
                                                            :
------------------------------------------------------------------- x

## DECLARATION OF ERIC GRANNAN IN SUPPORT OF INCENTIVE AWARD FOR SALIX CAPITAL US INC.

I, Eric Grannan, hereby declare as follows:

1. I, along with Thomas Felgner, am a co-owner of Salix Capital US Inc. ("Salix"). I have read the declaration of Thomas Felgner, and his description of the relationship between Salix and the FrontPoint Funds is accurate.

2. I have worked as a trader or portfolio manager since 1994. From 1993-1996, I was a Vice President at Lehman Brothers, and specifically worked as a Quantitative Analyst, FX Derivatives Trader. After I left Lehman Brothers in 1996, I worked at Credit Suisse as a Director and Fixed Income Relative Value Trader until 1998. From 1998 until 2001, I was a Partner and Trader at a Berkshire Hathaway backed entity. I left in 2001 to work at FrontPoint Partners, L.P., and remained there until November 2009. At FrontPoint, I was a Managing Director and Portfolio Manager. Today, I am a Founding Partner of Scoville Risk Partners, a company which specializes in valuation, risk management, and portfolio analytics in the energy and commodities sectors.

3. My work as both a trader and portfolio manager is dependent on amicable relationships with the sell-side banks, many of which are Defendants in this case. Like Mr. Felgner, I believe that my participation in this lawsuit has jeopardized my future career opportunities given the potential risk of retaliation by the Wall Street banks.

4. Today, it may not be possible for me to return to the sell-side. It is my firm belief and personal experience that major Wall Street banks are often unwilling to employ people who have spoken up against them. It may also be difficult for me to pursue a career on the buy-side – for example, at a hedge fund similar to FrontPoint – because the Wall Street banks may refuse to do business with me, or single out my funds for negative treatment. When Mr. Donovan, Mr.

Felgner, and I decided to pursue this lawsuit, I understood that I risked severely constraining my future career options.

5. It was clear to me at the outset of this case that my financial background would be valuable in developing a case against the Defendants, and I assisted in prosecuting this lawsuit wherever I could. At the beginning of the case, I analyzed the history and patterns of CDS spreads to help Quinn Emanuel develop a theory of how Defendants' conspiracy to block the exchange trading of CDS harmed investors. This theory, outlined in the first complaint Salix filed against the Defendants,[1] made the complaint, in my view, stronger than any of those that had been filed in similar actions that I had read.

6. Once this case entered discovery in September 2014, I devoted substantial time to reading and studying the documents Plaintiffs' received from Defendants, and often participated in conference calls with Plaintiffs' counsel where I helped them understand some of the difficult issues in the case. For example, in May and June 2015, I discussed with Class Counsel strategies for formulating targeted questions for deponents.

7. In addition, I spent considerable time assisting Class Counsel with responding to Defendants' document requests and interrogatories. I helped gather, process, and produce FrontPoint CDS trading records requested by the Defendants, and other relevant documents. I participated in several conference calls with Class Counsel to develop responses to Defendants' interrogatories, which requested information about FrontPoint's CDS trades and methods of obtaining CDS pricing information.

---

[1] *See Salix Capital US Inc. v. Bank of America Corp., et al.*, No. 13 Civ. 6116 (S.D.N.Y.), Dkt. 1.

8. I also engaged in detailed discussions with Class Counsel regarding their damages model, which required the expert team to resolve a number of difficult issues and overcome various technological challenges that required an in-depth understanding of the CDS market. My trading experience was particularly helpful in these areas.

9. For the reasons explained in the Declaration of Thomas Felgner, under our assignment agreement with FrontPoint, Salix will not itself be able to retain its share of the settlement. Thus, absent an incentive award, I will receive no reimbursement for my time or expenses, nor will I (or Salix) receive a *pro rata* share of the settlement, aside from an amount reflecting my small residual ownership stake of 0.97% in one of the FrontPoint Funds.

10. The chart below contains a more detailed summary of the time I spent on this case. In total, I spent approximately 80 hours assisting with this lawsuit. I have not received any compensation for my work undertaken in connection with this matter.

| Task | Hours |
| --- | --- |
| Pre-suit investigation. Discuss merits of lawsuit and consequences of joining with Quinn Emanuel. Provide information to Quinn Emanuel regarding CDS market and framing of complaint. | 10 |
| Drafting of complaint. Review drafts of complaint and provide comments on feedback to Quinn Emanuel. | 10 |
| Motion to dismiss briefing. Discuss arguments raised by Defendants with Quinn Emanuel and comment on draft of amended complaint. | 5 |
| Document discovery. Retrieve and review relevant files retained from FrontPoint Funds and send to Quinn Emanuel. | 20 |
| Interrogatories. Discuss Defendants' interrogatories with Quinn Emanuel, and provide responses to Defendants' interrogatories. | 10 |
| Damages model. Discuss damages model, and damages-related issues raised by Defendants, with Quinn Emanuel. Provide input and industry knowledge relevant to construction of damages model and how to rebut Defendants' damages-related arguments. | 20 |
| Settlement negotiations. Discuss settlement progress and strategy with Quinn Emanuel. Provide feedback on damages model for settlement purposes. | 5 |
| **Total** | **80** |

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28 day of January of 2016, at New York, NY.

*Eric Grannan*
Eric Grannan