UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
IN RE CREDIT DEFAULT SWAPS ANTITRUST   :
LITIGATION                             :   Master Docket No. 13 MD 2476 (DLC)
:
This Document Relates To: All Actions  :
:
:
:
:
:
------------------------------------------------------------------------x

## OBJECTIONS OF MF GLOBAL CAPITAL LLC TO PROPOSED CLASS ACTION SETTLEMENT

The proposed plan of distribution includes settlement terms which discriminate against a majority of class members and prevent a fair recovery for those who suffered the greatest harm.

### Summary of Objections

1. The distribution plan utilizes a deeply flawed definition of "Covered Notional" in identifying Covered Transactions. When this definition is plugged into the plan's allocation methodology,[1] it unfairly results in the award of damages for a great number of covered transactions which in fact incurred a zero or a de minimis bid-ask spread. In other words, the methodology results in the application of an anticompetitive inflation amount to covered transactions that enjoyed a zero or de minimis bid-ask spread (at time of actual execution) so that class members who bought or sold such CDS contracts unfairly benefit from the application of

---

[1] Plaintiffs have calculated for each class member all of their CDS transactions which have been determined to be Covered Transactions, and for each such Covered Transaction its "Covered Notional". (See Description of Transaction Field Names under Other Important Documents on the Claimant Portal.).

1

an anticompetitive inflation amount to trades that had zero or de minimis spread damages. By way of example, the types of covered transactions that enjoyed such spreads were packaged trades which included index arbitrage and reverse arbitrage trades, correlation/tranche trading and associated index/single name delta hedging, convexity/curve trading, single name rolls, single name Payer/Receiver CDS Options and associated single name CDS hedges and index Payer/Receiver CDS Options and associated index CDS hedges. In practice, these package trades enjoyed paying the bid-ask spread on a single leg, or one side of the trade, or paid a significantly reduced bid-ask spread on both legs of the trade with the net effect being similar to paying the bid-ask spread on only one leg of the trade whereas the allocation methodology awards full damages as though the full bid-ask spread had actually been paid on both legs of the packaged transaction. The class members that employed such trades were unfairly allocated a windfall amount of settlement proceeds and the vast majority of class members, including institutional traders and others who did not employ these strategies, are being very substantially under-compensated.

2. The settlement website currently fails to list 320 CDS trades entered into by MF Global Capital LLC that satisfy the definition of covered transaction under the agreements of settlement and plan of distribution. Exhibit A, attached, lists such trades. While MF Global Capital LLC has notified the Administrator of the omission of these qualifying trades, as of this date it has not been notified whether they will be included as covered transactions.

3. Paragraphs 4 (e) (iii) and (iv) of the Defendant Dealers' Agreements of Settlement (see Exhibit B, Stipulation and Agreement of Settlement with Barclays Bank PLC, p 15-16) use overly broad language and confusing language in defining the release of claims arising from or relating in any way to, namely:

(iii) any joint conduct relating to potential or actual clearinghouses, exchanges, trading platforms and/or other entities directly or indirectly involved or potentially involved with any CDS Transaction or Potential CDS Transaction, including, without limitation, CMDX LLC, Chicago Mercantile Exchange Inc., CME Clearing, Eurex Clearing AG, LIFFE Administration and Management, NYSE Euronext Inc., Intercontinental Exchange, Inc. ("ICE"), ICE US Holding Company L.P., ICE Clear Credit LLC (formerly ICE U.S. Trust LLC), and The Clearing Corporation, and including but not limited to any conduct that has been or could be alleged to have delayed or prevented or manipulated exchange trading or any other method or form of clearing, executing or trading of CDS Transactions through any means or on any actual or potential platform or trading facility;

(iv) any joint conduct relating to potential or actual involvement, participation, or ownership in any organization, entity, working group or other group related in any way to CDS or CDS Transactions, including without limitation, Markit, The Clearing Corporation, ICE, ICE US Holding Company L.P., ICE Clear Credit LLC and ISDA, including but not limited to any participation by Released Parties or any person who were or are employees of Settling Defendants at the time on any committees, task forces, Boards, ad hoc committees, or groups of any of the foregoing organizations or entities, and including but not limited to any joint conduct relating to licensing or request by any Person for any license(s) from Markit or ISDA;

This language has resulted in a disagreement between Plaintiffs' class co-lead counsel and one or more of Defendant Dealers' counsel as to whether any potential antitrust claim by MF Global Capital LLC or its affiliates against Defendant Dealers' as a result of their concerted efforts which prevented MF Global from launching its clearing and market making business is released under the terms of the Agreements. Plaintiffs' co-lead counsel believe it is not released while at least certain Defendant Dealers' counsel believe that it is released under the terms of the Agreements despite the fact that such claim was not asserted in the Second Amended Complaint and despite the complete absence of any consideration for the release of such claim.

4. The plan for distributing the settlement funds to claimants fails to take into account that the amount of bid-ask spread inflation resulting from the Dealer Defendants'

conduct did not uniformly impact the class members who entered into covered CDS transactions.  This is because not all class members who purchased or sold CDS contracts during the class period were offered the opportunity to buy or sell the same CDS product at the same bid-ask spread even when such quotes were being provided by the same Defendant Dealers at the same or substantially the same time. For example, the Dealer Defendants generally treated class members differently depending on how they viewed the account, including, e.g.,  whether  they viewed it as a "fast money" or "real money" account, and this view in turn dictated the bid-ask spread that the Dealer Defendants offered to such class members.  Throughout the class period, class members such as MF Global Capital LLC who the Dealer Defendants viewed as potential competitors or otherwise active or speculative traders that threatened the Dealer Defendants' profitability or legacy infrastructure were offered wider, or worse, bid-ask spreads than the lower, or narrower, bid-ask spreads which we believe were offered to the majority of other class members for their covered transactions, forcing those class members disadvantaged by worse spreads to buy at a Dealer Defendants' higher offer rate or sell at a Dealer Defendants' lower bid price.  As a result, the anticompetitive inflation resulting from the Dealer Defendants' conduct resulted in greater damages for such class members because of the wider bid-ask spreads that the anticompetitive inflation impacted when compared to the narrower bid-ask spreads offered to other class members, including "real money" accounts.  The plan for distribution utilizes a "one size fits all" methodology in calculating damages that fails to recognize this market reality.  As a result, class members forced to consistently deal at wider bid-ask spreads  are unfairly penalized and receive less in settlement proceeds than is fair while those class members offered narrower bid-ask spreads obtain a windfall and receive more in settlement proceeds than is fair. We estimate that 75% of the class members were treated as "real money" accounts or otherwise

enjoyed the benefit of narrower bid-ask spreads made by the Dealer Defendants while 25% of the class were systematically offered the ability to trade only at worse bid-ask spreads thereby consistently suffering the inflation on wider spreads.

### A Fairer Allocation Methodology

5.   As to Objection 1, the plan for distribution of settlement funds could be readily adjusted so that the anticompetitive spread is not applied unfairly to all legs of packaged transactions, even those with a zero or de minimis spread, by identifying:

   a. whenever a credit derivative index was traded the same day as at least 60% of that index's underlying components, then the covered notional amount should be adjusted to 50% of the sum of the notional amounts of all trades in such package;

   b. whenever a tranche was traded the same day as its underlying index or at least 60% of that index's underlying components, then the covered notional amount should be adjusted to 50% of the sum of the notional amounts across all components of such package;

   c. whenever convexity/curve trades were made and a buy and a sell occurred on the same trade date in the same reference entity but with at least 2 years difference between IMM maturity dates, then the covered notional of the longer to mature leg of such package should be adjusted to zero;

   d. whenever at least two single name trades were done within a 2 week period preceding and including an IMM date, which reflect both a buy and a sell of the same reference entity with the same notional amount, the same trade date for such buy and the sell (indicating a roll forward of an existing position) and the difference in maturity dates of both trades is between 3 and 6 months, then the covered notional amount of such package should be adjusted to 50% of the sum of the notional amounts of all buys and sells described herein;

   e. whenever a single name Payer/Receiver option was traded and a single name CDS were traded on the same trade date with the same reference entity, the covered notional amount on the single name CDS should be adjusted to 50% of the traded notional;

   f. whenever an index Payer/Receiver option was traded and an index CDS were traded on the same trade date, with the same reference entity, the covered notional amount on the index CDS should be adjusted to 50% of the traded notional.

6. These basic adjustments (which correct for "double-counting" of packaged trades which the Plan of Distribution failed to account for) are non-controversial adjustments that will cause a substantial redistribution of settlement proceeds to the benefit of a majority of class members and eliminate an unjust windfall to the biggest users of packaged transactions.

7. With respect to objection 4, an analysis of data provided by the Settlement Administrator regarding Covered Transactions, and using the data provided by the Settlement Administrator regarding the narrowest observable bid-ask spread intra-hour and averaging across all hours of a trading day, makes it apparent that those class members benefitting from being offered narrower spreads enjoyed an approximately 25% lower bid-ask spread on average as opposed to those class members forced to deal only at wider bid-ask spreads (which, based on a review of MF Global's own trades, is likely to be equivalent or close to equivalent to the difference between the "narrowest observed" bid-ask spread Plaintiff's consulting experts extracted and used to calculate the Applied Bid-Ask Spread Inflation on Covered Notional and the "widest observed" bid-ask spreads which can be determined from the same data). While MF Global Capital LLC believes that it is appropriate for the Applied Bid-Ask Spread Inflation to continue to be calculated as provided under the Plan of Distribution for the at least 75% of class members who benefitted from narrower spreads, those class members who can demonstrate that they were only offered the opportunity to trade with the Dealer Defendants at consistently wider bid-ask spreads should be able to recover damages based on applying the bid-ask spread inflation to the actual spreads at which they entered into Covered Transaction.

8. MF Global Capital LLC's Credit Default Swaps Antitrust Litigation Claimant ID is FBCF62BE70 and it will appear and requests to be heard at the Fairness Hearing.

Dated: February 29, 2016        /s/:   George A. Zelcs
George A. Zelcs
KOREIN TILLERY, LLC
205 N. Michigan Ave., Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751
gzelcs@koreintillery.com

*Counsel for MF Global Capital LLC*