# Exhibit A

# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF NEW YORK

## If You Entered into a CDS Transaction Between January 1, 2008 and September 25, 2015, You May Be Affected by Class Action Settlements.

"CDS" means any and all types of credit default swap(s) and CDS-based products, including, without limitation, single-name CDS, CDS on corporate, sovereign and municipal reference entities, tranche CDS, basket CDS, index CDS, and CDS futures. A "CDS Transaction" means (i) any purchase, sale, trade, assignment, novation, unwind, termination, or other exercise of rights or options with respect to any CDS, whether executed over-the-counter or via inter-dealer brokers, a centralized clearinghouse, a central limit order book, an exchange, a swap execution facility, or any other platform or trading facility; or (ii) any decision to withhold a bid or offer on, or to decline to purchase, sell, trade, assign, novate, unwind, terminate or otherwise exercise any rights or options with respect to any CDS.

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- This notice is to alert you to settlements reached with defendants Bank of America Corporation and Bank of America, N.A.; Barclays Bank PLC; BNP Paribas; Citigroup Inc., Citibank, N.A., and Citigroup Global Markets Inc.; Credit Suisse AG; Deutsche Bank AG; Goldman, Sachs & Co.; HSBC Bank PLC and HSBC Bank USA, N.A.; JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.; Morgan Stanley & Co. LLC; Royal Bank of Scotland PLC and Royal Bank of Scotland N.V.; UBS AG and UBS Securities LLC (collectively, "Dealer Defendants"); International Swaps and Derivatives Association ("ISDA"); Markit Group Holdings Ltd. and Markit Group Ltd. ("Markit") (collectively, "Defendants") in a class action.

- The lawsuit alleges that Defendants engaged in anticompetitive acts that affected the price of CDS in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The lawsuit also alleges that Defendants were unjustly enriched under common law by their anticompetitive acts. The lawsuit was brought by, and on behalf of, purchasers or sellers of CDS. The Defendants deny they did anything wrong.

- Settlements have been reached with all Defendants. Defendants have collectively agreed to pay $1,864,650,000 ("Settlement Fund"). Before any money is paid, the Court will have a hearing to decide whether to approve the settlements. Approval of these settlements by the Court will resolve all relevant claims with finality and this lawsuit in its entirety.

- The two sides disagree on how much money could have been won if the plaintiffs had won a trial.

- Your legal rights will be affected whether you act or don't act. Please read the entire Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT A CLAIM FORM | The only way to receive your share of the Settlement Fund. |
| EXCLUDE YOURSELF | Get no payment. This is the only option that allows you to ever be part of any other lawsuit against Defendants about the legal claims in this case. |
| COMMENT OR OBJECT | Write to the Court about why you do or do not like the settlements. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlements. |
| DO NOTHING | Get no payment. Give up rights. |

- The Court in charge of this case must decide whether to approve the settlements. Payments will be made if the Court approves the settlements and, if there are any appeals, after appeals are resolved.

FOR MORE INFORMATION, CALL 1-888-744-0531 OR VISIT WWW.CDSANTITRUSTSETTLEMENT.COM

## What This Notice Contains

**Basic Information** ..................................................................................................................................**Page 3**
    1. Why did I get this Notice?
    2. What is this litigation about?
    3. Why is this a class action?
    4. Why are there settlements?

**Who Can Participate In The Settlements** ...................................................................................**Page 4**
    5. How do I know if I am part of the settlements?
    6. Are there exceptions to being included in the Settlement Class?
    7. What if I'm still not sure if I am included in the Settlement Class?

**The Settlement Benefits** .......................................................................................................................**Page 5**
    8. What do the settlements provide?
    9. Can the Settlement Amount be reduced or the Settlement terminated?
    10. Will I get a payment?
    11. How can I get a payment?
    12. When will I receive a payment?
    13. What am I giving up to get a payment or stay in the Settlement Class?

**Excluding Yourself From The Settlements** ...............................................................................**Page 7**
    14 What if I do not want to be in the Settlement Class?
    15. How do I get out of the settlements?
    16. If I don't exclude myself, can I sue Defendants for the same thing later?
    17. If I exclude myself can I get money from the settlements?
    18. If I exclude myself, can I comment on the settlements?

**Commenting Or Objecting To The Settlements** .......................................................................**Page 8**
    19. How can I tell the Court what I think about the settlements?
    20. What's the difference between objecting and excluding?

**The Lawyers Representing You** .......................................................................................................**Page 9**
    21. Do I have a lawyer in this case?
    22. How will the lawyers be paid?

**The Court's Fairness Hearing** .........................................................................................................**Page 9**
    23. When and where will the Court decide whether to approve the settlements?
    24. Do I need to come to the hearing?
    25. May I speak at the hearing?

**If You Do Nothing** ................................................................................................................................**Page 10**
    26. What happens if I do nothing?

**Getting More Information** .................................................................................................................**Page 10**
    27. How do I get more information?

# BASIC INFORMATION

### 1. WHY DID I GET THIS NOTICE?

You or your company may have entered into a CDS Transaction between January 1, 2008 and September 25, 2015.

You have the right to know about this litigation and about your legal rights and options before the Court decides whether to approve the proposed settlements. If the Court approves the settlements and after any objections or appeals are resolved, an administrator appointed by the Court will make the payments that the settlements allow. You will be informed of the progress of the settlements.

This Notice explains the litigation, the proposed settlements, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court supervising the case is the United States District Court for the Southern District of New York. The case is called In re: Credit Default Swaps Antitrust Litigation, Master Docket No.: 13 MD 2476 (DLC). The people who sued are called Class Plaintiffs, and the companies they sued are called Defendants.

### 2. WHAT IS THIS LITIGATION ABOUT?

The lawsuit alleges that Defendants engaged in anticompetitive acts that affected the price of CDS in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The lawsuit also alleges that Defendants were unjustly enriched under common law by their anticompetitive acts. The lawsuit was brought by, and on behalf of, purchasers and sellers of CDS. The lawsuit is proceeding in the United States District Court for the Southern District of New York before Judge Denise Cote.

The entities that prosecuted this lawsuit, referred to as "Class Plaintiffs," are the Los Angeles County Employees Retirement Association; Salix Capital US Inc.; Value Recovery Fund LLC; Delta Institutional, LP; Delta Onshore, LP; Delta Offshore, Ltd.; Delta Pleiades, LP; and Essex Regional Retirement System.

Among other things, Class Plaintiffs allege that, beginning in 2008, Defendants conspired to prevent exchange trading of CDS at secret meetings and through telephone and email communications. Class Plaintiffs allege that the Dealer Defendants agreed with each other not to deal with any central clearing platform that might allow CDS trading and instead to clear almost all transactions through the one clearinghouse they could control, ICE Clear Credit LLC ("ICE"). Class Plaintiffs further allege that the Dealer Defendants conspired to limit changes to the over-the-counter CDS market and imposed rules restricting participation in ICE that were designed to prevent a transition to exchange trading. Class Plaintiffs allege that the Dealer Defendants pressured Markit and ISDA not to grant any licenses that allowed CDS to trade via central limit order book or on an exchange platform, thus ensuring that some Dealer Defendant be on at least one side of every CDS transaction. According to Class Plaintiffs, Defendants' conduct harmed Settlement Class Members by keeping the CDS market opaque, preventing competition, and maintaining inflated bid/ask spreads on CDS Transactions. The Defendants deny they did anything wrong.

### 3. WHY IS THIS A CLASS ACTION?

A class action is a lawsuit in which a few representative plaintiffs bring a lawsuit on behalf of themselves and other similarly situated persons (i.e., the class) who have similar claims against the defendants. The Class Plaintiffs, the Court, and counsel appointed to represent the class all have a responsibility to make sure that the interests of all class members are adequately represented.

Importantly, class members are NOT individually responsible for the attorneys' fees or litigation expenses. In a class action, attorneys' fees and litigation expenses are paid from the settlement fund (or the court judgment amount) and must be approved by the Court. If there is no recovery, the attorneys do not get paid.

When a class enters into settlements, such as these settlements with Defendants here, the Court will require that the members

of the class be given notice of the settlements and an opportunity to be heard. The Court then holds a hearing to determine, among other things, if the settlements are fair, reasonable, and adequate to the members of the class.

### 4. WHY ARE THERE SETTLEMENTS?

The Court did not decide in favor of Class Plaintiffs or Defendants. Class Plaintiffs and their Co-Lead Counsel thoroughly investigated the facts and law regarding the claims at issue in this litigation, as well as Defendants' potential defenses. As a result, Class Plaintiffs think they could have won substantial damages at trial. Class Plaintiffs developed a preliminary model, based upon a number of assumptions that Defendants vigorously disputed, which estimated that the damages the Settlement Class could potentially seek at trial were approximately $8 to $12 billion. The settlements represent a recovery of 15% to 23% of the damages that might have been sought based on Class Plaintiffs' preliminary model. Defendants think Class Plaintiffs' claims lack merit and believe the claims would have been rejected either prior to trial, at trial or on appeal. Defendants believe the trial court or an appellate court would have prevented Class Plaintiffs from litigating the case as a class action. Defendants also dispute the premises and output of Class Plaintiffs' preliminary damages model, and do not believe Class Plaintiffs could have ever proven any damages to the putative class, in which case the class would receive nothing. None of those issues were decided. Instead, after engaging in lengthy, detailed negotiations with the help of a nationally-recognized mediator, all parties agreed to settle the case. That way, they will avoid the cost and risk of adverse outcomes before or after trial or on appeal, and the people affected will get compensation. Class Plaintiffs and their Co-Lead Counsel think the settlements are best for all Settlement Class Members.

## WHO CAN PARTICIPATE IN THE SETTLEMENTS

### 5. HOW DO I KNOW IF I AM PART OF THE SETTLEMENTS?

The Court decided that everyone who fits this description is a Settlement Class Member: All persons or entities (together, "Persons") who, during the period of January 1, 2008 through September 25, 2015, purchased CDS from or sold CDS to the Dealer Defendants, their respective affiliates, or any purported co-conspirator, in any Covered Transaction. The settlement agreements define a Covered Transaction as follows:

"A purchase or sale of CDS shall be deemed to be a "Covered Transaction" in each of the following circumstances: (i) if the purchase or sale was by or on behalf of a Person either domiciled or located (e.g., had a principal place of business) in the United States or its territories at the time of such purchase or sale; (ii) if the Person was domiciled and located outside the United States and its territories at the time of any such purchase or sale, where such purchase or sale was in United States commerce; or (iii) where such purchase or sale otherwise falls within the scope of the U.S. antitrust laws."

Examples of a "Covered Transaction" include: (i) you are domiciled or located in the United States or its territories and you made a CDS Transaction with a Dealer Defendant or one of its affiliates; (ii) you are domiciled and located outside the United States or its territories and you made a CDS Transaction with a Dealer Defendant or one of its affiliates located in the United States or its territories; or (iii) you are domiciled and located outside the United States or its territories and you made a CDS Transaction with a Dealer Defendant or one of its affiliates that was executed through a desk located in the United States or its territories.

The above examples are not intended to be exclusive of what constitutes a "Covered Transaction." To the extent you believe you made a CDS Transaction that is a "Covered Transaction," you will be given the opportunity to identify that transaction and submit supporting evidence to the claims administrator.

### 6. ARE THERE EXCEPTIONS TO BEING INCLUDED IN THE SETTLEMENT CLASS?

Yes. You are not included in the Settlement Class if you are:

- a Defendant, or its current subsidiary or affiliate;
- an officer, director, management, or employee of a Defendant; or

- a Person whose exclusion is mandated by law.

However, "Investment Vehicles" are not excluded from the Settlement Class. For purposes of the settlements, an Investment Vehicle means any investment company or pooled investment fund, including, but not limited to: (i) mutual fund families, exchange-traded funds, fund of funds and hedge funds, in which a Defendant has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but of which a Defendant or its respective affiliates is not a majority owner or does not hold a majority beneficial interest, and (ii) any Employee Benefit Plan as to which a Defendant or its affiliates acts as an investment advisor or otherwise may be a fiduciary.

### 7. WHAT IF I'M STILL NOT SURE IF I AM INCLUDED IN THE SETTLEMENT CLASS?

If you are still not sure whether you are included in the Settlement Class, you can ask for free help. You can call 1-888-744-0531 or visit www.CDSAntitrustSettlement.com for more information. Or you can fill out and return the proof of claim form described in Question 10 to see if you qualify.

## THE SETTLEMENT BENEFITS

### 8. WHAT DO THE SETTLEMENTS PROVIDE?

Defendants will collectively pay the Settlement Class $1,864,650,000 (the "Settlement Fund"). The Settlement Fund, less any costs associated with notifying the Settlement Class, claims administration, and Court-awarded attorneys' fees, expenses, and incentive awards to Class Plaintiffs for representing the Settlement Class, will be divided among all Settlement Class Members who send in a valid proof of claim form.

In addition to the cash component, the settlement with ISDA provides for corporate governance reforms on the licensing of ISDA intellectual property, as follows: ISDA will disband the Credit Steering Committee Licensing Sub-Committee and replace it with an independent licensing sub-committee, called the "Licensing Sub-Committee," which will have 8 to 10 members consisting of an equal number of buy-side and sell-side firms. All decisions on licensing will be by simple majority vote. The ISDA Board will delegate full authority to the Licensing Sub-Committee to decide whether to grant requested licenses. If the Licensing Sub-Committee decides not to grant a proposed license, it will provide to the proposed licensee an opportunity to rebut the determination or modify its application. Any decision not to grant a license will be subject to an outside dispute resolution mechanism. All meetings of the Licensing Sub-Committee should be open to the public via broadcast through ISDA's website, unless a proposed licensee objects. Decisions of the Licensing Sub-Committee regarding requests for licenses will be published on ISDA's website, unless a proposed licensee objects.

In the event any Defendant terminates its settlement agreement ("Settlement Agreement") and the litigation of the action continues against that Defendant, Settling Defendants have agreed to provide certain reasonable cooperation including making available up to four current or former employees from each Settling Defendant as witnesses in the ongoing litigation.

### 9. CAN THE SETTLEMENT AMOUNT BE REDUCED OR THE SETTLEMENT TERMINATED?

In certain circumstances each Defendant has the right to request a modification of the Settlement Amount or to terminate the Settlement. The right to seek reduction in the Settlement Amount or to terminate the Settlement is set forth at Paragraphs 11(a) through 11(c) of the Settlement Agreement with each Defendant. Should one or more members of the Settlement Class timely exercise their rights to be excluded from the Settlement Class, a Settling Defendant, if it believes that the total Requests for Exclusion from the Settlement Class represent a material portion of the Covered Transactions and their exclusion would materially reduce the value of Settlement, shall have the option to present the issue to the settlement mediator, Judge Daniel Weinstein (Ret.). In the event Judge Weinstein determines some reduction in the Settlement Amount is appropriate, he may not reduce the Settlement Amount by greater than a one-to-one ratio. That is, the amount a Settlement Class member who chooses to remain as part of the Settlement Class will receive will be at least the same as if no one had requested exclusion from the Settlement Class. A Settling Defendant may also seek to terminate the Settlement by making an application for termination to Judge Weinstein. Upon such application Judge Weinstein shall determine if the reduction

remedy set forth above in this Paragraph is not adequate to preserve the essential benefits of the Settlement to the Settling Defendant making such application. Should a Settlement be terminated, the Parties shall revert to their respective status in the Action as of the date they executed the Settlement Agreement.

| 10. | WILL I GET A PAYMENT? |
|---|---|

If you are a Settlement Class Member and do not opt out of the Settlement Class, you are eligible to file a proof of claim form to receive your share of money from the Settlements. The amount of your payment will be determined by the Plan of Distribution. Plaintiffs allege that Defendants' anticompetitive conduct artificially inflated the spreads on all CDS transactions throughout the Class Period. Plaintiffs allege that but for Defendants' anticompetitive conduct, some CDS transactions would have migrated from over-the-counter trading to exchanges with a central limit order book, which would have resulted in greater pre- and post-trade transparency and other market efficiencies, thus compressing the artificially-inflated spreads on CDS traded on an exchange and those that would have continued to trade over the counter. This is disputed by Defendants.

Co-Lead Counsel retained experts who constructed a model to identify the amount of inflation of the spreads on any given CDS transaction at any given date during the Class Period. The model uses the database of CDS transactions maintained by the Depository Trust & Clearing Corporation ("DTCC"), produced in this litigation, which all market participants accept as the legal record of a CDS transaction. The model identifies CDS purchase and sales transactions executed from January 1, 2008 through September 25, 2015 which may be eligible to receive distributions from the Net Settlement Fund (the amount remaining after attorneys' fees, litigation costs and claims administration costs have been deducted) under the Settlement Class definition upon proper and timely submission of a claim.

Co-Lead Counsel's experts have identified a spread compression percentage that will be applied to Covered Transactions to generate the amount of each Settlement Class Member's potential claim. Each Settlement Class Member will be sent a claim form that will direct the Settlement Class Member to a secured website maintained by the claims administrator to review information about that member's Covered Transactions, as recorded in the DTCC database. The secured website will provide the Settlement Class Member with: (i) the name of the CDS purchased or sold with the unique identification number (RED Code); (ii) the date of the transaction; (iii) the notional amount of the transaction; (iv) the tenor of the transaction (number of years, typically 5 years); (v) for CDS indices, the series; and (vi) the allowed claim (amount of inflated spread paid) for that CDS transaction.

The Net Settlement Fund will be distributed to all Settlement Class Members who submit claims on a pro rata basis. Specifically, the distribution of the Net Settlement Fund will be based on the percentage of each Settlement Class Member's allowed claim as compared to the sum of all valid, allowed claims that are filed. The Net Settlement Fund will be paid out to Settlement Class Members who make proper and timely claims. No monies revert to Defendants. The Court must decide whether to approve the proposed Plan of Distribution and will consider that at the Fairness Hearing.

| 11. | HOW CAN I GET A PAYMENT? |
|---|---|

To qualify for payment, you must send in a proof of claim form. A proof of claim form is attached to this Notice. You may also get a proof of claim form electronically through the settlement website, www.CDSAntitrustSettlement.com. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and submit it. Proof of claim forms must be submitted by mail, postmarked by May 27, 2016, or electronically, through www.CDSAntitrustSettlement.com, on or before 11:59 p.m. Eastern Daylight Time, May 27, 2016.

| 12. | WHEN WILL I RECEIVE A PAYMENT? |
|---|---|

The Court will hold a hearing on April 15, 2016, to decide whether to approve the settlements. If the Court approves the settlements, there may be appeals after that. It is always uncertain whether those appeals can be resolved. Resolving them can take time, perhaps more than a year. Everyone who submits a proof of claim form will be informed of the progress of the settlements. Please be patient.

FOR MORE INFORMATION, CALL 1-888-744-0531 OR VISIT WWW.CDSANTITRUSTSETTLEMENT.COM

6

| 13. | **WHAT AM I GIVING UP TO GET A PAYMENT OR STAY IN THE SETTLEMENT CLASS?** |
|---|---|

Unless you exclude yourself, you are staying in the Settlement Class, and that means you can't sue, continue to sue, or be part of any other lawsuit against Defendants or the Released Parties about the legal issues in this case. It also means that all of the Court's orders will apply to you and legally bind you. As described in the Settlement Agreements, upon the Effective Date of settlement, each of the Releasing Parties: (i) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have, fully, finally, and forever waived, released, relinquished, and discharged to the fullest extent permitted by law all Released Claims against the Released Parties, regardless of whether such Releasing Party executes and delivers a proof of claim; (ii) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (iii) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims. The capitalized terms used in this paragraph are defined in the Settlement Agreements, which can be accessed on the website, www.CDSAntitrustSettlement.com.

A full description of the claims you are giving up against Defendants and the Released Parties is set forth in the Settlement Agreements at Paragraphs 4(a) – (f), which may be obtained on the settlement website, www.CDSAntitrustSettlement.com, or by contacting the Claims Administrator at 1-888-744-0531. Unless you exclude yourself, you are "releasing" the claims described in the Settlement Agreements, whether or not you later submit a claim.

## EXCLUDING YOURSELF FROM THE SETTLEMENTS

If you don't want a payment from these settlements, but you want to keep the right to sue or continue to sue Defendants, on your own, about the legal issues in this case, then you must take steps to get out of the Settlement Class. This is called excluding yourself—or is sometimes referred to as "opting out" of the Settlement Class.

| 14. | **WHAT IF I DO NOT WANT TO BE IN THE SETTLEMENT CLASS?** |
|---|---|

If you decide to exclude yourself from, or "opt out" of, the Settlement Class, you will be free to sue Defendants or any of the other Released Parties on your own for the claims being resolved by the settlements. However, you will not receive any money from the settlements, and Co-Lead Counsel will no longer represent you with respect to any claims against Defendants. If you want to receive money from the settlements, do not exclude yourself.

| 15. | **HOW DO I GET OUT OF THE SETTLEMENTS?** |
|---|---|

You can exclude yourself, or "opt out," by sending to the Claims Administrator a written Request for Exclusion stating, "I/we hereby request that I/we be excluded from the proposed Settlement Class in the In re Credit Default Swaps Antitrust Litigation." A Request for Exclusion must be in writing, signed by the Person (defined as the individual or entity holding the claim) or his, her, or its authorized representative; it must state, at a minimum, the name, address, and phone number of that Person; identify any and all CDS Transactions (including their respective notional amounts) in which the Person, during the period of January 1, 2008 through September 25, 2015, purchased CDS from or sold CDS to any of the Dealer Defendants, any of their respective affiliates, or any purported co-conspirator, unless that information is not within the Person's possession, custody, or control; and include a signed statement that "I/we hereby request that I/we be excluded from the proposed Settlement Class in the In re Credit Default Swaps Antitrust Litigation."

You cannot exclude yourself by telephone or email. You must do so in writing and by mail. To be valid, your Request for Exclusion must be postmarked by February 29, 2016, and mailed to:

Credit Default Swaps Antitrust Litigation
c/o Garden City Group
P.O. Box 10254
Dublin, OH 43017-5754

If you ask to be excluded, you will not get any settlement payment, and you cannot comment on or object to the settlements. You will not be legally bound by the settlements or anything that happens in this lawsuit.

### 16. IF I EXCLUDE MYSELF, CAN I GET MONEY FROM THE SETTLEMENTS?

No. You will not get any monetary benefits of the settlements, if you exclude yourself.

### 17. IF I EXCLUDE MYSELF, CAN I COMMENT ON THE SETTLEMENTS?

No. If you exclude yourself, you are no longer a member of the Settlement Class and may not comment on or object to any aspect of the settlements.

## COMMENTING ON OR OBJECTING TO THE SETTLEMENTS

### 18. HOW CAN I TELL THE COURT WHAT I THINK ABOUT THE SETTLEMENTS?

If you're a Settlement Class Member, you can tell the Court what you think about the settlements. You can comment on or object to any part of the settlements, the Plan of Distribution, the request for attorneys' fees and expenses, or the request for incentive awards to the Class Plaintiffs for representing the Settlement Class. You can give reasons why you think the Court should approve them or not. The Court will consider your views.

If you want to make a comment or objection, you must do so in writing. Your comment or objection must: (i) identify this case, In re: Credit Default Swaps Antitrust Litigation, Master Docket No.: 13 MD 2476 (DLC); (ii) state whether you intend to appear at the Fairness Hearing (though your appearance is not necessary for the Court to consider your views on the settlements); (iii) provide proof that you are a member of the Settlement Class; and (iv) identify the specific grounds for your comment or objection including any reasons why you want to appear and be heard at the Fairness Hearing, as well as all documents or writings that you want the Court to consider.

You cannot make a comment or objection by telephone or email. You must do so in writing and by mail. To be considered by the Court, your comment or objection must be postmarked by February 29, 2016, filed with the Clerk of Court, and mailed to the following addresses:

**Court**
Clerk of Court
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

Daniel L. Brockett
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601

If you do not timely submit a comment or objection, your views will not be considered by the Court or any court on appeal.

### 19. WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?

Objecting is simply telling the Court that you do not like something about the settlements. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you

exclude yourself, you have no basis to object because the settlements no longer affect you.

## The Lawyers Representing You

**20. Do I have a lawyer in this case?**

Yes. The Court has appointed the firms listed below to represent you and the Settlement Class in this case:

| | |
|---|---|
| Daniel L. Brockett | Bruce L. Simon |
| Quinn Emanuel Urquhart & Sullivan, LLP | Pearson, Simon & Warshaw, LLP |
| 51 Madison Avenue, 22nd Floor | 44 Montgomery Street, Suite 2450 |
| New York, New York 10010-1601 | San Francisco, California 94104 |
| (212) 849-7000 | (415) 433-9000 |

These lawyers are called Co-Lead Counsel. Co-Lead Counsel will apply to the Court for payment of attorneys' fees and expenses from the Settlement Fund. You will not otherwise be charged for Co-Lead Counsel's services. If you want to be represented by your own lawyer, you may hire one at your own expense.

**21. How will the lawyers be paid?**

To date, Co-Lead Counsel have not been paid any attorneys' fees or reimbursed for any out-of-pocket costs in connection with the litigation. Any attorneys' fees and reimbursement of costs will be awarded only as approved by the Court in amounts determined to be fair and reasonable. The Settlement Agreements provide that Co-Lead Counsel may apply to the Court for an award of attorneys' fees and reimbursement of costs out of the Settlement Fund. By January 29, 2016, Co-Lead Counsel will move for an award of attorneys' fees in an amount that will be consistent with the negotiated fee agreement with Lead Plaintiff Los Angeles County Employees Retirement Association ("LACERA"), not to exceed fourteen percent of the Settlement Fund's total value, as well as reimbursement of litigation costs. Plaintiffs will also seek incentive awards for the Class representatives, because of their unique efforts and expense taken on behalf of the Class. The motion by Co-Lead Counsel for attorneys' fees and costs and incentive awards will be available for viewing on the Settlement Website after it is filed. After that time, if you wish to review the motion papers, you may do so by viewing them at www.CDSAntitrustSettlement.com.

The Court will consider Co-Lead Counsel's requests for attorneys' fees, expenses, and incentive awards at or after the Fairness Hearing.

## The Court's Fairness Hearing

**22. When and where will the Court decide whether to approve the settlements?**

The Court will hold a Fairness Hearing at 2:00 p.m. on April 15, 2016, at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, Courtroom 15B, 500 Pearl Street, New York, NY 10007. The hearing may be moved to a different date or time without additional notice, so you should check www.CDSAntitrustSettlement.com before making travel plans. At the Fairness Hearing, the Court will consider whether the settlements are fair, reasonable and adequate, and whether the Plan of Distribution is fair and adequate. The Court will also consider how much to pay Co-Lead Counsel and whether to approve litigation expenses and incentive awards to the Class Plaintiffs. If there are comments or objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the settlements. We do not know how long this decision will take.

**23. Do I need to come to the hearing?**

No. Class Counsel will be prepared to answer any questions the Court may have at the hearing. However, you are welcome to attend the hearing at your own expense. If you send a comment or objection, you do not have to come to Court to explain

it. As long as you mailed your written comment or objection on time as set out in this Notice, the Court will consider it. You also may pay another lawyer to attend, but it's not required.

| 24. | MAY I SPEAK AT THE HEARING? |
|---|---|

You may ask the Court for permission to speak at the Fairness Hearing. If you want to appear at the Fairness Hearing and make a comment or objection, either in person or through an attorney hired at your own expense, you need to file a written notice of intention to appear with the Clerk of Court. It must be postmarked by February 29, 2016, and mailed to each of the addresses listed in Question 18. The written notice of intention to appear must: (i) include your name, address, telephone number, and signature; (ii) state that you intend to appear at the Fairness Hearing for In re: Credit Default Swaps Antitrust Litigation, Master Docket No.: 13 MD 2476 (DLC); (iii) provide proof that you are a member of the Settlement Class; and (iv) identify the specific grounds for your comment or objection including any reasons why you want to appear and be heard at the Fairness Hearing, as well as all documents or writings that you want the Court to consider.

## IF YOU DO NOTHING

| 25. | WHAT HAPPENS IF I DO NOTHING? |
|---|---|

If you do nothing, you will not get any money from these settlements. Unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants or the Released Parties about the legal issues in this case.

## GETTING MORE INFORMATION

| 26. | HOW DO I GET MORE INFORMATION? |
|---|---|

This Notice summarizes the settlements. More details are available in the Settlement Agreements. You can get complete copies of the Settlement Agreements at www.CDSAntitrustSettlement.com. The website has answers to common questions about these settlements, a claim form, and other information to help you determine whether you are a Settlement Class Member and whether you are eligible for a payment. You also may call 1-888-744-0531 or write to the Claim Administrator at Credit Default Swaps Antitrust Litigation, c/o Garden City Group, P.O. Box 10254, Dublin, OH 43017-5754.

DATED: January 11, 2016                                                                                        BY ORDER OF THE COURT

| MUST BE POSTMARKED ON OR BEFORE MAY 27, 2016 | In re Credit Default Swaps Antitrust Litigation<br>c/o GCG<br>P.O. Box 10254<br>Dublin, OH 43017-5754<br>Toll-Free: 1 (888) 744-0531<br>www.CDSAntitrustSettlement.com | CDE<br>Claimant ID: CDE011111111<br>Control No: 1234567890 |

CDE1234567890



JANE CLAIMANT
123 4TH AVE
APT 5
SEATTLE, WA  67890

## CLAIM FORM

This Claim Form relates to *In re: Credit Default Swaps Antitrust Litigation*, Master Docket No. 13 MD 2476 (DLC).  To be eligible to submit a claim, you must have purchased a Credit Default Swap ("CDS") from or sold CDS to the Dealer Defendants, a Released Party, or any purported co-conspirator, in a Covered Transaction between January 1, 2008 and September 25, 2015.  Claim Forms may be mailed via first-class mail to the Settlement Administrator at the address above or may be submitted online at www.CDSAntitrustSettlement.com.  If sent by mail, the Claim Form must be postmarked no later than **May 27, 2016** for your claim to be considered for payment.  If submitted online, the Claim Form must be submitted on or before 11:59 p.m. on **May 27, 2016**.

Before completing this Claim Form or submitting your Claim Form online via the website, please carefully read the General Information section of the enclosed insert, as well as the enclosed Notice.

If the Class Member Entity Name listed below is incorrect, or you have additional questions, you may contact the Claims Administrator at (888) 744-0531 or via email at info@CDSAntitrustSettlement.com.

---

**CLAIMANT INFORMATION**

Class Member Entity Name: {@Entity_Name}

Representative or Contact Name:

Representative or Contact Title:

Street Address:

City:                                                                                                     State:

ZIP / Postal Code:            Country:

Email Address:

Telephone Number:

( ____ ) ____ - ____                                (Claim form continues on next page.)

---

QUESTIONS? CALL TOLL-FREE 1 (888) 744-0531 OR EMAIL info@CDSAntitrustSettlement.com
**To view GCG's Privacy Notice, please visit www.GardenCityGroup.com/privacy**



## CLAIMANT DESIGNATION
[US, Non-US, or Undetermined]
## PAYMENT ELECTION AND CERTIFICATION

Please select one option:

☐ I elect to be paid by check.
*If you elect this payment method and your claim is valid and timely, a check will be mailed to the address you've provided on page 1.*

☐ I elect to be paid by wire transfer to a U.S. Bank.
*If you elect this payment method, a Payment Election Form will be mailed to you at the address you've provided on page 1.*

☐ I elect to be paid by wire transfer to a Non-U.S. Bank located in _____ (country).
*If you elect this payment method, a Payment Election Form will be mailed to you at the address you've provided on page 1.*

Please select one option:

☐ I accept the Covered Transactions compiled by the Settlement Administrator and do not intend to submit additional transactions for consideration or otherwise challenge the data compiled by the Settlement Administrator.

☐ I intend to submit additional CDS transactions for consideration, and/or to contest some portion of the Covered Transactions compiled by the Settlement Administrator (a "Challenge"). I understand that my Challenge may be denied in whole or in part by the Settlement Administrator, and that the Settlement Administrator's determination is final and not appealable. If the Settlement Administrator denies my Challenge, I understand that the above-referenced Covered Transactions are the only transactions upon which my Allowed Claim will be based.

By signing below, I certify the following:

1) I acknowledge and agree that I have read and understand the notices;
2) I acknowledge and agree to the release of all Released Claims against all Released Parties, as those terms are defined in the Settlements;
3) I certify that I am authorized to submit this claim on behalf of the Class Member Entity named above;
4) I certify that, if the Class Member Entity was a subsidiary or affiliate of any Defendant as of September 25, 2015, the Class Member Entity meets the definition of "Investment Vehicle" under Paragraph 2(r) of the Settlements. For reference, Investment Vehicles are defined as "any investment company or pooled investment fund, including, but not limited to: (i) mutual fund families, exchange-traded funds, fund of funds and hedge funds, in which a Defendant has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but of which a Defendant or its respective affiliates is not a majority owner or does not hold a majority beneficial interest, and (ii) any Employee Benefit Plan as to which a Defendant or its affiliates acts as an investment advisor or otherwise may be a fiduciary";
5) I certify that the Class Member Entity is not wholly owned by the United States federal government, and was not during the period of January 1, 2008 through September 25, 2015; and
6) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____   ____/____/_____
**Signature** (Must have authority to sign claim form)                                                          **Date**

_____        _____
**Type / Print Name**                                                              **Title** (e.g., President)

_____
**Class Member Entity Name**

QUESTIONS? CALL TOLL-FREE 1 (888) 744-0531 OR EMAIL info@CDSAntitrustSettlement.com

**GENERAL INFORMATION**

1) If you had one or more qualifying Covered Transactions, as explained more fully below, you may submit a claim to receive a distribution from the net settlement fund in this matter.

2) To facilitate the claims submission process, Plaintiffs' Counsel and their experts have worked with the Settlement Administrator to identify and compile the Covered Transactions applicable to each individual class member based on CDS trading records maintained by the Depository Trust & Clearing Corporation (DTCC) in its Trade Information Warehouse. These records capture information about each CDS contract registered in DTCC's global repository. Plaintiffs' Counsel's experts undertook an extensive analysis of the DTCC data, as directed by Plaintiffs' Counsel, to identify those records that qualify as Covered Transactions and to eliminate those that do not. Other public databases were also consulted to determine, for example, the domicile and location of each class member.

3) Your CDS transactions that have been identified as qualifying Covered Transactions will be available for your review on the Claimant Portal on the case website, www.CDSAntitrustSettlement.com, beginning on or around January 29, 2016, with some additional records added on a rolling basis thereafter. You will be able to review data points about each transaction, including trade date and notional value in both native and US currency.

4) To view and download information regarding your qualifying Covered Transactions, you may visit www.CDSAntitrustSettlement.com once these transactions are available and log in to the Claimant Portal with your Claimant ID and Control Number printed in the upper left corner of this Claim Form. You will only be able to review your own Covered Transactions and not those of other class members.

5) Covered Transactions are defined in Paragraph 2(i) of the Settlements. Specifically, a purchase or sale of a CDS is a "Covered Transaction":  (i)  if the purchase or sale was by or on behalf of a Person either domiciled or located (*e.g.*, had a principal place of business) in the United States or its territories at the time of such purchase or sale; (ii) if the Person was domiciled and located outside the United States and its territories at the time of any such purchase or sale, where such purchase or sale was in United States commerce; or (iii) where such purchase or sale otherwise falls within the scope of the U.S. antitrust laws.

6) The following transactions do not qualify as Covered Transactions and were removed from the DTCC dataset:  inter-dealer transactions (*i.e.* transactions between dealer banks); transactions outside the class period of January 1, 2008 through September 25, 2015; duplicative transactions (where both parties to the transaction submitted information to DTCC); transactions with $0 notional amounts; and transactions that were made between two foreign counterparties (*i.e.*, counterparties who were both domiciled and located outside of the US or its territories), except where the Dealer Defendants have provided data showing that those foreign-to-foreign transactions were executed on U.S.-based trading desks or that the trade was otherwise within US commerce. This is not an exhaustive description of the analysis conducted by Plaintiffs' Counsel and their experts; it is illustrative of the work conducted on your behalf to identify the CDS transactions subject to this Settlement.

7) This Claim Form contains a section entitled "Claimant Designation," which indicates, according to the Settlement Administrator's records, whether the Class Member to which this Claim Form is addressed is domiciled and/or located in the United States or its territories (in which case your Designation will be "US"), both domiciled and located outside the United States or its territories (in which case your designation will be "Non-US"), or if both domicile and location of the Class Member could not be determined (in which case your Designation will be "Undetermined"). Claimants designated as "Undetermined" will be presumed to be both domiciled and located outside the United States unless they demonstrate that they are domiciled or located in the United States. If your Claimant Designation is "Undetermined" and you are located in the United States or its territories, domiciled in the United States or its territories, or both, please contact the Settlement Administrator for information and documentation required to confirm that you are a US-based entity.

8) If you accept the qualifying Covered Transactions identified for you by Plaintiffs' Counsel's experts, as reflected in your portion of the Claimant Portal, then you do not need to provide any further information about your CDS trades to submit a claim. You merely need to return this claim form or submit your claim online at www.CDSAntitrustSettlement.com. Your claim will then be paid following the submission and review of all claims on a *pro rata* basis. The plan of distribution of the claims from the Settlement is set forth in more detail on the settlement website.

9) If you believe that the Covered Transactions identified for you by Plaintiffs' Counsel, as reflected in your Claimant Portal, are inaccurate or incomplete, you may choose to submit additional information regarding your CDS trades. The process for doing so is below.

### Submission of Additional Transactions/Challenges to Existing Transactions

1) If, after reviewing the above description of how your Covered Transactions were identified, and reviewing your Covered Transactions in detail, you believe that you engaged in additional Covered Transactions qualifying for claims under the Settlement that are not included in the list on the Claimant Portal, or that information provided in the Claimant Portal about one or more of your Covered Transactions is incorrect, you may contact the Settlement Administrator at 1 (888) 744-0531. The Settlement Administrator will guide you through the procedure for submitting a Challenge.

2) Your submission will need to include as many of the following data fields as possible. The more data fields you are able to include, the greater the Settlement Administrator's ability to review and make an accurate determination on your Challenge. Challenges with too few data points may be rejected. Please do not submit your challenge without first contacting the Settlement Administrator.

| Data Field | Description |
| --- | --- |
| DTCC Member ID | ID number assigned by the DTCC to each pairing of a Fund and its Investment Manager. If a Fund uses multiple Investment Managers over the course of the class period, the Fund will have multiple DTCC Member IDs. *This is an eight-digit alpha-numeric code. It is not required, but you should provide it if you have it.* |
| DTCC Reference ID | ID number assigned by the DTCC to each trade and all subsequent transactions for that trade including its termination. *This is a nineteen-digit numeric code assigned by the DTCC. It is not required, but you should provide it if you have it.* |
| Buyside Trade Reference Number | ID number provided by the Investment Manager to the Fund for each trade and all subsequent transactions for that trade. *This is an up to 40-character alpha or alpha-numeric code as reported to the DTCC. This information is **REQUIRED** for all challenges.* |
| Buyside Trade Supplement Reference Number | ID number provided by the Investment Manager to the Fund for each termination transaction related to an initial position (purchase). *This is an up to 16-character alpha or alpha-numeric code as reported to the DTCC. This information is **REQUIRED** for all challenges.* |
| Dealer Name | Name of the Dealer or Dealer subsidiaries acting as counterparty on the transaction. *This information is **REQUIRED** for all challenges.* |
| Investment Manager Name | Name of the Investment Manager that initiated a transaction on a Fund's behalf. *This information is not required, but you should provide it if you have it.* |
| CDS Product Type | Shorthand description field used by the DTCC to identify the type of CDS product. CDS corresponds to single-name CDS; CDX corresponds to index CDS; and CDT corresponds to tranche CDS. *This information is **REQUIRED** for all challenges; your only options are: CDS, CDX or CDT.* |

| Trade Date | The date the transaction was initiated as reported to the DTCC.  *This information is **REQUIRED** for all challenges and must be in the following format: MM/DD/YYYY.* |
|---|---|
| Transaction Type | The description of the transaction as categorized by the DTCC.  A CDS transaction is categorized as a "trade" when it is purchased and as a "terminate" when it is sold.  *This information is **REQUIRED** for all challenges; your only options are: Trade or Terminate.* |
| Notional Value in Currency Transacted | Notional value of the transaction as reported to the DTCC and as reflected in the currency in which it was purchased or sold.  *This information is **REQUIRED** for all challenges and must be provided in decimal numeric format with 20 digits with up to four decimal places.* |
| Notional Currency Code | Three character currency code used by the DTCC to identify the currency in which the CDS was purchased or sold.  *This information is **REQUIRED** for all challenges.  You must provide the three digit ISO code for the currency.* |
| Notional Value—US Dollars | The notional value of the transaction as converted into US dollars by the DTCC.  *This information is not required, but you should provide it if you have it.* |
| Tenor | Represents a calculation of the time to maturity on the CDS as measured from the purchase effective date and expressed in years to one decimal point.  This is a five digit decimal numeric field calculated by you.  If the transaction is an ABX or CMBX transaction, the value should be "0."  *This information is **REQUIRED** for all challenges.* |
| Reference Entity Name | Markit reference entity name reported to the DTCC by Markit.  *This information is **REQUIRED** for all challenges.  You must provide a valid Markit reference entity name.* |
| RED 6 or Red/Clip Code | The Markit six-digit alpha numeric or nine-digit RED/Clip code as reported to the DTCC by the DTCC reporting parties (record submitters).  This code identifies the reference entity.  *This information is **REQUIRED** for all challenges.* |
| ISIN | The International Securities Identification Number for the underlying reference entity.  *This information is **REQUIRED** for all challenges.* |
| Swaption Indicator | Yes/no field that indicates whether the purchase or sale transaction was an option on the CDS.  *This information is **REQUIRED** for all challenges.  Your only options are: Yes or No.* |
| Tranche Attachment Point | The corresponding attachment point for a CDS tranche security.  N/A if product type is CDS or CDX. *This information is **REQUIRED** only if the Product Type is CDT. This is a seven-digit number with three decimals reflecting the attachment percentage.  For example, a 40% attachment point would have the value "40.000".  Maximum value is 100.000.* |
| Tranche Exhaustion Point | The corresponding exhaustion point for a CDS tranche security.  N/A if product type is CDS or CDX.  *This information is **REQUIRED** only if the Product Type is CDT. This is a seven-digit number with three decimals reflecting the exhaustion percentage.  For example, a 40% exhaustion point would have the value "40.000".  Maximum value is 100.000.* |

3) If your Challenge includes additional transactions not included in your list of Covered Transactions, in addition to providing as many available data points listed above as possible, your submission must include a description of why you believe the transaction(s) qualifies as a Covered Transaction.  In order for a CDS transaction to be a Covered Transaction, either (i) the Person on whose behalf the trade was made must be domiciled or located (*e.g.*, had its principal place of business) in the United States or its territories at the time of such purchase or sale; or (ii) if the Person was domiciled and located outside the United States and its territories at the time of such purchase or sale, where such purchase or sale was in United States commerce or is otherwise within the scope of the U.S. antitrust laws.  For the purpose of applying subpart (ii) above, a CDS purchase or sale by or on behalf of a Person domiciled and located outside the United States or its territories shall be considered to be in United States commerce if the counterparty was domiciled or located in the United States or its territories.  If you are a Person that is not domiciled or located in the United States, CDS transactions you made with a Defendant also not domiciled or located in the United States may not be listed on the Claimant Portal and may not be Covered Transactions, if they were not otherwise in United States commerce.

4) If the purpose of your Challenge is to contest the notional value of one of the Covered Transactions listed in the Claimant Portal, you must provide documentary proof of the notional value of the transaction.  If you intend to challenge any other aspect of a listed Covered Transaction, please discuss your concern with the Settlement Administrator prior to submitting your Challenge.

5) The Settlement Administrator's determination on a Challenge is final and non-appealable.