**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: CREDIT DEFAULT SWAPS ANTITRUST LITIGATION | Master Docket No.: 13 MD 2476 (DLC) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE THE CDS SETTLEMENT**

**Table of Contents**

Table of Authorities ..................... ii

ARGUMENT ..................... 2

I. THE TWO CASES SHARE AN IDENTICAL FACTUAL PREDICATE ..................... 2

II. THE NEW MEXICO PLAINTIFFS WERE ADEQUATELY REPRESENTED AND RECEIVED SUFFICIENT NOTICE OF THE TERMS OF THE RELEASE. ..................... 6

III. THE BANKS TIMELY RAISED THE RELEASE ..................... 8

CONCLUSION ..................... 10

**Table of Authorities**

Cases

*In re American Express Financial Advisors Securities Litigation*,
672 F.3d 113 (2d Cir. 2011)....................4

*Biodiversity Conservation Alliance v. Jiron*,
762 F.3d 1036 (10th Cir. 2014)....................9

*Boyd v. Hi Country Chevrolet*,
No. 1:10-CV-00602 RB/KBM, 2011 WL 13284636 (D.N.M. Oct. 18, 2011)....................8

*In re Credit Default Swaps Antitrust Litigation*,
No. 13-md-2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)....................6, 7

*In re Credit Default Swaps Auctions Litigation*,
No. 21-cv-0606 KG/DLM, 2023 WL 3821337 (D.N.M. June 5, 2023)....................4

*de Lacour v. Colgate-Palmolive Co.*,
338 F.R.D. 324 (S.D.N.Y. 2021)....................5

*Dennis v. JPMorgan Chase & Co.*,
16-cv-6496 (LAK), 2021 WL 1893988 (S.D.N.Y. May 11, 2021)....................5

*In re Digital Music Antitrust Litigation*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011)....................5, 6

*Fakiris v. Fakiris*,
175 A.D. 3d 1390 (2d Dep't 2019)....................9, 10

*In re Great American Life Insurance Co. Sales Practices Litigation*,
357 F.3d 800 (8th Cir. 2004)....................8

*In re National Life Insurance Co.*,
No. 2:97-cv-314, 2014 WL 4715880 (D. Vt. Sept. 19, 2014)....................5

*In re National Life Insurance Co.*,
247 F. Supp. 2d 486 (D. Vt. 2002)....................6

*National Super Spuds, Inc. v. New York Mercantile Exchange*,
660 F.2d 9 (2d Cir. 1981)....................7

*New Mexico v. McAleenan*,
450 F. Supp. 3d 1130 (D.N.M. 2020)....................8

*Park County Resource Council, Inc. v. United States Department of Agriculture*,
817 F.2d 609 (10th Cir. 1987), *overruled on other grounds by Village of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992)....................9

*TBK Partners, Ltd. v. Western Union Corp.*,
675 F.2d 456 (2d Cir. 1982)....................................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)........................................................................... passim

*In re Western States Wholesale Natural Gas Antitrust Litigation*,
725 F. App'x 560 (9th Cir. 2018) ...........................................................................6

*In re Worldcom, Inc. Securities Litigation*,
No. 02 Civ. 3288 (DLC), 2007 WL 1946685 (S.D.N.Y. July 5, 2007)..................... passim

The efforts of the New Mexico Plaintiffs[1] to circumvent the 2015 Settlement and Release in the above-captioned action are unavailing.

*First*, the New Mexico Plaintiffs' argument that they can avoid the Release by alleging price fixing, rather than group boycott, misconstrues the identical factual predicate doctrine. That doctrine requires only that the central factual premise—not the legal or damages theories—of both cases be identical. Here, the same group of CDS market maker banks allegedly conspired, through their participation with and influence over ISDA and Markit, to structure the CDS marketplace to maintain exclusive control and exploit their supposed market power to fix CDS pricing and extract supracompetitive profits. Both cases concern the Banks' creation, adoption, and implementation of the CDS auction protocol, including the Determinations Committee, for establishing the final price at which to settle CDS contracts. The class plaintiffs alleged that the Banks blocked the formation of a competing CDS exchange by, among other things, preventing the licensing of the auction protocol and final price to exchanges; the New Mexico Plaintiffs challenge the auction protocol and Determination Committee themselves.

*Second*, contrary to their contention, the New Mexico Plaintiffs were adequately represented in the 2015 Settlement and received sufficient notice of the scope and terms of the Release. The interests of the settlement class members, including the New Mexico Plaintiffs, were fully aligned to recover alleged losses from CDS Transactions, and all CDS Transaction claims, known and unknown, predicated on CDS-related conduct occurring before June 30, 2014 were released in exchange for consideration of $1,864,650,000.

*Finally*, the New Mexico Plaintiffs' argument that the Banks waited too long to bring this

---

1 Capitalized terms have the same meaning as in the Banks' Memorandum in Support of Defendants' Motion to Enforce the CDS Settlement. (ECF No. 646.)

motion is specious. The Banks raised the Release on August 3, 2023, less than two months after the New Mexico court denied the Banks' motion to dismiss. Because this Court retained exclusive jurisdiction to construe the Release, and because the parties were required to mediate with the Honorable Daniel Weinstein (Settlement § 15(n)) before bringing any dispute to this Court, the Banks reasonably decided to await a decision on their motion to dismiss to avoid unnecessarily burdening Judge Weinstein and this Court if that motion to dismiss were granted.

## ARGUMENT

### I. THE TWO CASES SHARE AN IDENTICAL FACTUAL PREDICATE.

The New Mexico Plaintiffs' argument that the Release does not apply because the legal and damages theories in the two cases differ, and because the complaints contain immaterial factual differences (Opp. Br. at 8-16) is misdirected. It makes no difference that the theories of the cases may diverge, with one case asserting a group boycott and the other case asserting price fixing, when the claims share an identical *factual* predicate. *See*, *e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 108 (2d Cir. 2005) (identity of the legal elements of the claims is not dispositive; different claims may be released if they "arise out of the same factual predicate as settled class claims"); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2007 WL 1946685, at *7 (S.D.N.Y. July 5, 2007) ("There is of course no requirement that the class action complaint have pleaded the very claims that [the subsequent plaintiffs] assert."). And courts consistently hold that the identical factual predicate doctrine requires only that the claims be premised on common *central* facts; the existence of peripheral factual distinctions is irrelevant. *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 106 ("these legal constructs allow plaintiffs to release claims that share the same integral facts as settled claims").

In *Wal-Mart Stores*, for example, the Second Circuit affirmed the district court's ruling that a group boycott challenge to Visa and MasterCard exclusionary rules that prevented member

banks from issuing American Express or Discover cards was barred by the broad settlement and release in an illegal tying challenge to separate Visa and MasterCard "honor all cards" rules that forced merchants to accept both credit and debit cards. *Id.* at 101. The court held that, despite different legal theories and different Visa and MasterCard rules at issue, the credit card networks' membership rules were "central" to both cases, and therefore the claims in each arose from the identical factual predicate. *Id.* at 107-08.[2] The New Mexico Plaintiffs' effort to distinguish *Wal-Mart Stores* by asserting that "*the exact same rules*" were at issue in the two cases (Opp. Br. at 12) is misleading. The cases shared an identical factual predicate because the network exclusivity rules, which were expressly challenged in the group boycott case, facilitated the defendants' adoption and enforcement of the separate honor all cards rules challenged in the tying case. *Wal-Mart Stores*, 396 F.3d at 107.

Here, dozens of paragraphs of the operative pleadings establish that the underlying factual predicate of the New Mexico Action and of this case are identical: that, through their participation with and influence over ISDA and Markit, the Banks allegedly conspired to manipulate the structure of the CDS marketplace to maintain exclusive control and exploit their supposed market power to fix CDS pricing and extract supracompetitive profits. Both cases concern the Banks' creation, adoption, and implementation of the CDS auction protocol and the Determinations Committee for establishing the final price at which to settle CDS contracts. The settling class plaintiffs in this case alleged that the Banks blocked the formation of a competing CDS exchange by, among other things, preventing ISDA from licensing the auction protocol and final price to exchanges. (Compl., *Sheet Metal Workers Local No. 33 Cleveland Dist. Pension*

---

2 The New Mexico Plaintiffs make no effort to distinguish most of the cases on which the Banks rely. (*See* Opp. Br. at 12 n.3.)

*Plan v. Bank of Am. Corp.*, 13-cv-3357, ECF No. 1 (N.D. Ill. filed May 3, 2013) ¶¶ 82-84.) The New Mexico Plaintiffs challenge the auction protocol and Determinations Committee themselves. *See*, *e.g.*, *In re Credit Default Swaps Auctions Litig.*, No. 21-cv-0606 KG/DLM, 2023 WL 3821337, at *30 (D.N.M. June 5, 2023) (the New Mexico Plaintiffs "expressly allege Defendants forced market-wide adoption of the CDS auction protocol, used CDS liquidity to force non-dealer clients to accept the auction process as the valuation mechanism for settling CDS contracts, and threatened retaliation against non-Defendants should they object to any of the processes"); at *33 (the Banks "designed the entire auction process to make themselves exclusive gatekeepers and the primary auction participants"); at *34 (the New Mexico Plaintiffs "adequately allege that Defendants had 'motive and opportunity' to manipulate the CDS auction prices, including through the structure of the Determinations Committee and Defendants' substantial CDS holdings" (citation omitted)).

The cases on which the New Mexico Plaintiffs rely are readily distinguished. In *In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113 (2d Cir. 2011), for instance, the class settlement and release at issue expressly *excluded* certain so-called "suitability claims." *Id.* at 136-38. The Second Circuit affirmed the district court's decision that several of the appellants' claims were barred by the class settlement and release, *id.* at 119, 137-39, but concluded that the suitability claims that had been excluded from the release, as well as claims involving conduct after the effective date of the release, were not barred. *Id.* at 136-39. The Release in the 2015 Settlement contains no exclusion for claims relating to CDS auctions, and the Banks are not moving with respect to claims based on conduct occurring after June 30, 2014.

Thus, the *American Express Financial Advisors* case is inapplicable here.[3]

The New Mexico Plaintiffs' reliance on *Dennis v. JPMorgan Chase & Co.*, No. 16-cv-6496 (LAK), 2021 WL 1893988 (S.D.N.Y. May 11, 2021), is similarly misplaced. In *Dennis*, the district court determined that the plaintiffs' challenge to an alleged conspiracy to manipulate an *Australian* benchmark *interest* rate was not barred by the settlement of claims relating to an alleged conspiracy to manipulate certain *European* benchmark *foreign exchange* rates. Because the claims involved "two distinct and unrelated benchmark rates," *id.* at *5, that were allegedly manipulated at different times in different places and "in entirely different ways," *id.* at *6, the two claims did not share an identical factual predicate. Likewise, in *In re Digital Music Antitrust Litigation*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011), the court concluded that a class settlement and release in a case alleging price-fixing of compact discs ("CDs") did not bar a later case alleging price-fixing and distribution restraints involving the sale of music online ("Internet Music"). The court found that the two cases did not share an identical factual predicate because the allegations in the settled action "simply have nothing to do with Internet Music, the interplay between the online music market and the CD market, or the related allegations [in the Internet Music case]."

---

[3] Because the Banks do not contend that the Release bars the New Mexico Plaintiffs from pursuing claims based on the Banks' alleged conduct *after* June 30, 2014, but only seek to preclude the New Mexico Plaintiffs from relying on alleged conduct occurring before June 30, 2014, *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324 (S.D.N.Y. 2021), and *In re National Life Insurance Co.*, No. 2:97-cv-314, 2014 WL 4715880 (D. Vt. Sept. 19, 2014), two other cases on which the New Mexico Plaintiffs rely, are also inapplicable to the instant motion. *See de Lacour*, 338 F.R.D. at 332, 338-39 (settlement and release of false advertising claims based on purchases of defendant's products in their original packaging before September 23, 2015—the ending date of the release—did not share an identical factual predicate with claims of false advertising based on purchases of defendant's products in their redesigned packaging *after* September 24, 2015); *In re Nat'l Life Ins. Co.*, 2014 WL 4715880, at *3 (no identical factual predicate where allegations in the subsequent action "focus primarily upon communications and transactions that occurred years *after* the class action settlement" (emphasis added)).

*Id.* at 400; *see also In re Western States Wholesale Nat. Gas Antitrust Litig.*, 725 F. App'x 560 (9th Cir. 2018) (settlement of claims related to natural gas *futures contracts* did not share identical factual predicate with case related to natural gas *physical purchases*). By contrast, the New Mexico Action and this case both involve the same product—CDS Transactions—and share the identical factual predicate—the Banks' purported scheme to maintain their alleged dominance and control of the CDS marketplace through their ownership and representation on the boards of ISDA and Markit by, among other things, creating, adopting, and implementing the CDS auction protocol, including the Determinations Committee. The Release bars the New Mexico Plaintiffs' pursuit of claims related to that alleged scheme in New Mexico. *Dennis*, *Digital Music* and *Western States Wholesale Natural Gas* simply do not apply.[4]

## II. THE NEW MEXICO PLAINTIFFS WERE ADEQUATELY REPRESENTED AND RECEIVED SUFFICIENT NOTICE OF THE TERMS OF THE RELEASE.

The New Mexico Plaintiffs' argument that their claims were not adequately represented in the 2015 Settlement (Opp. Br. at 17-20) is unavailing. "[A]dequate representation of a particular claim is determined by the alignment of interests of class members, not proof of vigorous pursuit of that claim." *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476 (DLC), 2016 WL 2731524, at *15 (S.D.N.Y. Apr. 26, 2016) (quoting *Wal-Mart Stores*, 396 F.3d at 113). The interests of the settlement class members here, which included the New Mexico

---

4 The New Mexico Plaintiffs' analogy to insurance contracts and their corresponding argument that claims relating to the initial purchase of an insurance contract do not share an identical factual predicate with claims about the ultimate payout on the insurance contract (Opp. Br. at 16) also fail. In *In re National Life Insurance Co.*, 247 F. Supp. 2d 486, 494-95 (D. Vt. 2002), the district court held that a claim concerning the tax consequences of insurance proceeds following the death of the insured shared an identical factual predicate with, and thus was barred by, the prior settlement of claims concerning misrepresentations made at the time the insurance policy was purchased. There is nothing unique about insurance or CDS Transactions that preclude a finding that this case and the New Mexico Action share an identical factual predicate.

Plaintiffs, were aligned to recover alleged losses from CDS Transactions with the Banks. *See*, *e.g.*, *In re WorldCom,* 2007 WL 1946685, at *7 ("The interests of named plaintiffs and class members were aligned insofar as the interest was recovery from losses from investments in WorldCom securities."). As a matter of law, because of that alignment, the New Mexico Plaintiffs' claims were adequately represented. *Id.* For that reason, the New Mexico Plaintiffs' reliance on *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981), where the interests of the class members who held *liquidated* positions were not aligned with state court plaintiffs who held *unliquidated* positions, is misplaced. *See*, *e.g.*, *Wal-Mart Stores*, 396 F.3d at 110-11 (distinguishing *Super Spuds* on this ground).

This Court already has held that the Release was "precise, reasonable, and appropriate to the circumstances of this case" and that the class members received adequate notice of the scope and terms of the Release. *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *15. The class notice conspicuously—on the first page—defined a "CDS Transaction" as "any purchase, sale, trade, assignment, novation, unwind, termination, or other exercise of rights or options with respect to any CDS" (ECF No. 505-1, at 1), which clearly includes the settlement (termination) of a CDS contract at the final auction price after a credit event of the underlying bond issuer. The class notice provided the terms and scope of the Release and provided class members with a hyperlink to the full text of the Release. (*Id.* at 7.) The notice further explained that CDS Transactions with the Banks were covered by the Settlement, and informed class members that, "[t]o the extent you believe you made a CDS Transaction that is a 'Covered Transaction,' you will be given the opportunity to identify that transaction and submit supporting evidence to the claims administrator." (*Id.* at 4.) Critically, the New Mexico Plaintiffs have not asserted that they did not submit claims in connection with the 2015 Settlement or that those

claims did not include claims for CDS Transactions settled after a credit event auction.

Contrary to the New Mexico Plaintiffs' lament, their claims were not released without compensation. Rather, in pursuit of their shared interest in the recovery of losses from CDS Transactions, the settlement class plaintiffs agreed to release *all* CDS Transaction claims, known and unknown, predicated on CDS-related conduct occurring prior to June 30, 2014 in exchange for compensation of $1,864,650,000. There is no requirement, as the New Mexico Plaintiffs suggest, that each type of claim be itemized with separately stated consideration. *See*, *e.g.*, *In re Great Am. Life Ins. Co. Sales Practices Litig.*, 357 F.3d 800, 805 (8th Cir. 2004). It was sufficient for the settlement class to release all their CDS Transaction claims, including both known and unknown claims, in exchange for an undifferentiated sum of money. *See In re WorldCom*, 2007 WL 1946685, at *7.

## III. THE BANKS TIMELY RAISED THE RELEASE.

The New Mexico Plaintiffs' argument that the Banks should be precluded from seeking to enforce the Release by the doctrines of waiver, estoppel, and laches (Opp. Br. at 21-24) is without merit. The Banks properly pleaded the Release as an affirmative defense in their answers to the operative complaint, and thus did not waive their right to enforce the Release. As an affirmative defense, reliance on a release is not waived if it is pleaded in a defendant's answer. *See New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1163 (D.N.M. 2020); *Boyd v. Hi Country Chevrolet*, No. 1:10-CV-00602 RB/KBM, 2011 WL 13284636, at *7 (D.N.M. Oct. 18, 2011). The New Mexico Plaintiffs make no serious argument to the contrary.

Nor do the New Mexico Plaintiffs credibly argue that the Banks are estopped from enforcing the Release because they did not raise it in their motion to dismiss. Because this Court retained exclusive jurisdiction to resolve any disputes involving the Release, the Banks could not properly raise the issue with the New Mexico court in their motion to dismiss. Moreover, the

Banks' motion to dismiss the New Mexico Action, if granted, would have disposed of the case without the need to involve Judge Weinstein and this Court in satellite mediation and motion practice involving the Release. (Mov. Br. at 24.) Under these circumstances, the New Mexico Plaintiffs offer no basis to estop the Banks from pursuing this motion to enforce the Release.

Finally, the Banks are not precluded from enforcing the Release by the doctrine of laches. Laches is "an equitable doctrine which bars the enforcement of a right where there has been an unreasonable and inexcusable delay that results in prejudice to a party." *Fakiris v. Fakiris*, 175 A.D. 3d 1390, 1391 (2d Dep't 2019) (citations omitted). The "[m]ere lapse of time does not amount to laches." *Park Cnty. Resource Council, Inc. v. United States Dep't of Agric.*, 817 F.2d 609, 618 (10th Cir. 1987) (citation omitted), *overruled on other grounds by Village of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992). The delay must be "unreasonable" and "inexcusable." *Id.*; *Fakiris*, 175 A.D. 3d at 1391.

In *Park County*, the Tenth Circuit held that the plaintiffs' two-year delay in raising an issue was not unreasonable where the plaintiffs had made the strategic decision (which was ultimately unsuccessful) to focus their efforts on a litigation strategy that, if successful, would have made the issue superfluous. The appellate court explained that courts should not chastise parties' "efforts to selectively minimize litigation. Otherwise, we discourage such thoughtful preparation and encourage rote litigation," even where alternative strategies could eliminate the need for additional satellite litigation. *Park County*, 817 F.2d at 618.[5]

---

5 By contrast, the plaintiff in *Biodiversity Conservation Alliance v. Jiron*, 762 F.3d 1036 (10th Cir. 2014), on which the New Mexico Plaintiffs rely, did not bring its claim for *six-and-a-half years*, during which time it "increased litigation," rather than streamlining it. *Id.* at 1094. And, in *Fakiris*, the court held that the plaintiff's delay was unreasonable and prejudiced the defendant where the plaintiff had waited *more than seven years* to assert her ownership claim to the subject real estate, during which time her father had died and her mother (the defendant) had initiated separate probate proceedings in the Surrogate's Court,

*(cont'd)*

Like the plaintiffs in *Park County*, the Banks here sought to minimize litigation by focusing first on a motion to dismiss that, if successful even in part, would have obviated the need to raise the Release issue at all or to involve Judge Weinstein, this Court, and the parties in separate mediation and motion practice. The New Mexico Plaintiffs cannot credibly argue that their need to respond to the Banks' motion to dismiss, and the mere passage of time while the parties awaited the district court's decision on that motion, constitute cognizable prejudice. The Banks' decision to raise the Release defense with the New Mexico Plaintiffs less than two months after the New Mexico court denied the Banks' motion to dismiss has resulted in neither an unreasonable and inexcusable delay nor prejudice to the New Mexico Plaintiffs.

* * *

"Practically speaking, [c]lass action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability." *Wal-Mart Stores*, 396 F.3d at 106 (citation omitted). The Banks "paid an enormous sum for peace," *In re WorldCom*, 2007 WL 1946685, at *7, and enforcement of the Release will further "the paramount policy of encouraging settlements." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982).

## CONCLUSION

For the foregoing reasons, as well as for the reasons set forth in their moving brief, the Banks respectfully request that this Motion to Enforce the CDS Settlement be granted and the New Mexico Plaintiffs be enjoined from litigating all claims based on alleged CDS-related agreements or conduct occurring before June 30, 2014.

---

which was the proper tribunal to decide the plaintiff's claim to the subject real estate. 175 A.D. 3d at 1390-91.

Dated: New York, New York
December 11, 2023

Respectfully submitted,

By: /s/ Karen Hoffman Lent
Jay B. Kasner
Karen Hoffman Lent
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
jay.kasner@skadden.com
karen.lent@skadden.com
*Attorneys for Defendants Citibank, N.A. and Citigroup Global Markets Inc.*

By: /s/ Paul S. Mishkin*
Paul S. Mishkin
Sheila R. Adams
Christopher Lynch
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5292
paul.mishkin@davispolk.com
sheila.adams@davispolk.com
christopher.lynch@davispolk.com
*Attorneys for Defendants Bank of America Corporation and Bank of America, N.A.*

By: /s/ Jeffrey T. Scott*
Jeffrey T. Scott
Matthew J. Porpora
Jonathan S. Carter
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
scottj@sullcrom.com
porporam@sullcrom.com
carterjo@sullcrom.com
*Attorneys for Defendant Barclays Bank plc*

By: /s/ Joshua A. Goldberg*
Joshua A. Goldberg
Amy N. Vegari
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 336-2000
jgoldberg@pbwt.com
avegari@pbwt.com
*Attorneys for Defendant BNP Paribas*

By: /s/ Herbert S. Washer*
Herbert S. Washer
David G. Januszewski
Jason M. Hall
Margaret A. Barone
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
hwasher@cahill.com
djanuszewski@cahill.com
jhall@cahill.com
mbarone@cahill.com
*Attorneys for Defendant Credit Suisse AG*

By: /s/ John Terzaken*
John Terzaken
SIMPSON THACHER & BARTLETT LLP
900 G Street, NW
Washington, DC 20001
Telephone: (202) 636-5500
Facsimile: (202) 636-5502
john.terzaken@stblaw.com
*Attorney for Defendant Deutsche Bank AG*

By: /s/ Robert Y. Sperling*
Robert Y. Sperling
Staci Yablon
PAUL, WEISS, WHARTON, RIFKIND & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373 – 3000
Facsimile: (212) 757-3990
rsperling@paulweiss.com
syablon@paulweiss.com
*Attorneys for Defendant Goldman Sachs & Co.*

By: /s/ Shadman Zaman*
Shadman Zaman
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
szaman@cov.com
*Attorney for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*

By: /s/ Michael A. Paskin*
Michael A. Paskin
Damaris Hernández
Lauren M. Rosenberg
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza, 825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
mpaskin@cravath.com
dhernandez@cravath.com
lrosenberg@cravath.com
*Attorneys for Defendant Morgan Stanley & Co. LLC*

By: /s/ *James R. Warnot, Jr.**
James R. Warnot, Jr.
Patrick C. Ashby
Nicole E. Jerry
LINKLATERS LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 903-9000
james.warnot@linklaters.com
patrick.ashby@linklaters.com
nicole.jerry@linklaters.com

Adam S. Lurie
LINKLATERS LLP
601 13th St. NW
Suite 400
Washington, DC 20005
Telephone: (202) 654-9227
adam.lurie@linklaters.com
*Attorneys for Defendant NatWest Group Plc (f/k/a The Royal Bank of Scotland Group plc)*

*Signatures used with permission pursuant to S.D.N.Y. ECF Rule 8.5